JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, as subrogee of PATIENT FIRST OF PENNSYLVANIA, INC.

**DEFENDANTS**

CHUBB NORTH AMERICA

**(b)** County of Residence of First Listed Plaintiff **Hartford, CT**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **Warren, NJ**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Leticia J. Santiago, PO Box 2903, Hartford, CT 06104 (mailing address)
10 Sentry Pkwy, Suite 301, Blue Bell, PA 19422 (physical address)
215-274-1724

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 2 U.S. Government
Defendant

☒ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1331; 28 U.S.C § 2201; 18 U.S.C. § 1391(a)

Brief description of cause:
Declaratory Judgment seeking declaration that Defendant provide coverage to underlying party.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE 1/16/2020

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG JUDGE _____

UNITED STATES DISTRICT COURT
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: One Tower Square, Hartford, Connecticut

Address of Defendant: 15 Mountainview Road, Warren, New Jersey

Place of Accident, Incident or Transaction: 119 Shoemaker Road, Pottstown, Montgomery County, PA

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

| | | |
|---|---|---|
| 1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☒ |
| 2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☒ |
| 3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? | Yes ☐ | No ☒ |
| 4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? | Yes ☐ | No ☒ |

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 1/22/2020 _____ _____ 308519

*Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

- ☒ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

- ☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☐ Relief other than monetary damages is sought.

DATE: _____ _____ _____

*Sign here if applicable*

*Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,      :          CIVIL ACTION
   as subrogee of PATIENT FIRST OF PENNSYLVANIA, INC. :

                          v.                          :

CHUBB NORTH AMERICA                                   :
                                                      :          NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
      and Human Services denying plaintiff Social Security Benefits.               ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
      exposure to asbestos.                                                       ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
      commonly referred to as complex and that need special or intense management by
      the court. (See reverse side of this form for a detailed explanation of special
      management cases.)                                                          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (x )

01/22/2020                    Leticia J. Santiago                      Plaintiff
_____            _____                    _____
**Date**                      **Attorney-at-law**                     **Attorney for**

215-274-1724                  215-274-1735                            Ljsantia@travelers.com
_____            _____                    _____
**Telephone**                 **FAX Number**                          **E-Mail Address**

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, as subrogee of PATIENT FIRST OF PENNSYLVANIA, INC. One Tower Square Hartford, CT 06183 : : : : : | NO. |
| Plaintiff : | |
| vs. : | |
| CHUBB NORTH AMERICA 15 Mountainview Road Warren, NJ 07059 : : : | |
| Defendants. : | |

## COMPLAINT SEEKING DECLARATORY RELIF OF PLAINTIFF, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA AS SUBROGEE OF PATIENT FIRST, INC. AGAINST DEFENDANT CHUBB NORTH AMERICA

Plaintiff, Travelers Property Casualty Company of America ("Travelers"), as subrogee of Patient First of Pennsylvania, Inc. ("Patient First"), by and through their counsel, William J. Ferren & Associates, hereby files this Complaint against Chubb North America ("Chubb"), and in support avers as follows:

### INTRODUCTION

1.      This complaint is filed pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure.

2.      Plaintiff Patient First seeks a declaratory judgment that Chubb has a duty to defend Patient First as an additional insured under a policy it issued to Brightview Landscapes Services, Inc. f/k/a The Brickman Group, Ltd., LLC ("Brightview").

3.      On or about January 16, 2018, Benjamin Neville ("Neville") filed a lawsuit in the Court of Common Pleas of Montgomery County captioned *Neville v. Patient First of Pennsylvania, Inc., et al.*, No. 2017-28528 (hereinafter "the *Neville* action") against Patient First,

West Pottstown Shopping Center, LLC, Lena Management, LLC, PF Pottstown, LLC, Wright Land Development, LLC and Wright Partners, LLC. A true and correct copy of the Complaint filed by Neville is attached hereto as Exhibit "A".

4.      On March 22, 2018, Neville filed an Amended Complaint against Patient First, Brightview, West Pottstown Shopping Center, LLC, Lena Management, LLC, PF Pottstown, LLC, and Robert Graeff d/b/a Graeff Landscape Co. A true and correct copy of the Amended Complaint filed by Neville is attached hereto as Exhibit "B".

5.      The *Neville* action seeks damages arising out of Benjamin Neville's alleged personal injuries resulting from an alleged slip and fall on ice on January 28, 2016 in the parking lot located at 119 Shoemaker, Road, Pottstown, PA ("Premises"). *See* Exhibit "B".

6.      In the *Neville* action, Neville seeks relief in an amount in excess of $75,000. A true and correct copy of Neville's Case Management Conference Memorandum filed in the Court of Common Pleas of Montgomery County is attached as Exhibit "C" and reflects a demand of $250,000.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action under 28 U.S.C. § 1331 because the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      This Court also has jurisdiction over Patient First's request for a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

9.      Venue is proper in this judicial district under 28 U.S.C. § 1391(a) because a substantial part of the acts and omissions giving rise to this action occurred in this district.

10.     Plaintiff, Travelers Property Casualty Company America, is a Connecticut corporation with a principal place of business located at One Tower Square, Hartford CT 06183.

2

11.     Plaintiff Patient First is a Virginia corporation with a business address of 5000 Cox Road, Suite 100, Glen Allen, VA 23060.

12.     Defendant Chubb is an insurance company with a principle place of business and a corporate office located at 15 Mountainview Road, Warren, NJ 07059.

13.     At all times relevant hereto, Defendant Chubb regularly conducted business in the County of Montgomery, PA located in this district.

## FACTS COMMON TO ALL COUNTS

14.     In the *Neville* action, Neville alleges that all defendants were responsible for providing snow and ice removal services at the Premises. *See* Exhibit "B" at ¶9.

15.     The *Neville* action alleges that Patient First was negligent in: (1) the maintenance of a dangerous condition upon the premises; (2) failing to warn Plaintiff of the dangerous condition of which Defendant knew or should have known in time to have remedied or removed same; (3) failing to barricade the area of ice which contributed to the hazardous condition; (4) failing to properly clear the aforesaid lot and walkway and/or pavement of snow and/or ice; (5) failing to inspect the aforesaid premises for defects or dangerous conditions which would create an unreasonable risk of injury to those lawfully upon it; (6) failing to remedy or remove said condition, obstruction, irregularity or unsafe condition; (7) failing to properly hire, train, supervise and/or instruct its agents, servants, workers and/or employees; (8) failing to foresee or otherwise correct the artificial accumulation and/or patch of ice due to placement of snow banks, and/or failure to abate ice patches, and/or melt/refreeze conditions, and/or the condition, of the common area adjacent to and/or near designated parking spaces in the common area on the north side of Patient First building providing access to its entrance which Defendant knew or should have known would be used by business invitees and/or persons requiring medical attention/treatment, such as Plaintiff; (9) failing to remedy or remove said condition, obstruction,

3

irregularity or defect; (10) failing to exercise requisite care to search out and/or locate and/or treat snow and/or ice patches and spread salt or ashes; (11) failing to exercise requisite care to abate ice/snow patches by removing the same bodily through scraping, melting or fragmentizing, or covering it with abrasive substances such as ashes or cinders which will give friction and security to the feet passing over it; and (12) failing to properly select, hire, instruct, inspect, supervise, train and/or monitor contractors, service providers, or workers for snow and/or ice removal on the Premises. *See* Exhibit "B" at ¶58.

16.     The *Neville* action also alleges that Brightview was negligent in: (1) the maintenance of a dangerous condition upon the premises; (2) failing to warn Plaintiff of the dangerous condition of which Defendant knew or should have known in time to have remedied or removed same; (3) failing to barricade the area of ice which contributed to the hazardous condition; (4) failing to properly clear the aforesaid lot and walkway and/or pavement of snow and/or ice; (5) failing to inspect the aforesaid premises for defects or dangerous conditions which would create an unreasonable risk of injury to those lawfully upon it; (6) failing to remedy or remove said condition, obstruction, irregularity or unsafe condition; (7) failing to properly hire, train, supervise and/or instruct its agents, servants, workers and/or employees; (8) failing to foresee or otherwise correct the artificial accumulation and/or patch of ice due to placement of snow banks, and/or failure to abate ice patches, and/or melt/refreeze conditions, and/or the condition, of the common area adjacent to and/or near designated parking spaces in the common area on the north side of Patient First building providing access to its entrance which Defendant knew or should have known would be used by business invitees and/or persons requiring medical attention/treatment, such as Plaintiff; (9) failing to remedy or remove said condition, obstruction, irregularity or defect; (10) failing to exercise requisite care to search out and/or locate and/or treat snow and/or ice patches and spread salt or ashes; (11) failing to exercise requisite care to

abate ice/snow patches by removing the same bodily through scraping, melting or fragmentizing, or covering it with abrasive substances such as ashes or cinders which will give friction and security to the feet passing over it; and (12) failing to properly select, hire, instruct, inspect, supervise, train and/or monitor contractors, subcontractors, service providers, or workers for snow and/or ice removal on the premises. *See* Exhibit "B" at ¶82.

17.     On April 11, 2018, Patient First filed an Answer to Neville's Amended Complaint with New Matter and New Matter Crossclaim. A true and correct copy of the Answer is attached hereto as Exhibit "D".

18.     On October 22, 2018, Patient First filed an Amended Answer with New Matter and New Matter Crossclaim. A true and correct copy of the Amended Answer is attached hereto as Exhibit "E".

19.     Patient First and Brightview entered into an Agreement for the Premises that was in full force and effect on January 28, 2016. A true and correct copy of the Master Snow Management Agreement is attached hereto as Exhibit "F".

20.     Pursuant to the terms of Paragraph 8 of the Agreement, Brightview was required to maintain certain insurance including Commercial General Liability insurance.

21.     Paragraph 8 of the Agreement reads, in pertinent part, as follows:

**"INSURANCE**: Prior to commencement of any work under a Service Order, Brickman shall, at its sole expense, maintain the following types of insurance on its own behalf with insurance companies lawfully authorized to do business in the jurisdiction in which the work is located and, upon request, furnish to Client Certificates of Insurance evidencing the same."

...

"(b)  Commercial General Liability: (including Premises Operations, Independent Contractors, Products/Completed Operations, Personal Injury, and Broad Form Property Damage).

Occurrence Form with the following limits:

|       |                                  |              |
|-------|----------------------------------|--------------|
| (i)   | General Aggregate:               | $4,000,000   |
| (ii)  | Products/Completed Operations    |              |
|       | Aggregate:                       | $2,000,000   |
| (iii) | Each Occurrence:                 | $2,000,000   |
| (iv)  | Personal and Advertising Injury: | $2,000,000"  |

*See* Exhibit "F" at ¶8.

22.     Paragraph 8(f) states: "Client [Patient First] shall be added/included as Additional Insureds on the above General Liability coverage described above."

23.     The claims asserted in the *Neville* action trigger additional insured status to Patient First on Defendant Brightview's general liability policy in connection with such claims.

24.     Under the terms and conditions of the Agreement, Brightview was required to provide comprehensive general liability insurance coverage naming Patient First as an additional insured. *See* Exhibit "F" at ¶8(f).

25.     Defendant Chubb issued a policy of Commercial General Liability Insurance to Brightview policy number G24556876 providing primary commercial general liability coverage to Brightview in the amount of $2,000,000 per occurrence, with a policy period of October 1, 2015 to October 1, 2016. A true and correct copy of that policy is attached hereto as Exhibit "G".

26.     Plaintiff, Travelers, issued a policy of commercial general liability insurance to Patient First with a policy number of PJ630-8F511326 and coverage for a policy period of July 1, 2015 to July 1, 2016.

27.     Pursuant to its obligations to its named insured under this policy, Plaintiff, Travelers, is providing a defense to Patient First in the *Neville* action.

28.     Plaintiff, Travelers, has a right of subrogation in connection with all monies expended in the defense of and indemnification of Patient First in the *Neville* action.

6

29.     As the subrogee of Patient First, Plaintiff Travelers stands in the shoes of Patient First and has a right to make a claim for all rights that Patient First has against the Defendant herein as it relates to claims brought in the *Neville* action.

30.     In connection with the defense of the *Neville* action, Plaintiff Travelers has expended in excess of $32,000 to date, which includes but is not limited to, attorneys' fees, costs and expenses.

31.     Additionally, as this matter remains pending, Travelers continues to incur costs, expenses and fees.

32.     For the reasons set forth herein, Plaintiff, Travelers, asserts that its obligations to Patient First are secondary to the obligations that Defendant Chubb owes Patient First, and therefore Plaintiff has a right of subrogation against the Defendant for all monies paid in the defense of the *Neville* action on behalf of Patient First.

## COUNT I – DECLARATORY JUDGMENT
## ADDITIONAL INSURED COVERAGE

### PLAINTIFF v. CHUBB NORTH AMERICA

33.     Plaintiff, Travelers, as subrogee of Patient First, incorporates by reference the preceding paragraphs of this Complaint as if set forth herein in full.

34.     The Agreement provides that Patient First was to be named as an additional insured on Brightview's commercial general liability insurance policy. *See* Exhibit "F" at ¶8(f).

35.     Defendant Chubb issued a commercial insurance policy to Brightview under policy number G24556876 with a policy period from October 1, 2015 to October 1, 2016. *See* Exhibit "G".

36.     This policy of insurance contains an endorsement entitled "Additional Insured – Designated Person or Organization" (CG 20 26 04 13), which provides:

SCHEDULE

**"Name of Additional Person(s) Or Organization(s):** Any person or organization whom you have agreed to include as an additional insured under a written contract, provided that such contract was executed prior to the date of loss."

*See* Exhibit "G" at Bates No. 127.

37.     The endorsement defines "Who is An Insured" as follows:

**"A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions of those acting on your behalf:
1.  In the performance of your ongoing operations; or
2.  In connection with your premises owned by or rented to you."

*See* Exhibit "G" at Bates No. 127.

38.     This policy of insurance also contains an endorsement entitled "Additional Insured-Owners, Lessees or Contractors – Completed Operations" (CG 20 37 04 13), which provides:

SCHEDULE

**"Name of Additional Person(s) Or Organization(s):** Any person or organization whom you have agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss".

*See* Exhibit "G" at Bates No. 135.

39.     The endorsement defines "Who is An Insured" as follows:

**"A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard."

8

*See* Exhibit "G" at Bates No. 135.

40. The Schedule for "Additional Insured – Owners, Lessees Or Contractors – Completed Operations", provides the Location and Description of Completed Operations as follows:

> "All locations where you perform work for such additional insured pursuant to any such written contract."

*See* Exhibit "G" at Bates No. 135.

41. The policy of general liability insurance issued by Defendant Chubb to Brightview should afford Patient First with additional insured coverage in connection with the *Neville* litigation, under either the Additional Insured – Designated Person or Organization" (CG 20 26 04 13) endorsement or the Additional Insured-Owners, Lessees or Contractors – Completed Operations" (CG 20 37 04 13) endorsement.

42. The alleged injuries to Benjamin Neville allegedly arose out of Brightview's negligence.

43. As a result, Patient First must be an additional insured on Defendant Chubb's policy issued to Brightview.

44. Defendant Chubb has breached its insurance agreement by failing to provide Patient First with coverage as an additional insured under the policy issued to Brightview.

45. Defendant Chubb has failed and refused to defend, indemnify and hold harmless Patient First in connection with the *Neville* action, and therefore is in breach of its contractual obligation to Patient First.

46. By reason of Defendant Chubb's breach of contract, Travelers is providing Patient First with a defense and incurred significant expenses in connection with that defense.

9

47.    In accordance with its obligation to provide a defense and coverage to Patient First, demand is hereby made that Defendant Chubb promptly agree to defend the interests of Patient First and to provide full indemnification together with costs of the suit and counsel fees.

**WHEREFORE**, Plaintiff Travelers, as subrogee of Patient First, respectfully requests that the Court adjudge:

a. The policy issued by Defendant Chubb to Brightview as set forth above is triggered by the claims asserted against Patient First in the *Neville* action;

b. Patient First is entitled to a defense in the *Neville* action;

c. Patient First is entitled to reimbursement of attorneys' fees and costs incurred to date in defending against the *Neville* action;

d. Patient First is entitled to be indemnified against any settlement or judgment in the *Neville* lawsuit.

e. Patient First is entitled to attorneys' fees and costs in pursuing this action; and

f. Such other and further relief as may be appropriate.


WILLIAM J. FERREN & ASSOCIATES

By:    _____
       Leticia J. Santiago, Esquire
       Attorney for Plaintiff,
       Travelers Property Casualty Company of America,
       as subrogee of Patient First

## **VERIFICATION**

I, Leticia J. Santiago, state that I am the attorney for Plaintiff, Travelers Property Casualty Company of America, and that the statements made in the foregoing Complaint against are true and correct to the best of my knowledge, information and belief. The undersigned understands that the statements therein are made subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn falsification to authorities.

By: _____

Leticia J. Santiago, Esquire

Dated: January __22__, 2020

11

# EXHIBIT "A"

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

BENJAMIN NEVILLE

vs.

WEST POTTSTOWN SHOPPING CENTER LLC

NO. 2017-28528

## NOTICE TO DEFEND - CIVIL

  You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

  YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

  IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY BAR ASSOCATION
100 West Airy Street (REAR)
NORRISTOWN, PA 19404-0268

(610) 279-9660, EXTENSION 201

PRIF0034
R 10/11

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Wolpert Schreiber P.C.
By:    David E. Schreiber, Esq.
      Attorney I.D. #72907                Attorneys for Plaintiff
527 Main Street
Royersford, PA 19468
(610) 792-3304

| | |
|---|---|
| Benjamin Neville | : Court of Common Pleas |
| 306 Vaughn Road | : Montgomery County, PA |
| Royersford, PA  19468 | : |
|               Plaintiffs | : No. 2017-28528 |
|   v. | : |
| | : Civil Action - Law |
| West Pottstown Shopping Center LLC | : |
| a/k/a West Pottstown Shopping Center Company | : |
| a/k/a West Pottstown Shopping Plaza, Inc. | : |
| 2215 Quentin Rd, Brooklyn NY  11229    and | : |
| | : |
| Lena Management LLC | : |
| 2215 Quentin Rd, Brooklyn NY  11229    and | : |
| | : |
| Patient First of Pennsylvania, Inc. | : |
| 5000 Cox Rd, Suite 100, Glen Allen, VA 23060 and | : |
| | : |
| PF Pottstown, LLC | : |
| 20 S. Olive Street, Suite 203 | |
| Media, PA  19063          and | : |
| | : |
| Wright Land Development, LLC, | : |
| a/d/b/a Carl Wright Group | : |
| 20 S. Olive St, Suite 203 | : |
| Media, PA 19063          and | |
| | : |
| Wright Partners, LLC       and | : |
| 20 S. Olive St, Suite 203 | |
| Media, PA 19063 | : |
|              Defendants | : |

## NOTICE

      You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE

**Montgomery County Bar Association**
**Lawyer Referral and Information Service**
**100 W. Airy Street, P.O. Box 268**
**Norristown, PA 19401**
**Tel. No. (610) 279-9660**

COMPLAINT-CIVIL ACTION

1. Plaintiff, Benjamin Neville (sometimes hereinafter "Plaintiff") is an adult individual

residing at 306 Vaughn Road, Royersford, PA 19468.

2. Defendant West Pottstown Shopping Center LLC, a/k/a West Pottstown Shopping Center

Company, a/k/a West Pottstown Shopping Plaza, Inc. (hereinafter sometimes "Defendant West

Pottstown Shopping Center") is a New York Corporation with a principal place of business and/or

registered corporate office located at 2215 Quentin Rd, Brooklyn NY 11229, which was in

control of and/or owned and/or managed and/or maintained the property located at 119 Shoemaker

Road, Pottstown, Montgomery County, PA also known as part of the West Pottstown Shopping

Center ("Premises").

3. Defendant Lena Management LLC (hereinafter sometimes "Defendant Lena Management") is a

New York Corporation with a principal place of business and/or registered corporate office

located at 2215 Quentin Rd, Brooklyn NY 11229, which was in control of and/or managed and/or

maintained the Premises.

4. Defendant Patient First of Pennsylvania, Inc. (hereinafter sometimes "Defendant Patient First")

is a Virginia Corporation with a principal place of business and/or registered corporate office

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

located at 5000 Cox Rd, Suite 100, Glen Allen, VA 23060, which possessed and/or was in control of and/or managed and/or maintained the Premises.

5. Defendant PF Pottstown, LLC  (hereinafter sometimes "Defendant PF Pottstown")  is a Pennsylvania Corporation with a principal place of business and/or registered corporate address located at 20 S. Olive Street, Suite 203, Media, PA  19063, which was in control of and/or managed and/or maintained the Premises.

6. Defendant  Wright Land Development, LLC, a/d/b/a Carl Wright Group, a/k/a Defendant Wright Partners, LLC (hereinafter sometimes "Defendant Wright")  is a Pennsylvania Corporation with a principal place of business and/or registered corporate address located at 20 S. Olive Street, Suite 203, Media, PA  19063, which was in control of and/or managed and/or maintained the Premises.

7. Plaintiff has brought this action to recover for injuries, damages and losses Plaintiff suffered when he fell due to the negligence and/or carelessness of the Defendants, jointly and/or severally, as set forth more fully herein.

8. Defendants, jointly and/or severally, were responsible for maintaining the Premises and for providing snow and ice removal services on the Premises on the Incident date.

9. On January 28, 2016, Plaintiff Benjamin Neville was lawfully a business invitee traversing a common area as a pedestrian within the designated customer parking walkway area of the parking lot of the Premises on the north side of the Patient First building, when, due to the negligence and/or carelessness of the Defendants, their agents, servants, workers and/or employees, acting within the course and scope of their employment, Plaintiff Benjamin Neville's foot came into contact with an untreated patch of ice and/or artificial accumulation of ice causing him to slip, trip, and/or fall and to sustain serious and likely permanent personal injuries, as hereinafter more fully set forth.

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

10. It was the duty of the Defendants to keep and maintain the premises in good and in safe condition, including the treatment and/or removal by means of salt, ash and other methods, snow and ice, so that the premises would not constitute a menace, danger, nuisance, snare or trap for persons lawfully on the premises and otherwise attempting to use the Premises.

11. At the aforestated time and location, notwithstanding said duty, Defendants had created and/or permitted to exist an unsafe and/or dangerous condition devoid of any warnings and/or notices as to its unsafe condition thereby causing serious injury to Plaintiff as set forth more fully hereinafter.

12. At all times aforesaid, and for a long time prior thereto, Defendant West Pottstown Shopping Center LLC, a/k/a West Pottstown Shopping Center Company, a/k/a West Pottstown Shopping Plaza, Inc., was the owner, manager, or otherwise in exclusive possession and/or control of, the common areas of the Premises, including adjacent grounds, parking lot, and walkways on the Premises, and through their agents, servants, workers and/or employees acting within the course and scope of their employment were responsible for the care, inspection and/or maintenance of the Premises, including snow and ice removal, and/or the contracting for, hiring, selection, supervision, inspection and/or retention of a snow and ice removal contractor/assignee/worker/servant, in the area upon which the Plaintiff was caused injury.

13. At all times aforesaid, and for a long time prior thereto, Defendant Lena Management LLC was the owner, manager, or otherwise in exclusive possession and/or control of, the common areas of the Premises, including adjacent grounds, parking lot, and walkways on the Premises, and through their agents, servants, workers and/or employees acting within the course and scope of their employment were responsible for the care, inspection and/or maintenance of the Premises, including snow and ice removal, and/or responsible for the contracting, hiring, selection, supervision, inspection and/or retention of a snow and ice removal

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

contractor/assignee/worker/servant, in the area upon which the Plaintiff was caused injury.

14. At all times aforesaid, and for a long time prior thereto, Defendant Patient First of Pennsylvania, Inc. was the manager for, supervisor for or responsible entity for, or otherwise in exclusive possession and/or control of, the common areas of the Premises, including adjacent grounds, parking lot, and walkways on the Premises, and through their agents, servants, workers and/or employees acting within the course and scope of their employment were responsible for the care, inspection and/or maintenance of the Premises, including snow and ice removal, and/or responsibility for the contracting, hiring, selection, supervision, inspection and/or retention of a snow and ice removal contractor/assignee/worker/servant, in the area upon which the Plaintiff was caused injury.

15. At all times aforesaid, and for a long time prior thereto, Defendant  PF Pottstown, LLC was the manager for, supervisor for or responsible entity for, or otherwise in exclusive possession and/or control of, the common areas of the Premises, including adjacent grounds, parking lot, and walkways on the Premises, and through their agents, servants, workers and/or employees acting within the course and scope of their employment were responsible for the care, inspection and/or maintenance of the Premises, including snow and ice removal, and/or responsibility for the contracting, hiring, selection, supervision, inspection and/or retention of a snow and ice removal contractor/assignee/worker/servant, in the area upon which the Plaintiff was caused injury.

16. At all times aforesaid, and for a long time prior thereto, Defendant Wright Land Development, LLC a/d/b/a Carl Wright Group, a/k/a Wright Partners, LLC  was the manager for, supervisor for or responsible entity for, or otherwise in exclusive possession and/or control of, the common areas of the Premises, including adjacent grounds, parking lot, and walkways on the Premises, and through their agents, servants, workers and/or employees acting within the course and scope of their employment were responsible for the care, inspection and/or maintenance of the Premises,

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

including snow and ice removal, and/or responsibility for the contracting, hiring, selection, supervision, inspection and/or retention of a snow and ice removal contractor/assignee/worker/servant, in the area upon which the Plaintiff was caused injury.

17. Defendants knew or should have known that the common area of the Premises, specifically the area where Plaintiff fell in the parking lot/walkway adjacent to designated parking spots/pavement on the north side of the Patient First building where business invitees such as Plaintiff would foreseeably traverse should be treated for snow and ice.

18. Defendants, jointly and/or severally, had a duty, and failed in such duty, to use ordinary care and diligence to safeguard said common area located on the Premises in order to allow the safe passage of business invitees such as Plaintiff traversing the Premises.

19. Defendants, jointly and/or severally, had a duty, and failed in such duty, to use ordinary care and diligence to create and/or maintain said common area and/or pavement areas as set forth herein.

20. The defective and/or unsafe condition was foreseeably located in a common area of the Premises adjacent to the north side of the Patient First building in and/or adjacent to designated patient parking spaces in which Defendants knew or should have known business invitees such as Plaintiff would need to traverse.

## COUNT I: NEGLIGENCE
Plaintiff Benjamin Neville v. Defendant West Pottstown Shopping Center LLC, a/k/a West Pottstown Shopping Center Company, a/k/a West Pottstown Shopping Plaza, Inc.

21. The previous paragraphs are hereby incorporated as if set forth fully herein.

22. At all times aforesaid, and for a long time prior thereto, Defendant West Pottstown Shopping Center LLC, a/k/a West Pottstown Shopping Center Company, a/k/a West Pottstown Shopping Plaza, Inc. ("Defendant West Pottstown Shopping Center"), owned or otherwise was in exclusive

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

possession and/or control of the certain common areas of the Premises, adjacent grounds, pavement, walkways and lots on the Premises, and through its agents, servants, workers and/or employees acting within the course and scope of their employment were responsible for the care and maintenance of the Premises, specifically including the area upon which the Plaintiff was caused injury in the parking lot walking area adjacent to the Patient First building.

23. At all times aforesaid, and for a long time prior thereto, Defendant West Pottstown Shopping Center was responsible for snow and ice removal, and/or was responsible to hire, select, retain, supervise, train, inspect the snow and ice removal contractor charged with the duty of snow and ice removal, on the common areas of the Premises including the area where Plaintiff fell in the parking lot/pavement/walkway area adjacent to designate parking spots on the north side of the Patient First building on the Premises, and through its agents, servants, workers and/or employees acting within the course and scope of their employment were responsible for the treatment of, and/or contracting/inspection/supervision/training/monitoring for  snow and ice, including the area upon which the Plaintiff was caused injury.

24. As a direct and/or proximate result of the negligence and/or carelessness of Defendant West Pottstown Shopping Center set forth more fully hereinafter, Plaintiff Benjamin Neville has suffered serious personal injuries, and/or the aggravation of conditions, to his body and extremities, specifically including but not limited to: head injury, closed head injury, traumatic brain injury with confusion, lightheadedness, light-sensitivity; vestibulopathy; headaches; memory impairment; right shoulder pain/injury; neck/cervical pain/injury; restricted, limited and/or modified activities; interference with activities of daily living; economic damages; wage loss/loss of earnings; damages; loss of life's enjoyment, all to his great detriment and loss.

25. As a further direct and/or proximate result of the negligence and/or carelessness of  Defendant West Pottstown Shopping Center, as set forth more fully hereinafter, Plaintiff Benjamin Neville

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified
Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential Information and documents differently than non-confidential information and documents.

has been, and may in the future be, prevented from attending to his usual and customary duties,

avocations, occupations and interests, with loss of earning/wages and/or lost earning capacity, all

to his great detriment and loss.

26. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant

West Pottstown Shopping Center as set forth more fully hereinafter, Plaintiff Benjamin Neville

has been, and may in the future be, subjected to medical procedures and treatments, together with

their accompanying risks, hazards, pain, suffering, discomfort, humiliation and economic losses,

all to his great detriment and loss.

27. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant

West Pottstown Shopping Center, Plaintiff Benjamin Neville may be compelled to expend various

and adverse sums of money for medicines and medical treatment in attempting to cure his

aforesaid injuries.

28. Plaintiff believes and therefore avers that some or all of his injuries, damages and/or other

losses are serious and/or permanent in nature.

29. Defendant West Pottstown Shopping Center knew or should have known that the common

area of the Premises, specifically the parking lot and/or walkway adjacent to designated parking

spots on the north side of the Patient First building on the Premises was an area where business

invitees such as Plaintiff would foreseeably traverse and should be treated for snow and ice.

30. The carelessness and/or negligence of Defendant West Pottstown Shopping Center, its agents,

servants, workers and/or employees, then and there engaged in the course and scope of their

employment, consisted, inter alia, of the following:

(a) negligent maintenance of a dangerous condition upon the premises;

(b) failure to warn Plaintiff of the dangerous condition of which Defendant knew or should

have known in time to have remedied or removed same;

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(c) failure to barricade the area of ice which contributed to the hazardous condition;

(d) failure to properly clear the aforesaid lot and walkway and/or pavement of snow and/or ice;

(e) failure to inspect the aforesaid premises for defects or dangerous conditions which would create an unreasonable risk of injury to those lawfully upon it;

(f) failure to remedy or remove said condition, obstruction, irregularity or unsafe condition;

(g) failure to properly hire, train, supervise and/or instruct its agents, servants, workers and/or employees; and

( h) Failing to foresee or otherwise correct the artificial accumulation and/or patch of ice due to placement of snow banks, and/or failure to abate ice patches, and/or melt/refreeze conditions, and/or the condition, of the common area adjacent to and/or near designated parking spaces in the common area on the north side of Patient First building providing access to its entrance which Defendant knew or should have known would be used by business invitees and/or persons requiring medical attention/treatment, such as Plaintiff;

(i) failure to remedy or remove said condition, obstruction, irregularity or defect;

(j) failure to exercise requisite care to search out and/or locate and/or treat snow and/or ice patches and spread salt or ashes.

(k) failure to exercise requisite care to abate ice/snow patches by removing the same bodily through scraping, melting or fragmentizing, or covering it with abrasive substances such as ashes or cinders which will give friction and security to the feet passing over it.

(l) failure to properly select, hire, instruct, inspect, supervise, train and/or monitor contractors, service providers, or workers for snow and/or ice removal on the Premises; and

31. Defendant West Pottstown Shopping Center did cause all of the acts set forth herein so as to be jointly and/or severally liable.

32. At all times relevant hereto, Plaintiff Benjamin Neville was a business invitee of Defendants.

WHEREFORE, Plaintiff Benjamin Neville hereby demands judgment against Defendant West Pottstown Shopping Center LLC, a/k/a West Pottstown Shopping Center Company, a/k/a West Pottstown Shopping Plaza, Inc., jointly and/or severally, in an amount in excess of the jurisdictional limits for compulsory arbitration, plus damages, interest, costs and such other relief as is deemed just and proper.

COUNT II: NEGLIGENCE
Plaintiff Benjamin Neville v. Defendant Lena Management LLC

33. The previous paragraphs are hereby incorporated as if set forth fully herein.

34. At all times aforesaid, and for a long time prior thereto, Defendant Lena Management LLC (Defendant Lena Management), was in possession and/or control of the certain common areas of the Premises, adjacent grounds, pavement, walkways and lots on the Premises, and through its agents, servants, workers and/or employees acting within the course and scope of their employment were responsible for the care and maintenance of the Premises, specifically including the area upon which the Plaintiff was caused injury in the parking lot walking area adjacent to the Patient First building.

35. At all times aforesaid, and for a long time prior thereto, Defendant Lena Management was responsible for snow and ice removal, and/or was responsible to hire, select, retain, supervise, train, inspect the snow and ice removal contractor charged with the duty of snow and ice removal, on the common areas of the Premises including the area where Plaintiff fell in the parking lot/pavement/walkway area adjacent to designate parking spots on the north side of the Patient First building on the Premises, and through its agents, servants, workers and/or employees acting

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

within the course and scope of their employment were responsible for the treatment of, and/or contracting/inspection/supervision/training/monitoring for snow and ice, including the area upon which the Plaintiff was caused injury.

36. As a direct and/or proximate result of the negligence and/or carelessness of Defendant Lena Management as forth more fully hereinafter, Plaintiff Benjamin Neville has suffered serious personal injuries, and/or the aggravation of conditions, to his body and extremities, specifically including but not limited to: head injury, closed head injury, traumatic brain injury with confusion, lightheadedness, light-sensitivity; vestibulopathy; headaches; memory impairment; right shoulder pain/injury; neck/cervical pain/injury; restricted, limited and/or modified activities; interference with activities of daily living; economic damages; wage loss/loss of earnings; damages; loss of life's enjoyment, all to his great detriment and loss.

37. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant Lena Management, as set forth more fully hereinafter, Plaintiff Benjamin Neville has been, and may in the future be, prevented from attending to his usual and customary duties, avocations, occupations and interests, with loss of earning/wages and/or lost earning capacity, all to his great detriment and loss.

38. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant Lena Management as set forth more fully hereinafter, Plaintiff Benjamin Neville has been, and may in the future be, subjected to medical procedures and treatments, together with their accompanying risks, hazards, pain, suffering, discomfort, humiliation and economic losses, all to his great detriment and loss.

39. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant Lena Management, Plaintiff Benjamin Neville may be compelled to expend various and adverse sums of money for medicines and medical treatment in attempting to cure his aforesaid injuries.

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

40. Plaintiff believes and therefore avers that some or all of his injuries, damages and/or other losses are serious and/or permanent in nature.

41. Defendant Lena Management knew or should have known that the common area of the Premises, specifically the parking lot and/or walkway adjacent to designated parking spots on the north side of the Patient First building on the Premises was an area where business invitees such as Plaintiff would foreseeably traverse and should be treated for snow and ice.

42. The carelessness and/or negligence of Defendant Lena Management, its agents, servants, workers and/or employees, then and there engaged in the course and scope of their employment, consisted, inter alia, of the following:

(a) negligent maintenance of a dangerous condition upon the premises;

(b) failure to warn Plaintiff of the dangerous condition of which Defendant knew or should have known in time to have remedied or removed same;

(c) failure to barricade the area of ice which contributed to the hazardous condition;

(d) failure to properly clear the aforesaid lot and walkway and/or pavement of snow and/or ice;

(e) failure to inspect the aforesaid premises for defects or dangerous conditions which would create an unreasonable risk of injury to those lawfully upon it;

(f) failure to remedy or remove said condition, obstruction, irregularity or unsafe condition;

(g) failure to properly hire, train, supervise and/or instruct its agents, servants, workers and/or employees; and

( h) Failing to foresee or otherwise correct the artificial accumulation and/or patch of ice due to placement of snow banks, and/or failure to abate ice patches, and/or melt/refreeze conditions, and/or the condition, of the common area adjacent to and/or near designated parking

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

spaces in the common area on the north side of Patient First building providing access to its entrance which Defendant knew or should have known would be used by business invitees and/or persons requiring medical attention/treatment, such as Plaintiff;

(i) failure to remedy or remove said condition, obstruction, irregularity or defect;

(j) failure to exercise requisite care to search out and/or locate and/or treat snow and/or ice patches and spread salt or ashes.

(k) failure to exercise requisite care to abate ice/snow patches by removing the same bodily through scraping, melting or fragmentizing, or covering it with abrasive substances such as ashes or cinders which will give friction and security to the feet passing over it.

(l) failure to properly select, hire, instruct, inspect, supervise, train and/or monitor contractors, service providers, or workers for snow and/or ice removal on the Premises; and

43. Defendant Lena Management did cause all of the acts set forth herein so as to be jointly and/or severally liable.

44. At all times relevant hereto, Plaintiff Benjamin Neville was a business invitee of Defendants.

WHEREFORE, Plaintiff Benjamin Neville hereby demands judgment against Defendant Lena Management LLC, jointly and/or severally, in an amount in excess of the jurisdictional limits for compulsory arbitration, plus damages, interest, costs and such other relief as is deemed just and proper.

## COUNT III: NEGLIGENCE
### Plaintiff Benjamin Neville v. Defendant Patient First of Pennsylvania, Inc.

45. The previous paragraphs are hereby incorporated as if set forth fully herein.

46. At all times aforesaid, and for a long time prior thereto, Patient First of Pennsylvania, Inc. (Defendant Patient First), was in possession and/or control of the certain common areas of the Premises, adjacent grounds, pavement, walkways and lots on the Premises, and through its agents,

Case# 2017-28526-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

servants, workers and/or employees acting within the course and scope of their employment were responsible for the care and maintenance of the Premises, specifically including the area upon which the Plaintiff was caused injury in the parking lot walking area adjacent to the Patient First building.

47. At all times aforesaid, and for a long time prior thereto, Defendant Patient First was responsible for snow and ice removal, and/or was responsible to hire, select, retain, supervise, train, inspect the snow and ice removal contractor charged with the duty of snow and ice removal, on the common areas of the Premises including the area where Plaintiff fell in the parking lot/pavement/walkway area adjacent to designate parking spots on the north side of the Patient First building on the Premises, and through its agents, servants, workers and/or employees acting within the course and scope of their employment were responsible for the treatment of, and/or contracting/inspection/supervision/training/monitoring for snow and ice, including the area upon which the Plaintiff was caused injury.

48. As a direct and/or proximate result of the negligence and/or carelessness of Defendant Patient First as forth more fully hereinafter, Plaintiff Benjamin Neville has suffered serious personal injuries, and/or the aggravation of conditions, to his body and extremities, specifically including but not limited to: head injury, closed head injury, traumatic brain injury with confusion, lightheadedness, light-sensitivity; vestibulopathy; headaches; memory impairment; right shoulder pain/injury; neck/cervical pain/injury; restricted, limited and/or modified activities; interference with activities of daily living; economic damages; wage loss/loss of earnings; damages; loss of life's enjoyment, all to his great detriment and loss.

49. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant Patient First, as set forth more fully hereinafter, Plaintiff Benjamin Neville has been, and may in the future be, prevented from attending to his usual and customary duties, avocations, occupations

Case# 2017-28526-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

and interests, with loss of earning/wages and/or lost earning capacity, all to his great detriment and loss.

50. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant Patient First as set forth more fully hereinafter, Plaintiff Benjamin Neville has been, and may in the future be, subjected to medical procedures and treatments, together with their accompanying risks, hazards, pain, suffering, discomfort, humiliation and economic losses, all to his great detriment and loss.

51. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant Patient First, Plaintiff Benjamin Neville may be compelled to expend various and adverse sums of money for medicines and medical treatment in attempting to cure his aforesaid injuries.

52. Plaintiff believes and therefore avers that some or all of his injuries, damages and/or other losses are serious and/or permanent in nature.

53. Defendant Patient First knew or should have known that the common area of the Premises, specifically the parking lot and/or walkway adjacent to designated parking spots on the north side of the Patient First building on the Premises was an area where business invitees such as Plaintiff would foreseeably traverse and should be treated for snow and ice.

54. The carelessness and/or negligence of Defendant Patient First, its agents, servants, workers and/or employees, then and there engaged in the course and scope of their employment, consisted, inter alia, of the following:

 (a) negligent maintenance of a dangerous condition upon the premises;

 (b) failure to warn Plaintiff of the dangerous condition of which Defendant knew or should have known in time to have remedied or removed same;

 (c) failure to barricade the area of ice which contributed to the hazardous condition;

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(d) failure to properly clear the aforesaid lot and walkway and/or pavement of snow and/or ice;

(e) failure to inspect the aforesaid premises for defects or dangerous conditions which would create an unreasonable risk of injury to those lawfully upon it;

(f) failure to remedy or remove said condition, obstruction, irregularity or unsafe condition;

(g) failure to properly hire, train, supervise and/or instruct its agents, servants, workers and/or employees; and

( h) Failing to foresee or otherwise correct the artificial accumulation and/or patch of ice due to placement of snow banks, and/or failure to abate ice patches, and/or melt/refreeze conditions, and/or the condition, of the common area adjacent to and/or near designated parking spaces in the common area on the north side of Patient First building providing access to its entrance which Defendant knew or should have known would be used by business invitees and/or persons requiring medical attention/treatment, such as Plaintiff;

(i) failure to remedy or remove said condition, obstruction, irregularity or defect;

(j) failure to exercise requisite care to search out and/or locate and/or treat snow and/or ice patches and spread salt or ashes.

(k) failure to exercise requisite care to abate ice/snow patches by removing the same bodily through scraping, melting or fragmentizing, or covering it with abrasive substances such as ashes or cinders which will give friction and security to the feet passing over it.

(l) failure to properly select, hire, instruct, inspect, supervise, train and/or monitor contractors, service providers, or workers for snow and/or ice removal on the Premises; and

55. Defendant Patient First did cause all of the acts set forth herein so as to be jointly and/or severally liable.

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

56. At all times relevant hereto, Plaintiff Benjamin Neville was a business invitee of Defendants.

WHEREFORE, Plaintiff Benjamin Neville hereby demands judgment against Defendant Patient First of Pennsylvania, Inc., jointly and/or severally, in an amount in excess of the jurisdictional limits for compulsory arbitration, plus damages, interest, costs and such other relief as is deemed just and proper.

COUNT IV: NEGLIGENCE
Plaintiff Benjamin Neville v.  Defendant PF Pottstown, LLC

57.  The previous paragraphs are hereby incorporated as if set forth fully herein.

58. At all times aforesaid, and for a long time prior thereto, Defendant PF Pottstown, LLC (Defendant PF Pottstown), was in possession and/or control of the certain common areas of the Premises, adjacent grounds, pavement, walkways and lots on the Premises, and through its agents, servants, workers and/or employees acting within the course and scope of their employment were responsible for the care and maintenance of the Premises, specifically including the area upon which the Plaintiff was caused injury in the parking lot walking area adjacent to the Patient First building.

59. At all times aforesaid, and for a long time prior thereto, Defendant PF Pottstown was responsible for snow and ice removal, and/or was responsible to hire, select, retain, supervise, train, inspect the snow and ice removal contractor charged with the duty of snow and ice removal, on the common areas of the Premises including the area where Plaintiff fell in the parking lot/pavement/walkway area adjacent to designate parking spots on the north side of the Patient First building on the Premises, and through its agents, servants, workers and/or employees acting within the course and scope of their employment were responsible for the treatment of, and/or contracting/inspection/supervision/training/monitoring for  snow and ice, including the area upon which the Plaintiff was caused injury.

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 07/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

60. As a direct and/or proximate result of the negligence and/or carelessness of Defendant PF Pottstown as forth more fully hereinafter, Plaintiff Benjamin Neville has suffered serious personal injuries, and/or the aggravation of conditions, to his body and extremities, specifically including but not limited to: head injury; closed head injury; traumatic brain injury, with interference with cognitive function, confusion, lightheadedness, light-sensitivity; vestibulopathy; headaches; memory impairment; right shoulder pain/injury; neck/cervical pain/injury; restricted, limited and/or modified activities; interference with activities of daily living; economic damages; wage loss/loss of earnings; damages; loss of life's enjoyment, all to his great detriment and loss.

61. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant PF Pottstown, as set forth more fully hereinafter, Plaintiff Benjamin Neville has been, and may in the future be, prevented from attending to his usual and customary duties, avocations, occupations and interests, with loss of earning/wages and/or lost earning capacity, all to his great detriment and loss.

62. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant PF Pottstown as set forth more fully hereinafter, Plaintiff Benjamin Neville has been, and may in the future be, subjected to medical procedures and treatments, together with their accompanying risks, hazards, pain, suffering, discomfort, humiliation and economic losses, all to his great detriment and loss.

63. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant PF Pottstown, Plaintiff Benjamin Neville may be compelled to expend various and adverse sums of money for medicines and medical treatment in attempting to cure his aforesaid injuries.

64. Plaintiff believes and therefore avers that some or all of his injuries, damages and/or other losses are serious and/or permanent in nature.

65. Defendant PF Pottstown knew or should have known that the common area of the Premises,

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

specifically the parking lot and/or walkway adjacent to designated parking spots on the north side of the Patient First building on the Premises was an area where business invitees such as Plaintiff would foreseeably traverse and should be treated for snow and ice.

66. The carelessness and/or negligence of Defendant PF Pottstown, its agents, servants, workers and/or employees, then and there engaged in the course and scope of their employment, consisted, inter alia, of the following:

(a) negligent maintenance of a dangerous condition upon the premises;

(b) failure to warn Plaintiff of the dangerous condition of which Defendant knew or should have known in time to have remedied or removed same;

(c) failure to barricade the area of ice which contributed to the hazardous condition;

(d) failure to properly clear the aforesaid lot and walkway and/or pavement of snow and/or ice;

(e) failure to inspect the aforesaid premises for defects or dangerous conditions which would create an unreasonable risk of injury to those lawfully upon it;

(f) failure to remedy or remove said condition, obstruction, irregularity or unsafe condition;

(g) failure to properly hire, train, supervise and/or instruct its agents, servants, workers and/or employees; and

( h) Failing to foresee or otherwise correct the artificial accumulation and/or patch of ice due to placement of snow banks, and/or failure to abate ice patches, and/or melt/refreeze conditions, and/or the condition, of the common area adjacent to and/or near designated parking spaces in the common area on the north side of Patient First building providing access to its entrance which Defendant knew or should have known would be used by business invitees and/or persons requiring medical attention/treatment, such as Plaintiff;

(i) failure to remedy or remove said condition, obstruction, irregularity or defect;

(j) failure to exercise requisite care to search out and/or locate and/or treat snow and/or ice patches and spread salt or ashes.

(k) failure to exercise requisite care to abate ice/snow patches by removing the same bodily through scraping, melting or fragmentizing, or covering it with abrasive substances such as ashes or cinders which will give friction and security to the feet passing over it.

(l) failure to properly select, hire, instruct, inspect, supervise, train and/or monitor contractors, service providers, or workers for snow and/or ice removal on the Premises; and

67. Defendant PF Pottstown did cause all of the acts set forth herein so as to be jointly and/or severally liable.

68. At all times relevant hereto, Plaintiff Benjamin Neville was a business invitee of Defendants.

WHEREFORE, Plaintiff Benjamin Neville hereby demands judgment against Defendant PF Pottstown, LLC, jointly and/or severally, in an amount in excess of the jurisdictional limits for compulsory arbitration, plus damages, interest, costs and such other relief as is deemed just and proper.

## COUNT V: NEGLIGENCE
### Plaintiff Benjamin Neville v. Defendant Defendant Wright Land Development, LLC, a/d/b/a Carl Wright Group, a/k/a Defendant Wright Partners, LLC

69. The previous paragraphs are hereby incorporated as if set forth fully herein.

70. At all times aforesaid, and for a long time prior thereto, Defendant Wright Land Development, LLC, a/d/b/a Carl Wright Group, a/k/a Defendant Wright Partners, LLC (Defendant Wright), was in possession and/or control of the certain common areas of the Premises, adjacent grounds, pavement, walkways and lots on the Premises, and through its agents, servants, workers and/or employees acting within the course and scope of their employment were responsible for the care and maintenance of the Premises, specifically including the area upon which the Plaintiff was

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

caused injury in the parking lot walking area adjacent to the Patient First building.

71. At all times aforesaid, and for a long time prior thereto, Defendant Wright was responsible for snow and ice removal, and/or was responsible to hire, select, retain, supervise, train, inspect the snow and ice removal contractor charged with the duty of snow and ice removal, on the common areas of the Premises including the area where Plaintiff fell in the parking lot/pavement/walkway area adjacent to designate parking spots on the north side of the Patient First building on the Premises, and through its agents, servants, workers and/or employees acting within the course and scope of their employment were responsible for the treatment of, and/or contracting/inspection/supervision/training/monitoring for snow and ice, including the area upon which the Plaintiff was caused injury.

72. As a direct and/or proximate result of the negligence and/or carelessness of Defendant Wright as forth more fully hereinafter, Plaintiff Benjamin Neville has suffered serious personal injuries, and/or the aggravation of conditions, to his body and extremities, specifically including but not limited to: head injury, closed head injury, traumatic brain injury with confusion, lightheadedness, light-sensitivity; vestibulopathy; headaches; memory impairment; right shoulder pain/injury; neck/cervical pain/injury; restricted, limited and/or modified activities; interference with activities of daily living; economic damages; wage loss/loss of earnings; damages; loss of life's enjoyment, all to his great detriment and loss.

73. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant Wright, as set forth more fully hereinafter, Plaintiff Benjamin Neville has been, and may in the future be, prevented from attending to his usual and customary duties, avocations, occupations and interests, with loss of earning/wages and/or lost earning capacity, all to his great detriment and loss.

74. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant Wright as set forth more fully hereinafter, Plaintiff Benjamin Neville has been, and may in the future be, subjected to medical procedures and treatments, together with their accompanying risks, hazards, pain, suffering, discomfort, humiliation and economic losses, all to his great detriment and loss.

75. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant Wright, Plaintiff Benjamin Neville may be compelled to expend various and adverse sums of money for medicines and medical treatment in attempting to cure his aforesaid injuries.

76. Plaintiff believes and therefore avers that some or all of his injuries, damages and/or other losses are serious and/or permanent in nature.

77. Defendant Wright knew or should have known that the common area of the Premises, specifically the parking lot and/or walkway adjacent to designated parking spots on the north side of the Patient First building on the Premises was an area where business invitees such as Plaintiff would foreseeably traverse and should be treated for snow and ice.

78. The carelessness and/or negligence of Defendant Wright, its agents, servants, workers and/or employees, then and there engaged in the course and scope of their employment, consisted, inter alia, of the following:

    (a) negligent maintenance of a dangerous condition upon the premises;

    (b) failure to warn Plaintiff of the dangerous condition of which Defendant knew or should have known in time to have remedied or removed same;

    (c) failure to barricade the area of ice which contributed to the hazardous condition;

    (d) failure to properly clear the aforesaid lot and walkway and/or pavement of snow and/or ice;

    (e) failure to inspect the aforesaid premises for defects or dangerous conditions which

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

would create an unreasonable risk of injury to those lawfully upon it;

(f) failure to remedy or remove said condition, obstruction, irregularity or unsafe condition;

(g) failure to properly hire, train, supervise and/or instruct its agents, servants, workers and/or employees; and

( h) Failing to foresee or otherwise correct the artificial accumulation and/or patch of ice due to placement of snow banks, and/or failure to abate ice patches, and/or melt/refreeze conditions, and/or the condition, of the common area adjacent to and/or near designated parking spaces in the common area on the north side of Patient First building providing access to its entrance which Defendant knew or should have known would be used by business invitees and/or persons requiring medical attention/treatment, such as Plaintiff;

(i) failure to remedy or remove said condition, obstruction, irregularity or defect;

(j) failure to exercise requisite care to search out and/or locate and/or treat snow and/or ice patches and spread salt or ashes.

(k) failure to exercise requisite care to abate ice/snow patches by removing the same bodily through scraping, melting or fragmentizing, or covering it with abrasive substances such as ashes or cinders which will give friction and security to the feet passing over it.

(l) failure to properly select, hire, instruct, inspect, supervise, train and/or monitor contractors, service providers, or workers for snow and/or ice removal on the Premises; and

79. Defendant Wright did cause all of the acts set forth herein so as to be jointly and/or severally liable.

80. At all times relevant hereto, Plaintiff Benjamin Neville was a business invitee of Defendants.

WHEREFORE, Plaintiff Benjamin Neville hereby demands judgment against Defendant Wright Land Development, LLC, a/d/b/a Carl Wright Group, a/k/a Defendant Wright Partners,

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

LLC  jointly and/or severally, in an amount in excess of the jurisdictional limits for compulsory

arbitration, plus damages, interest, costs and such other relief as is deemed just and proper.

WOLPERT SCHREIBER P.C.

Dated: 1|15|18

David E. Schreiber, Esquire
Attorneys for Plaintiffs

Case# 2017-28528-12 Docketed at Montgomery County Prothonotary on 01/16/2018 5:13 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## VERIFICATION

I, Benjamin Neville, Plaintiff in this Civil Action, affirm that the facts set forth in the foregoing

Civil Action Complaint are true and correct to the best of my knowledge, information and belief.

Dated: 1/9/2018

Benjamin Neville

# EXHIBIT "B"

Case# 2017-28528-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:06 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

BENJAMIN NEVILLE

vs.

WEST POTTSTOWN SHOPPING CENTER LLC

NO. 2017-28528

## NOTICE TO DEFEND - CIVIL

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY BAR ASSOCATION
100 West Airy Street (REAR)
NORRISTOWN, PA 19404-0268

(610) 279-9660, EXTENSION 201

PRIF0034
R 10/11

WOLPERT SCHREIBER P.C.
David E. Schreiber, Esquire
Attorney I.D. No. 72907                    Attorneys for Plaintiff
527 Main Street, Royersford, PA 19468
(T) 610-792-3304; (F) 610-792-3306

| | |
|---|---|
| Benjamin Neville | : COURT OF COMMON PLEAS, |
| Plaintiff | : MONTGOMERY COUNTY, PA |
| v. | : Civil Action No.: 2017-28528 |
| West Pottstown Shopping Center, LLC, | : |
| a/k/a West Pottstown Shopping Center Co., | : |
| a/k/a West Pottstown Shopping Plaza, Inc.   and | : |
| Lena Management, LLC                        and | : |
| Patient First of Pennsylvania, Inc.         and | : |
| PF Pottstown, LLC                           and | : |
| | |
| Bright View Landscapes, LLC, a/d/b/a | : (Civil Action No. 2018-00328 |
| Bright View Landscape Services, Inc. | : consolidated under 2017-28528) |
| f/k/a The Brickman Group, Ltd., LLC         and | : |
| | |
| Robert Graeff, d/b/a Graeff Landscape Co. | : (Civil Action No.  2018-00843 |
| Defendants | : consolidated under 2017-28528) |

## NOTICE

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

THIS  OFFICE  CAN  PROVIDE  YOU  WITH  INFORMATION  ABOUT  HIRING  A LAWYER.
IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE

**Montgomery County Bar Association**
**Lawyer Referral and Information Service**
**100 W. Airy Street, P.O. Box 268**
**Norristown, PA 19401**
**Tel. No. (610) 279-9660**

Case# 2017-28528-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:06 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## COMPLAINT-CIVIL ACTION

1.Plaintiff, Benjamin Neville (sometimes hereinafter "Plaintiff") is an adult individual residing at 306 Vaughn Road, Royersford, PA 19468.

2.Defendant West Pottstown Shopping Center LLC, a/k/a West Pottstown Shopping Center Company, a/k/a West Pottstown Shopping Plaza, Inc. (hereinafter sometimes "Defendant West Pottstown Shopping Center") is a New York Corporation with a principal place of business and/or registered corporate office located at 2215 Quentin Rd, Brooklyn NY  11229, which was in control of and/or owned and/or managed and/or maintained the property located at 119 Shoemaker Road, Pottstown, Montgomery County, PA also known as part of the West Pottstown Shopping Center ("Premises").

3.Defendant Lena Management LLC (hereinafter sometimes "Defendant Lena Management") is a New York Corporation with a principal place of business and/or registered corporate office located at 2215 Quentin Rd, Brooklyn NY  11229, which was in control of and/or managed and/or maintained the Premises.

4. Defendant Patient First of Pennsylvania, Inc.  (hereinafter sometimes "Defendant Patient First") is a Virginia Corporation with a principal place of business and/or registered corporate office located at 5000 Cox Rd, Suite 100, Glen Allen, VA 23060, which possessed and/or was in control of and/or managed and/or maintained the Premises.

5. Defendant PF Pottstown, LLC  (hereinafter sometimes "Defendant PF Pottstown")  is a Pennsylvania Corporation with a principal place of business and/or registered corporate address located at 20 S. Olive Street, Suite 203, Media, PA  19063, which was in control of and/or managed and/or maintained the Premises.

6. Defendant BrightView Landscapes, LLC a/d/b/a Bright View Landscape Services, Inc. formerly trading as The Brickman Group Ltd. LLC (hereinafter sometimes "Defendant Brickman Group"),

Case# 2017-28528-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:06 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

is a company with a designated place of business located at 401 Plymouth Road, Suite 500, Plymouth Meeting, Montgomery County, PA 19462.

7. Defendant Robert Graeff, doing business as Graeff Landscape Company (hereinafter sometimes "Defendant Graeff"), is an adult individual with a principal place of business located at 117 Oakwood Lane, Phoenixville, PA 19460.

8. Plaintiff has brought this action to recover for injuries, damages and losses Plaintiff suffered when he fell due to the negligence and/or carelessness of the Defendants, jointly and/or severally, as set forth more fully herein.

9. Defendants, jointly and/or severally, were responsible for maintaining the Premises and for providing snow and ice removal services on the Premises on the Incident date.

10. At all times pertinent hereto, Defendant Brickman Group was a snow/ice removal contractor for the Premises whereby Defendant Brickman Group was charged with, and paid for, providing snow and ice removal and treatment services on the Premises.

11. At all times pertinent hereto, Defendant Graeff was a snow/ice removal removal contractor and/or subcontractor for the Premises where by Defendant Graeff was charged with, and paid for, providing snow and ice removal and treatment services on the Premises.

12. On or about January 28, 2016, at or about 12:00 P.M., Plaintiff Benjamin Neville was lawfully a business invitee traversing a common area as a pedestrian in the parking lot of the Premises on the north side of the Patient First building, when, due to the negligence and/or carelessness of the Defendants, their agents, servants, workers and/or employees, acting within the course and scope of their employment, Plaintiff Benjamin Neville's foot came into contact with an untreated patch of ice and/or artificial accumulation of ice causing him to slip, trip, and/or fall and to sustain serious and likely permanent personal injuries, as hereinafter more fully set forth.

Case# 2017-28528-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:06 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the United Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

13.  It was the duty of the Defendants to keep and maintain the premises in good and in safe condition, including the treatment and/or removal by means of salt, ash and other methods, snow and ice, so that the premises would not constitute a menace, danger, nuisance, snare or trap for persons lawfully on the premises and otherwise attempting to use the Premises.

14.  At the aforestated time and location, notwithstanding said duty, Defendants had created and/or permitted to exist an unsafe and/or dangerous condition devoid of any warnings and/or notices as to its unsafe condition thereby causing serious injury to Plaintiff as set forth more fully hereinafter.

15.  At all times aforesaid, and for a long time prior thereto, Defendant West Pottstown Shopping Center LLC, a/k/a West Pottstown Shopping Center Company, a/k/a West Pottstown Shopping Plaza, Inc., was the owner, manager, or otherwise in exclusive possession and/or control of, the common areas of the Premises, including adjacent grounds, parking lot, and walkways on the Premises, and through their agents, servants, workers and/or employees acting within the course and scope of their employment were responsible for the care, inspection and/or maintenance of the Premises, including snow and ice removal, and/or the contracting for, hiring, selection, supervision, inspection and/or retention of a snow and ice removal contractor/assignee/worker/servant, in the area upon which the Plaintiff was caused injury.

16.  At all times aforesaid, and for a long time prior thereto, Defendant Lena Management LLC was the owner, manager, or otherwise in exclusive possession and/or control of, the common areas of the Premises, including adjacent grounds, parking lot, and walkways on the Premises, and through their agents, servants, workers and/or employees acting within the course and scope of their employment were responsible for the care, inspection and/or maintenance of the Premises, including snow and ice removal, and/or responsible for the contracting, hiring, selection,

supervision, inspection and/or retention of a snow and ice removal

contractor/assignee/worker/servant, in the area upon which the Plaintiff was caused injury.

17.  At all times aforesaid, and for a long time prior thereto, Defendant  Patient First of

Pennsylvania, Inc. was the manager for, supervisor for or responsible entity for, or otherwise in

exclusive possession and/or control of, the common areas of the Premises, including adjacent

grounds, parking lot, and walkways on the Premises, and through their agents, servants, workers

and/or employees acting within the course and scope of their employment were responsible for the

care, inspection and/or maintenance of the Premises, including snow and ice removal, and/or

responsibility for the contracting, hiring, selection, supervision, inspection and/or retention of a

snow and ice removal contractor/assignee/worker/servant, in the area upon which the Plaintiff was

caused injury.

18.  At all times aforesaid, and for a long time prior thereto, Defendant  PF Pottstown, LLC was

the manager for, supervisor for or responsible entity for, or otherwise in exclusive possession

and/or control of, the common areas of the Premises, including adjacent grounds, parking lot, and

walkways on the Premises, and through their agents, servants, workers and/or employees acting

within the course and scope of their employment were responsible for the care, inspection and/or

maintenance of the Premises, including snow and ice removal, and/or responsibility for the

contracting, hiring, selection, supervision, inspection and/or retention of a snow and ice removal

contractor/assignee/worker/servant, in the area upon which the Plaintiff was caused injury.

19. Defendants knew or should have known that the common area of the Premises, specifically the

area where Plaintiff fell in the parking lot/walkway adjacent to designated parking spots/pavement

on the north side of the Patient First building where business invitees such as Plaintiff would

foreseeably traverse should be treated for snow and ice.

Case# 2017-28528-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:06 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the United Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2017-28528-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:05 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

20. Defendants, jointly and/or severally, had a duty, and failed in such duty, to use ordinary care and diligence to safeguard said common area located on the Premises in order to allow the safe passage of business invitees such as Plaintiff traversing the Premises.

21. Defendants, jointly and/or severally, had a duty, and failed in such duty, to use ordinary care and diligence to create and/or maintain said common area and/or pavement areas as set forth herein.

23. The defective and/or unsafe condition was foreseeably located in a common area of the Premises adjacent to the north side of the Patient First building in and/or adjacent to designated patient parking spaces in which Defendants knew or should have known business invitees such as Plaintiff would need to traverse.

24. At all times pertinent hereto, Plaintiff was a business invitee on the Premises.


## COUNT I: NEGLIGENCE
**Plaintiff Benjamin Neville v. Defendant West Pottstown Shopping Center LLC, a/k/a West Pottstown Shopping Center Company, a/k/a West Pottstown Shopping Plaza, Inc.**

25. The previous paragraphs are hereby incorporated as if set forth fully herein.

26. At all times aforesaid, and for a long time prior thereto, Defendant West Pottstown Shopping Center LLC, a/k/a West Pottstown Shopping Center Company, a/k/a West Pottstown Shopping Plaza, Inc. ("Defendant West Pottstown Shopping Center"), owned or otherwise was in exclusive possession and/or control of the certain common areas of the Premises, adjacent grounds, pavement, walkways and lots on the Premises, and through its agents, servants, workers and/or employees acting within the course and scope of their employment were responsible for the care and maintenance of the Premises, specifically including the area upon which the Plaintiff was caused injury in the parking lot walking area adjacent to the Patient First building.

Case# 2017-28528-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:05 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

27. At all times aforesaid, and for a long time prior thereto, Defendant West Pottstown Shopping Center was responsible for snow and ice removal, and/or was responsible to hire, select, retain, supervise, train, inspect the snow and ice removal contractor charged with the duty of snow and ice removal, on the common areas of the Premises including the area where Plaintiff fell in the parking lot/pavement/walkway area adjacent to designate parking spots on the north side of the Patient First building on the Premises, and through its agents, servants, workers and/or employees acting within the course and scope of their employment were responsible for the treatment of, and/or contracting/inspection/supervision/training/monitoring for snow and ice, including the area upon which the Plaintiff was caused injury.

28. As a direct and/or proximate result of the negligence and/or carelessness of Defendant West Pottstown Shopping Center set forth more fully hereinafter, Plaintiff Benjamin Neville has suffered serious personal injuries, and/or the aggravation of conditions, to his body and extremities, specifically including but not limited to: head injury, closed head injury, traumatic brain injury with confusion, lightheadedness, light-sensitivity; vestibulopathy; headaches; memory impairment; shoulder pain/injury; neck pain/injury; restricted, limited and/or modified activities; interference with activities of daily living; economic damages; wage loss/loss of earnings; damages; loss of life's enjoyment, all to his great detriment and loss.

29. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant West Pottstown Shopping Center, as set forth more fully hereinafter, Plaintiff Benjamin Neville has been, and may in the future be, prevented from attending to his usual and customary duties, avocations, occupations and interests, with loss of earning/wages and/or lost earning capacity, all to his great detriment and loss.

30. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant West Pottstown Shopping Center as set forth more fully hereinafter, Plaintiff Benjamin Neville

Case# 2017-28528-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:05 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

has been, and may in the future be, subjected to medical procedures and treatments, together with their accompanying risks, hazards, pain, suffering, discomfort, humiliation and economic losses, all to his great detriment and loss.

31. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant West Pottstown Shopping Center, Plaintiff Benjamin Neville may be compelled to expend various and adverse sums of money for medicines and medical treatment in attempting to cure his aforesaid injuries.

32. Plaintiff believes and therefore avers that some or all of his injuries, damages and/or other losses are serious and/or permanent in nature.

33. Defendant West Pottstown Shopping Center knew or should have known that the common area of the Premises, specifically the parking lot and/or walkway adjacent to designated parking spots on the north side of the Patient First building on the Premises was an area where business invitees such as Plaintiff would foreseeably traverse and should be treated for snow and ice.

34. The carelessness and/or negligence of Defendant West Pottstown Shopping Center, its agents, servants, workers and/or employees, then and there engaged in the course and scope of their employment, consisted, inter alia, of the following:

     (a) negligent maintenance of a dangerous condition upon the premises;

     (b) failure to warn Plaintiff of the dangerous condition of which Defendant knew or should have known in time to have remedied or removed same;

     (c) failure to barricade the area of ice which contributed to the hazardous condition;

     (d) failure to properly clear the aforesaid lot and walkway and/or pavement of snow and/or ice;

     (e) failure to inspect the aforesaid premises for defects or dangerous conditions which would create an unreasonable risk of injury to those lawfully upon it;

Case# 2017-29526-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:06 PM, Fee = $0.00 . The filer certifies that this filing complies with the provisions of the Public Access Policy of the United Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(f) failure to remedy or remove said condition, obstruction, irregularity or unsafe condition;

(g) failure to properly hire, train, supervise and/or instruct its agents, servants, workers and/or employees; and

( h) Failing to foresee or otherwise correct the artificial accumulation and/or patch of ice due to placement of snow banks, and/or failure to abate ice patches, and/or melt/refreeze conditions, and/or the condition, of the common area adjacent to and/or near designated parking spaces in the common area on the north side of Patient First building providing access to its entrance which Defendant knew or should have known would be used by business invitees and/or persons requiring medical attention/treatment, such as Plaintiff;

(i) failure to remedy or remove said condition, obstruction, irregularity or defect;

(j) failure to exercise requisite care to search out and/or locate and/or treat snow and/or ice patches and spread salt or ashes.

(k) failure to exercise requisite care to abate ice/snow patches by removing the same bodily through scraping, melting or fragmentizing, or covering it with abrasive substances such as ashes or cinders which will give friction and security to the feet passing over it.

(l) failure to properly select, hire, instruct, inspect, supervise, train and/or monitor contractors, service providers, or workers for snow and/or ice removal on the Premises; and

35. Defendant West Pottstown Shopping Center did cause all of the acts set forth herein so as to be jointly and/or severally liable.

36. At all times relevant hereto, Plaintiff Benjamin Neville was a business invitee of Defendants.

WHEREFORE, Plaintiff Benjamin Neville hereby demands judgment against Defendant West Pottstown Shopping Center LLC, a/k/a West Pottstown Shopping Center Company, a/k/a West Pottstown Shopping Plaza, Inc., jointly and/or severally, in an amount in excess of the

jurisdictional limits for compulsory arbitration, plus damages, interest, costs and such other relief as is deemed just and proper.

## COUNT II: NEGLIGENCE
### Plaintiff Benjamin Neville v. Defendant Lena Management LLC

37. The previous paragraphs are hereby incorporated as if set forth fully herein.

38. At all times aforesaid, and for a long time prior thereto, Defendant Lena Management LLC (Defendant Lena Management), was in possession and/or control of the certain common areas of the Premises, adjacent grounds, pavement, walkways and lots on the Premises, and through its agents, servants, workers and/or employees acting within the course and scope of their employment were responsible for the care and maintenance of the Premises, specifically including the area upon which the Plaintiff was caused injury in the parking lot walking area adjacent to the Patient First building.

39. At all times aforesaid, and for a long time prior thereto, Defendant Lena Management was responsible for snow and ice removal, and/or was responsible to hire, select, retain, supervise, train, inspect the snow and ice removal contractor charged with the duty of snow and ice removal, on the common areas of the Premises including the area where Plaintiff fell in the parking lot/pavement/walkway area adjacent to designate parking spots on the north side of the Patient First building on the Premises, and through its agents, servants, workers and/or employees acting within the course and scope of their employment were responsible for the treatment of, and/or contracting/inspection/supervision/training/monitoring for  snow and ice, including the area upon which the Plaintiff was caused injury.

40. As a direct and/or proximate result of the negligence and/or carelessness of Defendant Lena Management as forth more fully hereinafter, Plaintiff Benjamin Neville has suffered serious personal injuries, and/or the aggravation of conditions, to his body and extremities, specifically including but not limited to: head injury, closed head injury, traumatic brain injury with confusion, lightheadedness, light-sensitivity; vestibulopathy; headaches; memory impairment; shoulder pain/injury; neck pain/injury; restricted, limited and/or modified activities; interference with activities of daily living; economic damages; wage loss/loss of earnings; damages; loss of life's enjoyment, all to his great detriment and loss.

41. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant Lena Management, Plaintiff Benjamin Neville has been, and may in the future be, prevented from attending to his usual and customary duties, avocations, occupations and interests, with loss of earning/wages and/or lost earning capacity, all to his great detriment and loss.

42. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant Lena Management, Plaintiff Benjamin Neville has been, and may in the future be, subjected to medical procedures and treatments, together with their accompanying risks, hazards, pain, suffering, discomfort, humiliation and economic losses, all to his great detriment and loss.

43. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant Lena Management, Plaintiff Benjamin Neville may be compelled to expend various and adverse sums of money for medicines and medical treatment in attempting to cure his aforesaid injuries.

44. Plaintiff believes and therefore avers that some or all of his injuries, damages and/or other losses are serious and/or permanent in nature.

45. Defendant Lena Management knew or should have known that the common area of the Premises, specifically the parking lot and/or walkway adjacent to designated parking spots on the north side of the Patient First building on the Premises was an area where business invitees such as

Case# 2017-23528-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:06 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the United Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Plaintiff would foreseeably traverse and should be treated for snow and ice.

46.  The carelessness and/or negligence of Defendant Lena Management, its agents, servants, workers and/or employees, then and there engaged in the course and scope of their employment, consisted, inter alia, of the following:

(a) negligent maintenance of a dangerous condition upon the premises;

(b) failure to warn Plaintiff of the dangerous condition of which Defendant knew or should have known in time to have remedied or removed same;

(c) failure to barricade the area of ice which contributed to the hazardous condition;

(d) failure to properly clear the aforesaid lot and walkway and/or pavement of snow and/or ice;

(e) failure to inspect the aforesaid premises for defects or dangerous conditions which would create an unreasonable risk of injury to those lawfully upon it;

(f) failure to remedy or remove said condition, obstruction, irregularity or unsafe condition;

(g) failure to properly hire, train, supervise and/or instruct its agents, servants, workers and/or employees; and

( h) Failing to foresee or otherwise correct the artificial accumulation and/or patch of ice due to placement of snow banks, and/or failure to abate ice patches, and/or melt/refreeze conditions, and/or the condition, of the common area adjacent to and/or near designated parking spaces in the common area on the north side of Patient First building providing access to its entrance which Defendant knew or should have known would be used by business invitees and/or persons requiring medical attention/treatment, such as Plaintiff;

(i) failure to remedy or remove said condition, obstruction, irregularity or defect;

(j) failure to exercise requisite care to search out and/or locate and/or treat snow and/or ice patches and spread salt or ashes.

(k) failure to exercise requisite care to abate ice/snow patches by removing the same bodily through scraping, melting or fragmentizing, or covering it with abrasive substances such as ashes or cinders which will give friction and security to the feet passing over it; and

(l) failure to properly select, hire, instruct, inspect, supervise, train and/or monitor contractors, service providers, or workers for snow and/or ice removal on the Premises; and

47. Defendant Lena Management did cause all of the acts set forth herein so as to be jointly and/or severally liable.

48. At all times relevant hereto, Plaintiff Benjamin Neville was a business invitee of Defendants.

WHEREFORE, Plaintiff Benjamin Neville hereby demands judgment against Defendant Lena Management LLC, jointly and/or severally, in an amount in excess of the jurisdictional limits for compulsory arbitration, plus damages, interest, costs and such other relief as is deemed just and proper.

## COUNT III: NEGLIGENCE
### Plaintiff Benjamin Neville v. Defendant Patient First of Pennsylvania, Inc.

49. The previous paragraphs are hereby incorporated as if set forth fully herein.

50. At all times aforesaid, and for a long time prior thereto, Patient First of Pennsylvania, Inc. (Defendant Patient First), was in possession and/or control of the certain common areas of the Premises, adjacent grounds, pavement, walkways and lots on the Premises, and through its agents, servants, workers and/or employees acting within the course and scope of their employment were responsible for the care and maintenance of the Premises, specifically including the area upon which the Plaintiff was caused injury in the parking lot walking area adjacent to the Patient First building.

Case# 2017-28528-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:06 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2017-28528-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:06 PM, Fee = 50.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the United Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

51. At all times aforesaid, and for a long time prior thereto, Defendant Patient First was responsible for snow and ice removal, and/or was responsible to hire, select, retain, supervise, train, inspect the snow and ice removal contractor charged with the duty of snow and ice removal, on the common areas of the Premises including the area where Plaintiff fell in the parking lot/pavement/walkway area adjacent to designate parking spots on the north side of the Patient First building on the Premises, and through its agents, servants, workers and/or employees acting within the course and scope of their employment were responsible for the treatment of, and/or contracting/inspection/supervision/training/monitoring for snow and ice, including the area upon which the Plaintiff was caused injury.

52. As a direct and/or proximate result of the negligence and/or carelessness of Defendant Patient First, Plaintiff Benjamin Neville has suffered serious personal injuries, and/or the aggravation of conditions, to his body and extremities, specifically including but not limited to: head injury, closed head injury, traumatic brain injury with confusion, lightheadedness, light-sensitivity; vestibulopathy; headaches; memory impairment; shoulder pain/injury; neck pain/injury; restricted, limited and/or modified activities; interference with activities of daily living; economic damages; wage loss/loss of earnings; damages; loss of life's enjoyment, all to his great detriment and loss.

53. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant Patient First, Plaintiff Benjamin Neville has been, and may in the future be, prevented from attending to his usual and customary duties, avocations, occupations and interests, with loss of earning/wages and/or lost earning capacity, all to his great detriment and loss.

54. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant Patient First, Plaintiff Benjamin Neville has been, and may in the future be, subjected to medical procedures and treatments, together with their accompanying risks, hazards, pain, suffering, discomfort, humiliation and economic losses, all to his great detriment and loss.

Case# 2017-28828-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:08 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the United Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

55. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant Patient First, Plaintiff Benjamin Neville may be compelled to expend various and adverse sums of money for medicines and medical treatment in attempting to cure his aforesaid injuries.

56. Plaintiff believes and therefore avers that some or all of his injuries, damages and/or other losses are serious and/or permanent in nature.

57. Defendant Patient First knew or should have known that the common area of the Premises, specifically the parking lot and/or walkway adjacent to designated parking spots on the north side of the Patient First building on the Premises was an area where business invitees such as Plaintiff would foreseeably traverse and should be treated for snow and ice.

58. The carelessness and/or negligence of Defendant Patient First, its agents, servants, workers and/or employees, then and there engaged in the course and scope of their employment, consisted, inter alia, of the following:

      (a) negligent maintenance of a dangerous condition upon the premises;

      (b) failure to warn Plaintiff of the dangerous condition of which Defendant knew or should have known in time to have remedied or removed same;

      (c) failure to barricade the area of ice which contributed to the hazardous condition;

      (d) failure to properly clear the aforesaid lot and walkway and/or pavement of snow and/or ice;

      (e) failure to inspect the aforesaid premises for defects or dangerous conditions which would create an unreasonable risk of injury to those lawfully upon it;

      (f) failure to remedy or remove said condition, obstruction, irregularity or unsafe condition;

      (g) failure to properly hire, train, supervise and/or instruct its agents, servants, workers and/or employees; and

( h) Failing to foresee or otherwise correct the artificial accumulation and/or patch of ice due to placement of snow banks, and/or failure to abate ice patches, and/or melt/refreeze conditions, and/or the condition, of the common area adjacent to and/or near designated parking spaces in the common area on the north side of Patient First building providing access to its entrance which Defendant knew or should have known would be used by business invitees and/or persons requiring medical attention/treatment, such as Plaintiff;

(i) failure to remedy or remove said condition, obstruction, irregularity or defect;

(j) failure to exercise requisite care to search out and/or locate and/or treat snow and/or ice patches and spread salt or ashes.

(k) failure to exercise requisite care to abate ice/snow patches by removing the same bodily through scraping, melting or fragmentizing, or covering it with abrasive substances such as ashes or cinders which will give friction and security to the feet passing over it; and

(l) failure to properly select, hire, instruct, inspect, supervise, train and/or monitor contractors, service providers, or workers for snow and/or ice removal on the Premises; and

59. Defendant Patient First did cause all of the acts set forth herein so as to be jointly and/or severally liable.

60. At all times relevant hereto, Plaintiff Benjamin Neville was a business invitee of Defendants.

WHEREFORE, Plaintiff Benjamin Neville hereby demands judgment against Defendant Patient First of Pennsylvania, Inc., jointly and/or severally, in an amount in excess of the jurisdictional limits for compulsory arbitration, plus damages, interest, costs and such other relief as is deemed just and proper.

Case# 2017-28626-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:06 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

<u>COUNT IV: NEGLIGENCE</u>
**Plaintiff Benjamin Neville v.  Defendant PF Pottstown, LLC**

61.  The previous paragraphs are hereby incorporated as if set forth fully herein.

62. At all times aforesaid, and for a long time prior thereto, Defendant PF Pottstown, LLC

(Defendant PF Pottstown), was in possession and/or control of the certain common areas of the

Premises, adjacent grounds, pavement, walkways and lots on the Premises, and through its agents,

servants, workers and/or employees acting within the course and scope of their employment were

responsible for the care and maintenance of the Premises, specifically including the area upon

which the Plaintiff was caused injury in the parking lot walking area adjacent to the Patient First

building.

63. At all times aforesaid, and for a long time prior thereto, Defendant PF Pottstown was

responsible for snow and ice removal, and/or was responsible to hire, select, retain, supervise,

train, inspect the snow and ice removal contractor charged with the duty of snow and ice removal,

on the common areas of the Premises including the area where Plaintiff fell in the parking

lot/pavement/walkway area adjacent to designate parking spots on the north side of the Patient

First building on the Premises, and through its agents, servants, workers and/or employees acting

within the course and scope of their employment were responsible for the treatment of, and/or

contracting/inspection/supervision/training/monitoring for  snow and ice, including the area upon

which the Plaintiff was caused injury.

64. As a direct and/or proximate result of the negligence and/or carelessness of Defendant PF

Pottstown, Plaintiff Benjamin Neville has suffered serious personal injuries, and/or the

aggravation of conditions, to his body and extremities, specifically including but not limited to:

head injury; closed head injury; traumatic brain injury, with interference with cognitive function,

confusion, lightheadedness, light-sensitivity; vestibulopathy; headaches; memory impairment;

Case# 2017-28528-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:06 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

shoulder pain/injury; neck pain/injury; restricted, limited and/or modified activities; interference with activities of daily living; economic damages; wage loss/loss of earnings; damages; loss of life's enjoyment, all to his great detriment and loss.

65. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant PF Pottstown, Plaintiff Benjamin Neville has been, and may in the future be, prevented from attending to his usual and customary duties, avocations, occupations and interests, with loss of earning/wages and/or lost earning capacity, all to his great detriment and loss.

66. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant PF Pottstown, Plaintiff Benjamin Neville has been, and may in the future be, subjected to medical procedures and treatments, together with their accompanying risks, hazards, pain, suffering, discomfort, humiliation and economic losses, all to his great detriment and loss.

67. As a further direct and/or proximate result of the negligence and/or carelessness of  Defendant PF Pottstown, Plaintiff Benjamin Neville may be compelled to expend various and adverse sums of money for medicines and medical treatment in attempting to cure his aforesaid injuries.

68. Plaintiff believes and therefore avers that some or all of his injuries, damages and/or other losses are serious and/or permanent in nature.

69. Defendant PF Pottstown knew or should have known that the common area of the Premises, specifically the parking lot and/or walkway adjacent to designated parking spots on the north side of the Patient First building on the Premises was an area where business invitees such as Plaintiff would foreseeably traverse and should be treated for snow and ice.

70.  The carelessness and/or negligence of Defendant PF Pottstown, its agents, servants, workers and/or employees, then and there engaged in the course and scope of their employment, consisted, inter alia, of the following:

      (a) negligent maintenance of a dangerous condition upon the premises;

Case# 2017-28528-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:05 PM, PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(b) failure to warn Plaintiff of the dangerous condition of which Defendant knew or should have known in time to have remedied or removed same;

(c) failure to barricade the area of ice which contributed to the hazardous condition;

(d) failure to properly clear the aforesaid lot and walkway and/or pavement of snow and/or ice;

(e) failure to inspect the aforesaid premises for defects or dangerous conditions which would create an unreasonable risk of injury to those lawfully upon it;

(f) failure to remedy or remove said condition, obstruction, irregularity or unsafe condition;

(g) failure to properly hire, train, supervise and/or instruct its agents, servants, workers and/or employees; and

( h) Failing to foresee or otherwise correct the artificial accumulation and/or patch of ice due to placement of snow banks, and/or failure to abate ice patches, and/or melt/refreeze conditions, and/or the condition, of the common area adjacent to and/or near designated parking spaces in the common area on the north side of Patient First building providing access to its entrance which Defendant knew or should have known would be used by business invitees and/or persons requiring medical attention/treatment, such as Plaintiff;

(i) failure to remedy or remove said condition, obstruction, irregularity or defect;

(j) failure to exercise requisite care to search out and/or locate and/or treat snow and/or ice patches and spread salt or ashes.

(k) failure to exercise requisite care to abate ice/snow patches by removing the same bodily through scraping, melting or fragmentizing, or covering it with abrasive substances such as ashes or cinders which will give friction and security to the feet passing over it; and

(l) failure to properly select, hire, instruct, inspect, supervise, train and/or monitor

Case# 2017-26526-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:06 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

contractors, service providers, or workers for snow and/or ice removal on the Premises; and

71. Defendant PF Pottstown did cause all of the acts set forth herein so as to be jointly and/or severally liable.

72. At all times relevant hereto, Plaintiff Benjamin Neville was a business invitee of Defendants.

WHEREFORE, Plaintiff Benjamin Neville hereby demands judgment against Defendant PF Pottstown, LLC, jointly and/or severally, in an amount in excess of the jurisdictional limits for compulsory arbitration, plus damages, interest, costs and such other relief as is deemed just and proper.

## COUNT V: NEGLIGENCE
**Plaintiff Benjamin Neville v. Defendant BrightView Landscapes, LLC a/d/b/a Bright View Landscape Services, Inc. formerly trading as The Brickman Group Ltd. LLC**

73. The previous paragraphs are hereby incorporated as if set forth fully herein.

74. At all times aforesaid, and for a long time prior thereto, Defendant BrightView Landscapes, LLC a/d/b/a Bright View Landscape Services, Inc. formerly trading as The Brickman Group Ltd. LLC ("Defendant Brickman Group"), was a snow/ice removal contractor for the Premises whereby Defendant Brickman Group was in possession, custoday and/or control of the Premises for purposes of, and charged with, and paid for, providing snow and ice removal and treatment services on the Premises, including the area upon which Plaintiff was caused injury in the parking lot walking area adjacent to the Patient First building.

75. At all times aforesaid, and for a long time prior thereto, Defendant Brickman Group was responsible for, and/or charged with the duty of, snow and ice removal, and/or was responsible to hire, select, retain, supervise, and train, and inspect for snow and ice removal, on the common areas of the Premises including the area where Plaintiff fell in the parking lot/pavement/walkway area adjacent to designate parking spots on the north side of the Patient First building on the

Case# 2017-28528-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:08 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Premises, and through its agents, subcontractors, servants, workers and/or employees acting within the course and scope of their employment were responsible for the treatment of, and/or contracting/inspection/supervision/training/monitoring for snow and ice, including the area upon which the Plaintiff was caused injury.

76. As a direct and/or proximate result of the negligence and/or carelessness of Defendant Brickman Group as set forth more fully hereinafter, Plaintiff Benjamin Neville has suffered serious personal injuries, and/or the aggravation of conditions, to his body and extremities, specifically including but not limited to: head injury, closed head injury, traumatic brain injury with confusion, lightheadedness, light-sensitivity; vestibulopathy; headaches; memory impairment; shoulder pain/injury; neck pain/injury; restricted, limited and/or modified activities; interference with activities of daily living; economic damages; wage loss/loss of earnings; damages; loss of life's enjoyment, all to his great detriment and loss.

77. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant Brickman Group, Plaintiff Benjamin Neville has been, and may in the future be, prevented from attending to his usual and customary duties, avocations, occupations and interests, with loss of earning/wages and/or lost earning capacity, all to his great detriment and loss.

78. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant Brickman Group, Plaintiff Benjamin Neville has been, and may in the future be, subjected to medical procedures and treatments, together with their accompanying risks, hazards, pain, suffering, discomfort, humiliation and economic losses, all to his great detriment and loss.

79. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant Brickman Group, Plaintiff Benjamin Neville may be compelled to expend various and adverse sums of money for medicines and medical treatment in attempting to cure his aforesaid injuries.

Case# 2017-28528-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:06 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

80. Plaintiff believes and therefore avers that some or all of his injuries, damages and/or other losses are serious and/or permanent in nature.

81. Defendant Brickman Group knew or should have known that the common area of the Premises, specifically the parking lot and/or walkway adjacent to designated parking spots on the north side of the Patient First building on the Premises was an area where business invitees such as Plaintiff would foreseeably traverse and should be treated for snow and ice.

82. The carelessness and/or negligence of Defendant Brickman Group, its agents, servants, workers and/or employees, then and there engaged in the course and scope of their employment, consisted, <u>inter alia,</u> of the following:

      (a) negligent maintenance of a dangerous condition upon the premises;

      (b) failure to warn Plaintiff of the dangerous condition of which Defendant knew or should have known in time to have remedied or removed same;

      (c) failure to barricade the area of ice which contributed to the hazardous condition;

      (d) failure to properly clear the aforesaid lot and walkway and/or pavement of snow and/or ice;

      (e) failure to inspect the aforesaid premises for defects or dangerous conditions which would create an unreasonable risk of injury to those lawfully upon it;

      (f) failure to remedy or remove said condition, obstruction, irregularity or unsafe condition;

      (g) failure to properly hire, train, supervise and/or instruct its agents, servants, workers and/or employees;

      ( h) Failing to foresee or otherwise correct the artificial accumulation and/or patch of ice due to placement of snow banks, and/or failure to abate ice patches, and/or melt/refreeze conditions, and/or the condition, of the common area adjacent to and/or near designated parking

spaces in the common area on the north side of Patient First building providing access to its entrance which Defendant knew or should have known would be used by business invitees and/or persons requiring medical attention/treatment, such as Plaintiff;

(i) failure to remedy or remove said condition, obstruction, irregularity or defect;

(j) failure to exercise requisite care to search out and/or locate and/or treat snow and/or ice patches and spread salt or ashes.

(k) failure to exercise requisite care to abate ice/snow patches by removing the same bodily through scraping, melting or fragmentizing, or covering it with abrasive substances such as ashes or cinders which will give friction and security to the feet passing over it; and

(l) failure to properly select, hire, instruct, inspect, supervise, train and/or monitor contractors, subcontractors, service providers, or workers for snow and/or ice removal on the Premises; and

83. Defendant Brickman Group did cause all of the acts set forth herein so as to be jointly and/or severally liable.

WHEREFORE, Plaintiff Benjamin Neville hereby demands judgment against Defendant BrightView Landscapes, LLC a/d/b/a Bright View Landscape Services, Inc. formerly trading as The Brickman Group Ltd. LLC, jointly and/or severally, in an amount in excess of the jurisdictional limits for compulsory arbitration, plus damages, interest, costs and such other relief as is deemed just and proper.

<u>COUNT VI: NEGLIGENCE</u>
**Plaintiff Benjamin Neville v. Defendant Robert Graeff, doing business as Graeff Landscape Company**

84. The previous paragraphs are hereby incorporated as if set forth fully herein.

85. At all times aforesaid, and for a long time prior thereto, Defendant Defendant Robert Graeff, doing business as Graeff Landscape Company (hereinafter sometimes "Defendant Graeff"), , was

Case# 2017-28526-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:08 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2017-28528-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:05 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

a snow/ice removal contractor/subcontractor for the Premises whereby Defendant Graeff was in possession, custody and/or control of the Premises for purposes of, and charged with, and paid for, providing snow and ice removal and treatment services on the Premises, including the area upon which Plaintiff was caused injury in the parking lot walking area adjacent to the Patient First building.

86. At all times aforesaid, and for a long time prior thereto, Defendant Graeff was responsible for, and/or charged with the duty of, snow and ice removal, and/or was responsible to hire, select, retain, supervise, and train, and inspect for snow and ice removal, on the common areas of the Premises including the area where Plaintiff fell in the parking lot/pavement/walkway area adjacent to designate parking spots on the north side of the Patient First building on the Premises, and through its agents, subcontractors, servants, workers and/or employees acting within the course and scope of their employment were responsible for the treatment of, and/or contracting/inspection/supervision/training/monitoring for snow and ice, including the area upon which the Plaintiff was caused injury.

87. As a direct and/or proximate result of the negligence and/or carelessness of Defendant Graeff as set forth more fully hereinafter, Plaintiff Benjamin Neville has suffered serious personal injuries, and/or the aggravation of conditions, to his body and extremities, specifically including but not limited to: head injury, closed head injury, traumatic brain injury with confusion, lightheadedness, light-sensitivity; vestibulopathy; headaches; memory impairment; shoulder pain/injury; neck pain/injury; restricted, limited and/or modified activities; interference with activities of daily living; economic damages; wage loss/loss of earnings; damages; loss of life's enjoyment, all to his great detriment and loss.

88. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant Graeff, Plaintiff Benjamin Neville has been, and may in the future be, prevented from attending to

Case# 2017-28528-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:06 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

his usual and customary duties, avocations, occupations and interests, with loss of earning/wages and/or lost earning capacity, all to his great detriment and loss.

89. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant Graeff, Plaintiff Benjamin Neville has been, and may in the future be, subjected to medical procedures and treatments, together with their accompanying risks, hazards, pain, suffering, discomfort, humiliation and economic losses, all to his great detriment and loss.

90. As a further direct and/or proximate result of the negligence and/or carelessness of Defendant Graeff, Plaintiff Benjamin Neville may be compelled to expend various and adverse sums of money for medicines and medical treatment in attempting to cure his aforesaid injuries.

91. Plaintiff believes and therefore avers that some or all of his injuries, damages and/or other losses are serious and/or permanent in nature.

92. Defendant Graeff knew or should have known that the common area of the Premises, specifically the parking lot and/or walkway adjacent to designated parking spots on the north side of the Patient First building on the Premises was an area where business invitees such as Plaintiff would foreseeably traverse and should be treated for snow and ice.

93. The carelessness and/or negligence of Defendant Graeff, its agents, servants, workers and/or employees, then and there engaged in the course and scope of their employment, consisted, inter alia, of the following:

      (a) negligent maintenance of a dangerous condition upon the premises;

      (b) failure to warn Plaintiff of the dangerous condition of which Defendant knew or should have known in time to have remedied or removed same;

      (c) failure to barricade the area of ice which contributed to the hazardous condition;

      (d) failure to properly clear the aforesaid lot and walkway and/or pavement of snow and/or ice;

Case# 2017-28828-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:08 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the United Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(e) failure to inspect the aforesaid premises for defects or dangerous conditions which would create an unreasonable risk of injury to those lawfully upon it;

(f) failure to remedy or remove said condition, obstruction, irregularity or unsafe condition;

(g) failure to properly hire, train, supervise and/or instruct its agents, servants, workers and/or employees;

( h) Failing to foresee or otherwise correct the artificial accumulation and/or patch of ice due to placement of snow banks, and/or failure to abate ice patches, and/or melt/refreeze conditions, and/or the condition, of the common area adjacent to and/or near designated parking spaces in the common area on the north side of Patient First building providing access to its entrance which Defendant knew or should have known would be used by business invitees and/or persons requiring medical attention/treatment, such as Plaintiff;

(i) failure to remedy or remove said condition, obstruction, irregularity or defect;

(j) failure to exercise requisite care to search out and/or locate and/or treat snow and/or ice patches and spread salt or ashes.

(k) failure to exercise requisite care to abate ice/snow patches by removing the same bodily through scraping, melting or fragmentizing, or covering it with abrasive substances such as ashes or cinders which will give friction and security to the feet passing over it; and

(l) failure to properly select, hire, instruct, inspect, supervise, train and/or monitor contractors, subcontractors, service providers, or workers for snow and/or ice removal on the Premises; and

94. Defendant Graeff did cause all of the acts set forth herein so as to be jointly and/or severally liable.

Case# 2017-28528-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:06 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

      WHEREFORE, Plaintiff Benjamin Neville hereby demands judgment against Defendant Robert Graeff, doing business as Graeff Landscape Company, jointly and/or severally, in an amount in excess of the jurisdictional limits for compulsory arbitration, plus damages, interest, costs and such other relief as is deemed just and proper.

WOLPERT SCHREIBER P.C.

Dated: 3/22/18

David E. Schreiber, Esquire
Attorneys for Plaintiffs

Case# 2017-28528-23 Docketed at Montgomery County Prothonotary on 03/22/2018 4:05 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## VERIFICATION

I, Benjamin Neville, Plaintiff in this Civil Action, affirm that the facts set forth in the foregoing Civil Action Amended Complaint are true and correct to the best of my knowledge, information and belief.

Dated: 3/22/2018

Benjamin Neville

# EXHIBIT "C"

WOLPERT SCHREIBER MCDONNELL P.C.
David E. Schreiber, Esquire
Attorney I.D. No. 72907                          Attorneys for Plaintiff
527 Main Street, Royersford, PA 19468
(T) 610-792-3304; (F) 610-792-3306

| | | |
|---|---|---|
| Benjamin Neville | | : COURT OF COMMON PLEAS, |
| Plaintiff | | : MONTGOMERY COUNTY, PA |
| v. | | : Civil Action No.: 2017-28528 |
| West Pottstown Shopping Center, LLC, | | : |
| a/k/a West Pottstown Shopping Center Co., | | : |
| a/k/a West Pottstown Shopping Plaza, Inc. | and | : |
| Lena Management, LLC | and | : |
| Patient First of Pennsylvania, Inc. | and | : |
| PF Pottstown, LLC | and | : |
| Bright View Landscapes, LLC, a/d/b/a | | : (Civil Action No. 2018-00328 |
| Bright View Landscape Services, Inc. | | : consolidated under 2017-28528) |
| f/k/a The Brickman Group, Ltd., LLC | and | : |
| Robert Graeff, d/b/a Graeff Landscape Co. | | : (Civil Action No.  2018-00843 |
| Defendants | | : consolidated under 2017-28528) |

## PLAINTIFFS' CASE MANAGEMENT/SETTLEMENT CONFERENCE STATEMENT
Conference:  August 15, 2019 at  10:00 am

### A.Brief Summary of the Case

This arises from a fall on ice on January 28, 2016. Defendants negligently failed to properly treat or remove a patch of ice on the commercial premises of Patient First in Pottstown, PA.  Patient First was open for business.  Plaintiff Benjamin Neville was a business invitee at the commercial premises when he slipped an fell on the untreated patch of ice in the parking lot walkway area adjacent to designated patient parking spots, where it was foreseeable that patient/business invitees would need to walk.  Ben Neville has sustained injuries including closed head injuries. There was a winter snow event January 22-23, 2016. The Defendant Brickman Group and Defendant Graeff were the Snow/Ice removal contractor and subcontractor for the premises hired to treat and remove snow and ice.  The snow was piled up by the contractor/subcontractor Defendants into snowbanks at Patient First.  There were also melt-refreeze conditions for several days thereafter and before the date of incident. Patient First occupied the premises and was responsible to monitor for snow/ice and melt-freeze conditions and to keep the premises safe for its business invitee customers.

### Bodily Injury

Benjamin Neville underwent prompt treatment at Patient First on 1/28/16 including for falling on ice and hitting back of head, dazed, headache, nausea and followed back up on 1/31/16, for

closed head injury, concussion, headache, nausea, contusion. He was sent to the Pottstown Hospital on 1/31/16 due to the severity of the concussion and head injury symptoms.

He followed up with a Neurosurgeon on 2/2/16, 2/12/16, and 5/9/16 including with positive/objective findings of cognitive impairment due to the closed head injury.

The Neurosurgeon referred him for cognitive/concussion therapy at Bryn Mawr Rehab Hospital. Mr. Neville underwent extensive therapy at Bryn Mawr Rehab from 2/16/16 to 12/2/16. This included: Vision/Occupational Therapy, Vestibular/Physical Therapy and Speech Therapy.

His doctors disabled him from work from the date of the injury, 1/28/16 to January 2017. He lost his job due to the injury disability and period of inability to return. After a three month job search, he found new employment in or about April 2017 at a lower starting salary.

He has had ongoing closed head injury symptoms, difficulties and residual problems due to this fall injury. He has had follow up neurologic care with Dr. Lubeck, DO, board-certified Neurologist. Due to the extent of the ongoing cognitive symptoms and problems, he was prescribed a Neuropsychological exam, which he underwent on 9/26/18 with Dr. Kutinsky, Psy.D. The exam confirmed ongoing cognitive impairments due to the 1/28/16 fall injury.

### Economic Damages

-Wage Loss

Disabled from work due to the injury from 1/28/16 – January 2017. Thereafter, it took approximately 3 months to find a new job. Plaintiff found a new job as of approximately April 2018 whereby he started at a lesser salary.
Wage loss exceeds $46,000.

-Health Insurance Liens:
-$14,829 (first health insurance carrier).
-Plaintiff changed health insurance. Additional subrogation pending.

-Medical Out of Pockets/Copays


## B. Trial Demanded

This matter exceeds the jurisdictional limits for arbitration as indicated by Plaintiff's Civil Action Complaint. A jury trial demand was tendered by Defendants.

## C. List of Discovery to be Completed

Document discovery is ongoing.

Plaintiff served Supplemental Requests for Production of Documents and Supplemental Interrogatories to Defendant Patient First of Pennsylvania, Inc. on July 3, 2019.   Defendant Patient First's discovery responses remain outstanding.   Depending on those responses, additional fact depositions are likely.

Plaintiff's Expert Reports are pending.

## D. Pre-Trial Motions

Probable Motion in Limine regarding hearsay statements in medical records.

## E. Proposed Timetable Regarding Trial Praecipe/Issues Precluding Filing Trial Praecipe

Timetable: 120 days (4 months) from present to allow for completion of document discovery, any additional fact depositions and production of expert reports.

## F. Estimate of Length of Trial

3 ½ Days is estimated.

## G. Settlement Posture

Plaintiff's Demand:  $250,000
Defendants' Offer:  Unknown

## H.Name of Person with authority to be available by phone or in person for Conference:

Plaintiff Benjamin Neville

Respectfully Submitted,
WOLPERT SCHREIBER MCDONNELL P.C.

Dated: 8/6/19

David E. Schreiber
Attorneys for Plaintiffs

# EXHIBIT "D"

Case# 2017-28528-33 Docketed at Montgomery County Prothonotary on 04/11/2018 1:21 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

TO: PLAINTIFF AND CODEFENDANTS YOU ARE
HEREBY NOTIFIED TO PLEAD TO THE ENCLOSED NEW
MATTER WITHIN TWENTY (20) DAYS FROM THE
SERVICE HEREOF OR A DEFAULT JUDGMENT MAY BE
ENTERED AGAINST YOU.

_____
Leticia J. Santiago, Esquire

WILLIAM J. FERREN & ASSOCIATES
BY: Leticia J. Santiago, Esquire
Attorney ID#: 308519                          Attorney for Defendant
10 Sentry Parkway, Suite 301                  Patient First of Pennsylvania, Inc.
Blue Bell, PA  19422
(215) 274-1724

*Mailing Address:*
PO Box 2903
Hartford, CT 06104-2903

---

| | |
|---|---|
| BENJAMIN NEVILLE | COURT OF COMMON PLEAS |
| | MONTGOMERY COUNTY, PA |
| v. | |
| | CIVIL ACTION – LAW |
| WEST POTTSTOWN SHOPPING | |
| CENTER LLC, LENA MANAGEMENT LLC, | NO.  2017-28528 |
| PATIENT FIRST OF PENNSYLVANIA, INC. | |
| PF POTTSTOWN, LLC, | JURY TRIAL DEMANDED |
| | |
| BRIGHT VIEW LANDSCAPES, LLC, | (Civil Action No. 2018-00328 |
| a/d/b/a BRIGHT VIEW LANDSCAPE SERVICES, | consolidated under 2017-28528) |
| f/k/a THE BRICKMAN GROUP, LTD., LLC | |
| | |
| ROBERT GRAEFF, d/b/a GRAEFF LANDSCAPE | (Civil Action No. 2018-00843 |
| CO. | consolidated under 2017-28528) |

**ANSWER, NEW MATTER, AND NEW MATTER CROSS-CLAIM OF PATIENT FIRST
OF PENNSYLVANIA, INC. TO PLAINTIFF'S AMENDED COMPLAINT**

Defendant Patient First of Pennsylvania, Inc. hereby answers Plaintiff's Amended

Complaint and avers New Matter and New Matter Crossclaim pursuant to Pa. R.C.P. 1031.1 as

follows:

Case# 2017-28528-33 Docketed at Montgomery County Prothonotary on 04/11/2018 1:21 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

1.      Denied. After reasonable investigation, Answering Defendant is without sufficient knowledge or information to form any belief as to the truth or falsity of the averments of paragraphs 1. Therefore, they are deemed denied and strict proof thereof is demanded at the trial of this cause, if material or relevant.

2.      This paragraph is directed towards a party other than the Answering Defendant and hence, no response is required.

3.      This paragraph is directed towards a party other than the Answering Defendant and hence, no response is required.

4.      Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure, except admit that Answering Defendant Patient First of Pennsylvania, Inc. is a Virginia Corporation with a business address of 5000 Cox Road, Suite 100, Glen Allen, VA 23060.

5.      This paragraph is directed towards a party other than the Answering Defendant and hence, no response is required.

6.      This paragraph is directed towards a party other than the Answering Defendant and hence, no response is required.

7.      This paragraph is directed towards a party other than the Answering Defendant and hence, no response is required.

8.      Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure. To the extent that there are any factual averments in this paragraph, they are denied in that after reasonable investigation, Answering Defendant is without sufficient knowledge or information to form any belief as to the truth or falsity of the averments

Case# 2017-28528-33 Docketed at Montgomery County Prothonotary on 04/11/2018 1:21 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

of paragraph 8. Therefore, they are deemed denied and strict proof thereof is demanded at the trial of this cause, if material or relevant.

9.    Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

10.    Denied as stated. Answering Defendant admits only that The Brickman Group, Ltd., LLC was contracted as of November 15, 2014 to perform snow and ice removal services and that the contract was in effect on January 28, 2016.

11.    Denied. After reasonable investigation, Answering Defendant is without sufficient knowledge or information to form any belief as to the truth or falsity of the averments of paragraphs 11. Therefore, they are deemed denied and strict proof thereof is demanded at the trial of this cause, if material or relevant.

12.    Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure. To the extent that there are any factual averments in this paragraph, they are denied in that after reasonable investigation, Answering Defendant is without sufficient knowledge or information to form any belief as to the truth or falsity of the averments of paragraph 12. Therefore, they are deemed denied and strict proof thereof is demanded at the trial of this cause, if material or relevant.

13.    Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

14.    This paragraph is directed towards a party other than the Answering Defendant and hence, no response is required.

15.    This paragraph is directed towards a party other than the Answering Defendant and hence, no response is required.

16.     This paragraph is directed towards a party other than the Answering Defendant and hence, no response is required.

17.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.  To the extent that there are any factual averments in this paragraph, they are denied in that after reasonable investigation, Answering Defendant is without sufficient knowledge or information to form any belief as to the truth or falsity of the averments of paragraph 17.  Therefore, they are deemed denied and strict proof thereof is demanded at the trial of this cause, if material or relevant.

18.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

19.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

20.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

21.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

22.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

23.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

24.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

Case# 2017-26528-33 Docketed at Montgomery County Prothonotary on 04/11/2018 1:21 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2017-28528-33 Docketed at Montgomery County Prothonotary on 04/11/2018 1:21 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**WHEREFORE,** Answering Defendant demands judgment be entered in its favor and against Plaintiff.

### COUNT I – NEGLIGENCE
**Plaintiff Benjamin Neville v. Defendant West Pottstown Shopping Center LLC a/k/a West Pottstown Shopping Center Company a/k/a West Pottstown Shopping Plaza, Inc.**

25.     Answering Defendant incorporates herein its responses to paragraphs 1 through 24, inclusive as if set forth verbatim.

26-36. These paragraphs are directed towards a party other than the Answering Defendant and hence, no response is required.

**WHEREFORE,** Answering Defendant demands judgment be entered in its favor and against Plaintiff.

### COUNT II – NEGLIGENCE
**Plaintiff Benjamin Neville v. Defendant Lena Management LLC**

37.     Answering Defendant incorporates herein its responses to paragraphs 1 through 36, inclusive as if set forth verbatim.

38-48. These paragraphs are directed towards a party other than the Answering Defendant and hence, no response is required.

**WHEREFORE,** Answering Defendant demands judgment be entered in its favor and against Plaintiff.

### COUNT III – NEGLIGENCE
**Plaintiff Benjamin Neville v. Defendant Patient First of Pennsylvania, Inc.**

49.     Answering Defendant incorporates herein its responses to paragraphs 1 through 48, inclusive as if set forth verbatim.

50.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

Case# 2017-28528-33 Docketed at Montgomery County Prothonotary on 04/11/2018 1:21 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

51. Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

52. Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

53. Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

54. Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

55. Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

56. Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

57. Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

58. Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure. To the extent that there are any factual averments in this paragraph, they are denied and strict proof thereof is demanded at the trial of this cause, if material or relevant. Further, each and every subpart of this paragraph is specifically denied in that Answering Defendant neither acted nor failed to act as averred but rather conducted its activities, if any, with due care and caution. All claims of negligence and carelessness are specifically denied.

59. Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

Case# 2017-28528-33 Docketed at Montgomery County Prothonotary on 04/11/2018 1:21 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

60.    Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

**WHEREFORE,** Answering Defendant demands judgment be entered in its favor and against Plaintiff.

## COUNT IV – NEGLIGENCE
### Plaintiff Benjamin Neville v. Defendant PF Pottstown, LLC

61.    Answering Defendant incorporates herein its responses to paragraphs 1 through 60, inclusive as if set forth verbatim.

61-72.  These paragraphs are directed towards a party other than the Answering Defendant and hence, no response is required.

**WHEREFORE,** Answering Defendant demands judgment be entered in its favor and against Plaintiff.

## COUNT V – NEGLIGENCE
### Plaintiff Benjamin Neville v. Defendant Wright Land Development, LLC a/d/b/a Carl Wright Group a/k/a Defendant Wright Partners, LLC

73.    Answering Defendant incorporates herein its responses to paragraphs 1 through 72, inclusive as if set forth verbatim.

74-83.  These paragraphs are directed towards a party other than the Answering Defendant and hence, no response is required.

**WHEREFORE,** Answering Defendant demands judgment be entered in its favor and against Plaintiff.

## COUNT VI – NEGLIGENCE
### Plaintiff Benjamin Neville v. Defendant Robert Graeff, doing business as Graeff Landscape Company

84.    Answering Defendant incorporates herein its responses to paragraphs 1 through 83, inclusive as if set forth verbatim.

Case# 2017-28528-33 Docketed at Montgomery County Prothonotary on 04/11/2018 1:21 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

85-94. These paragraphs are directed towards a party other than the Answering Defendant and hence, no response is required.

**WHEREFORE,** Answering Defendant demands judgment be entered in its favor and against Plaintiff.

## NEW MATTER DIRECTED TO PLAINTIFF

95.     Plaintiff's claims are barred or limited by the applicable Statute of Limitations.

96.     Plaintiff fails to state a claim upon which relief may be granted.

97.     Plaintiff assumed the specific risk of his alleged injuries.

98.     Plaintiff's claims are barred or limited by the provisions of the Pa. Comparative Negligence Act, 42 Pa. C.S.A. §7102.

99.     Plaintiff's injuries, if any, were not factually caused by any acts or omissions on the part of Answering Defendants.

100.    The alleged condition was open and obvious.

101.    Plaintiff has failed to mitigate his damages.

102.    The negligent acts and/or omissions of other individuals and/or entities may have constituted an intervening, superceding cause of the damages alleged to have been sustained by the Plaintiff.

103.    If Plaintiff suffered injuries or damages as alleged, which averments are denied, than the sole and exclusive cause of any such alleged injuries or damages was the negligence and carelessness of others and not that of Answering Defendant.

104.    Plaintiff's alleged injuries, losses and damages, which allegations are denied, were caused by his own act, omission, conduct and negligence including but not limited to:

Case# 2017-28528-33 Docketed at Montgomery County Prothonotary on 04/11/2018 1:21 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(a)     failure to maintain a proper lookout and observation of his surroundings and take the necessary precautions a reasonable person would in his situation;

(b)     failing to take an alternate path to avoid the alleged condition; and

(c)     such other acts that may be established and proved during discovery, arbitration or at trial.

105.    Answering Defendant specifically denies any negligence, carelessness and/or failure in any duties allegedly owed to the Plaintiff on its part.

106.    Answering Defendant specifically denies any notice, actual or constructive, of the alleged negligent condition at issue.

107.    Plaintiff's claims are subject to the Fair Share law, 42 Pa. C.S. §7102. In the event that recovery is allowed against Defendants and liability is attributed to Defendants, each Defendant is liable only for that portion of the total dollar amount awarded as damages in the ratio to the amount of the Defendants' liability to the amount of liability attributed to all Defendants and other persons to whom liability is apportioned including those parties that may be joined as additional defendants.

108.    Answering Defendant acted reasonably at all times.

109.    The situs described in the Complaint was in the possession and control of an entity/entities other than Answering Defendant and if there were any unsafe condition thereon, it was due to the negligence and carelessness of said parties.

110.    Plaintiff's claims are barred by res judicata.

111.    Plaintiff's claims are barred by collateral estoppel and the doctrine of release.

Case# 2017-28528-33 Docketed at Montgomery County Prothonotary on 04/11/2018 1:21 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

112.    Answering Defendant incorporates herein all defenses set forth in Pa. RCP Rule 1030.

WHEREFORE, Answering Defendant demands judgment be entered in its favor and against Plaintiff.

## NEW MATTER CROSSCLAIM AGAINST ALL CO-DEFENDANTS

113.    Answering Defendant incorporates herein the well-pleaded averments of Plaintiff's complaint, and without admission of same, directs them to all Co-Defendants.

114.    If the Plaintiff sustained injuries and damages as alleged, which allegations are herein expressly denied, then said injuries and damages were caused by the actions, omissions, negligence, carelessness and other liability producing conduct on the part of Co-Defendants and were caused in no manner whatsoever by Answering Defendant.

115.    If it is determined that Co-Defendants are liable to the Plaintiff on any count in Plaintiff's complaint, this being strictly denied, then Co-Defendants are solely liable to Plaintiff, jointly and severally liable to the Plaintiff, or liable over to Answering Defendant by way of contribution and/or indemnification on Plaintiff's causes of action.

WHEREFORE, Answering Defendant denies liability and avers that Co-Defendants are solely liable, and/or jointly and severally liable and/or liable over to it on the cause of action declared upon and demand judgment in its favor.

WILLIAM J. FERREN & ASSOCIATES

BY: _____

Leticia J. Santiago, Esquire
Attorney for Defendant
Patient First of Pennsylvania, Inc.

Dated:  April 11, 2018

Case# 2017-28528-33 Docketed at Montgomery County Prothonotary on 04/11/2018 1:21 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## VERIFICATION

I, Stephen C. McCoy, hereby verify that I am authorized to take this verification on behalf of Defendant Patient First of Pennsylvania, Inc. I have reviewed the foregoing **Answer with New Matter and New Matter Crossclaim** and the statements contained therein are true and correct to the best of my knowledge, information and belief and were prepared with the assistance and advice of counsel, upon whose advice I have relied.

I understand that this Verification is made subject to the penalties of 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

By: _____

STEPHEN C. MCCOY

Dated: April 9, 2018

Case# 2017-28528-33 Docketed at Montgomery County Prothonotary on 04/11/2018 1:21 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## CERTIFICATE OF SERVICE

I, Leticia J. Santiago, Esquire, hereby certify that a true and correct copy of the within filing was served via electronic mail and/or mailed to all parties and counsel of record.

Respectfully submitted,

WILLIAM J. FERREN & ASSOCIATES

By:    _____
Leticia J. Santiago, Esquire

Dated:  April 11, 2018

# EXHIBIT "E"

Case# 2017-28528-80 Docketed at Montgomery County Prothonotary on 10/22/2018 9:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

TO: PLAINTIFF AND CODEFENDANTS YOU ARE
HEREBY NOTIFIED TO PLEAD TO THE ENCLOSED NEW
MATTER WITHIN TWENTY (20) DAYS FROM THE
SERVICE HEREOF OR A DEFAULT JUDGMENT MAY BE
ENTERED AGAINST YOU.

Leticia J. Santiago, Esquire

WILLIAM J. FERREN & ASSOCIATES
BY: Leticia J. Santiago, Esquire
Attorney ID#: 308519                          Attorney for Defendant
PO Box 2903                                   Patient First of Pennsylvania, Inc.
Hartford, CT  06104
(215) 274-1724

| | | |
|---|---|---|
| BENJAMIN NEVILLE | : | COURT OF COMMON PLEAS |
| | : | MONTGOMERY COUNTY, PA |
| v. | : | |
| | : | CIVIL ACTION – LAW |
| WEST POTTSTOWN SHOPPING | : | |
| CENTER LLC, LENA MANAGEMENT LLC, | : | NO.  2017-28528 |
| PATIENT FIRST OF PENNSYLVANIA, INC. | : | |
| PF POTTSTOWN, LLC, | : | JURY TRIAL DEMANDED |
| | | |
| BRIGHT VIEW LANDSCAPES, LLC, | : | (Civil Action No. 2018-00328 |
| a/d/b/a BRIGHT VIEW LANDSCAPE SERVICES, | : | consolidated under 2017-28528) |
| f/k/a THE BRICKMAN GROUP, LTD., LLC | : | |
| | | |
| ROBERT GRAEFF, d/b/a GRAEFF LANDSCAPE | : | (Civil Action No. 2018-00843 |
| CO. | : | consolidated under 2017-28528) |

### AMENDED ANSWER, NEW MATTER, AND NEW MATTER CROSS-CLAIM OF PATIENT FIRST OF PENNSYLVANIA, INC. TO PLAINTIFF'S AMENDED COMPLAINT

Defendant Patient First of Pennsylvania, Inc. hereby answers Plaintiff's Amended

Complaint and avers New Matter and New Matter Crossclaim pursuant to Pa. R.C.P. 1031.1 as

follows:

1.     Denied. After reasonable investigation, Answering Defendant is without sufficient

knowledge or information to form any belief as to the truth or falsity of the averments of

Case# 2017-28528-80 Docketed at Montgomery County Prothonotary on 10/22/2018 9:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential Information and documents.

paragraphs 1. Therefore, they are deemed denied and strict proof thereof is demanded at the trial of this cause, if material or relevant.

2.      This paragraph is directed towards a party other than the Answering Defendant and hence, no response is required.

3.      This paragraph is directed towards a party other than the Answering Defendant and hence, no response is required.

4.      Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure, except admit that Answering Defendant Patient First of Pennsylvania, Inc. is a Virginia Corporation with a business address of 5000 Cox Road, Suite 100, Glen Allen, VA 23060.

5.      This paragraph is directed towards a party other than the Answering Defendant and hence, no response is required.

6.      This paragraph is directed towards a party other than the Answering Defendant and hence, no response is required.

7.      This paragraph is directed towards a party other than the Answering Defendant and hence, no response is required.

8.      Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure. To the extent that there are any factual averments in this paragraph, they are denied in that after reasonable investigation, Answering Defendant is without sufficient knowledge or information to form any belief as to the truth or falsity of the averments of paragraph 8. Therefore, they are deemed denied and strict proof thereof is demanded at the trial of this cause, if material or relevant.

Case# 2017-28528-80 Docketed at Montgomery County Prothonotary on 10/22/2018 9:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified
Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

9.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

10.     Denied as stated. Answering Defendant admits only that The Brickman Group, Ltd., LLC was contracted as of November 15, 2014 to perform snow and ice removal services and that the contract was in effect on January 28, 2016.

11.     Denied. After reasonable investigation, Answering Defendant is without sufficient knowledge or information to form any belief as to the truth or falsity of the averments of paragraphs 11. Therefore, they are deemed denied and strict proof thereof is demanded at the trial of this cause, if material or relevant.

12.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure. To the extent that there are any factual averments in this paragraph, they are denied in that after reasonable investigation, Answering Defendant is without sufficient knowledge or information to form any belief as to the truth or falsity of the averments of paragraph 12. Therefore, they are deemed denied and strict proof thereof is demanded at the trial of this cause, if material or relevant.

13.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

14.     This paragraph is directed towards a party other than the Answering Defendant and hence, no response is required.

15.     This paragraph is directed towards a party other than the Answering Defendant and hence, no response is required.

16.     This paragraph is directed towards a party other than the Answering Defendant and hence, no response is required.

Case# 2017-28528-80 Docketed at Montgomery County Prothonotary on 10/22/2018 9:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

17.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.  To the extent that there are any factual averments in this paragraph, they are denied in that after reasonable investigation, Answering Defendant is without sufficient knowledge or information to form any belief as to the truth or falsity of the averments of paragraph 17.  Therefore, they are deemed denied and strict proof thereof is demanded at the trial of this cause, if material or relevant.

18.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

19.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

20.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

21.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

22.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

23.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

24.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

**WHEREFORE**, Answering Defendant demands judgment be entered in its favor and against Plaintiff.

Case# 2017-28528-80 Docketed at Montgomery County Prothonotary on 10/22/2018 9:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## COUNT I – NEGLIGENCE
### Plaintiff Benjamin Neville v. Defendant West Pottstown Shopping Center LLC a/k/a West Pottstown Shopping Center Company a/k/a West Pottstown Shopping Plaza, Inc.

25.　　Answering Defendant incorporates herein its responses to paragraphs 1 through 24, inclusive as if set forth verbatim.

26-36. These paragraphs are directed towards a party other than the Answering Defendant and hence, no response is required.

**WHEREFORE**, Answering Defendant demands judgment be entered in its favor and against Plaintiff.

## COUNT II – NEGLIGENCE
### Plaintiff Benjamin Neville v. Defendant Lena Management LLC

37.　　Answering Defendant incorporates herein its responses to paragraphs 1 through 36, inclusive as if set forth verbatim.

38-48. These paragraphs are directed towards a party other than the Answering Defendant and hence, no response is required.

**WHEREFORE**, Answering Defendant demands judgment be entered in its favor and against Plaintiff.

## COUNT III – NEGLIGENCE
### Plaintiff Benjamin Neville v. Defendant Patient First of Pennsylvania, Inc.

49.　　Answering Defendant incorporates herein its responses to paragraphs 1 through 48, inclusive as if set forth verbatim.

50.　　Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

51.　　Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

Case# 2017-28528-80 Docketed at Montgomery County Prothonotary on 10/22/2018 9:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

52.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

53.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

54.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

55.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

56.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

57.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

58.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure. To the extent that there are any factual averments in this paragraph, they are denied and strict proof thereof is demanded at the trial of this cause, if material or relevant. Further, each and every subpart of this paragraph is specifically denied in that Answering Defendant neither acted nor failed to act as averred but rather conducted its activities, if any, with due care and caution. All claims of negligence and carelessness are specifically denied.

59.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

60.     Denied as a conclusion of law to which no further response is required under the Pennsylvania Rules of Civil Procedure.

Case# 2017-28528-80 Docketed at Montgomery County Prothonotary on 10/22/2018 9:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified
Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**WHEREFORE,** Answering Defendant demands judgment be entered in its favor and against Plaintiff.

## COUNT IV – NEGLIGENCE
### Plaintiff Benjamin Neville v. Defendant PF Pottstown, LLC

61.     Answering Defendant incorporates herein its responses to paragraphs 1 through 60, inclusive as if set forth verbatim.

61-72. These paragraphs are directed towards a party other than the Answering Defendant and hence, no response is required.

**WHEREFORE,** Answering Defendant demands judgment be entered in its favor and against Plaintiff.

## COUNT V – NEGLIGENCE
### Plaintiff Benjamin Neville v. Defendant Wright Land Development, LLC a/d/b/a Carl Wright Group a/k/a Defendant Wright Partners, LLC

73.     Answering Defendant incorporates herein its responses to paragraphs 1 through 72, inclusive as if set forth verbatim.

74-83. These paragraphs are directed towards a party other than the Answering Defendant and hence, no response is required.

**WHEREFORE,** Answering Defendant demands judgment be entered in its favor and against Plaintiff.

## COUNT VI – NEGLIGENCE
### Plaintiff Benjamin Neville v. Defendant Robert Graeff, doing business as Graeff Landscape Company

84.     Answering Defendant incorporates herein its responses to paragraphs 1 through 83, inclusive as if set forth verbatim.

85-94. These paragraphs are directed towards a party other than the Answering Defendant and hence, no response is required.

Case# 2017-28528-80 Docketed at Montgomery County Prothonotary on 10/22/2018 9:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**WHEREFORE**, Answering Defendant demands judgment be entered in its favor and against Plaintiff.

## NEW MATTER DIRECTED TO PLAINTIFF

95.  Plaintiff's claims are barred or limited by the applicable Statute of Limitations.

96.  Plaintiff fails to state a claim upon which relief may be granted.

97.  Plaintiff assumed the specific risk of his alleged injuries.

98.  Plaintiff's claims are barred or limited by the provisions of the Pa. Comparative Negligence Act, 42 Pa. C.S.A. §7102.

99.  Plaintiff's injuries, if any, were not factually caused by any acts or omissions on the part of Answering Defendants.

100.  The alleged condition was open and obvious.

101.  Plaintiff has failed to mitigate his damages.

102.  The negligent acts and/or omissions of other individuals and/or entities may have constituted an intervening, superceding cause of the damages alleged to have been sustained by the Plaintiff.

103.  If Plaintiff suffered injuries or damages as alleged, which averments are denied, than the sole and exclusive cause of any such alleged injuries or damages was the negligence and carelessness of others and not that of Answering Defendant.

104.  Plaintiff's alleged injuries, losses and damages, which allegations are denied, were caused by his own act, omission, conduct and negligence including but not limited to:

> (a)  failure to maintain a proper lookout and observation of his surroundings and take the necessary precautions a reasonable person would in his situation;

Case# 2017-28528-80 Docketed at Montgomery County Prothonotary on 10/22/2018 9:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(b)    failing to take an alternate path to avoid the alleged condition; and

(c)    such other acts that may be established and proved during discovery, arbitration or at trial.

105.    Answering Defendant specifically denies any negligence, carelessness and/or failure in any duties allegedly owed to the Plaintiff on its part.

106.    Answering Defendant specifically denies any notice, actual or constructive, of the alleged negligent condition at issue.

107.    Plaintiff's claims are subject to the Fair Share law, 42 Pa. C.S. §7102. In the event that recovery is allowed against Defendants and liability is attributed to Defendants, each Defendant is liable only for that portion of the total dollar amount awarded as damages in the ratio to the amount of the Defendants' liability to the amount of liability attributed to all Defendants and other persons to whom liability is apportioned including those parties that may be joined as additional defendants.

108.    Answering Defendant acted reasonably at all times.

109.    The situs described in the Complaint was in the possession and control of an entity/entities other than Answering Defendant and if there were any unsafe condition thereon, it was due to the negligence and carelessness of said parties.

110.    Plaintiff's claims are barred by res judicata.

111.    Plaintiff's claims are barred by collateral estoppel and the doctrine of release.

112.    Answering Defendant incorporates herein all defenses set forth in Pa. RCP Rule 1030.

**WHEREFORE**, Answering Defendant demands judgment be entered in its favor and against Plaintiff.

Case# 2017-28528-80 Docketed at Montgomery County Prothonotary on 10/22/2018 9:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## NEW MATTER CROSSCLAIM AGAINST DEFENDANT BRIGHTVIEW LANDSCAPES, LLC F/K/A THE BRICKMAN GROUP LTD. LLC DEFENSE AND INDEMNITY

113.    Answering Defendant incorporates herein the well-pleaded averments of Plaintiff's complaint, and without admission of same, directs them to all Defendant Brightview Landscapes, LLC f/k/a The Brickman Group LTD. LLC ("Defendant Brickman").

114.    Answering Defendant and Defendant Brickman entered into a Master Snow Management Agreement as of November 15, 2014 for the subject premises where the alleged accident occurred. *See* Exhibit "A", a true and correct copy of the Master Snow Management Agreement.

115.    The Master Snow Management Agreement was in full force and effect on January 28, 2016 and at all material times prior thereto.

116.    Per the Master Snow Management Agreement, Defendant Brickman agreed to indemnify, hold harmless and defend Answering Defendant from and against any and all liability for loss, damage or expense, resulting from third party claims, for which Answering Defendant may be held liable by reason of injury to any person or damage to any property to the extent caused by the work performed for Answering Defendant. *See* Exhibit "A", at 6.

117.    Answering Defendant, by virtue of the Master Snow Management Agreement is owed contractual defense and indemnification from Defendant Brickman.

**WHEREFORE,** Answering Defendant respectfully requests the Court enter a judgment that Defendant Brickman defend and indemnify Answering Defendant for any costs, fees or expenses arising out of this suit brought by Plaintiff.

Case# 2017-28628-80 Docketed at Montgomery County Prothonotary on 10/22/2018 9:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Additionally, it is requested that the Court order Defendant Brickman to indemnify Answering Defendant for any and all liabilities, damages, awards or settlements arising out of the claim brought by Plaintiff.

### NEW MATTER CROSSCLAIM AGAINST DEFENDANT BRIGHTVIEW LANDSCAPES, LLC F/K/A THE BRICKMAN GROUP LTD. LLC BREACH OF CONTRACT

118.    Answering Defendant incorporates the foregoing paragraphs as if same were fully set forth at length herein.

119.    Pursuant to the Master Snow Management Agreement, Defendant Brickman agreed to defend, indemnify and hold harmless Answering Defendant for claims such as those being asserted against Answering Defendant by Plaintiff in his Amended Complaint.

120.    By virtue of the Master Snow Management Agreement with Defendant Brickman, Answering Defendant is owed contractual defense and indemnification, which has been tendered but refused by said Defendant.

121.    Defendant Brickman was contractually obliged to name Answering Defendant as an additional insured on its policy of liability insurance pursuant to the Master Snow Management Agreement. *See* Exhibit "A", at 8(f).

122.    Defendant Brickman breached the Master Snow Management Agreement by failing to obtain the requisite liability insurance naming Answering Defendant as an additional insured.

123.    Defendant Brickman breached the Master Snow Management Agreement by failing to defend and indemnify Answering Defendant.

Case# 2017-28528-80 Docketed at Montgomery County Prothonotary on 10/22/2018 9:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

124.    Defendant Brickman breached the Master Snow Management Agreement by failing to perform and/or comply with the covenants, agreements, terms, provisions, conditions or limitations contained in the Master Snow Management Agreement.

125.    The breaches of the Master Snow Management Agreement by Defendant Brickman have caused and will continue to cause financial harm to Answering Defendant.

**WHEREFORE,** Answering Defendant respectfully requests the Court enter a judgment that Defendant Brickman defend and indemnify Answering Defendant for any costs, fees or expenses arising out of this suit brought by Plaintiff.

Additionally, it is requested that the Court order Defendant Brickman to indemnify Answering Defendant for any and all liabilities, damages, awards or settlements arising out of the claim brought by Plaintiff.

## NEW MATTER CROSSCLAIM AGAINST DEFENDANT ROBERT GRAEFF D/B/A GRAEFF LANDSCAPE CO. DEFENSE AND INDEMNITY

126.    Answering Defendant incorporates the foregoing paragraphs as if same were fully set forth at length herein.

127.    Defendant Brickman and Defendant Robert Graeff d/b/a Graeff Landscape Co. ("Graeff") entered into a Snow Subcontract for the subject premises where the alleged accident occurred that was in full force and effect on January 28, 2016 and at all material times prior thereto. *See* Exhibit "B", a true and correct copy of the Snow Subcontract.

128.    Per the Snow Subcontract, Defendant Graeff agreed to indemnify, hold harmless and defend Answering Defendant from and against any and all liability for loss, damage or expense, resulting from third party claims, for which Answering Defendant may be held liable by

Case# 2017-28528-80 Docketed at Montgomery County Prothonotary on 10/22/2018 9:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

reason of injury to any person or damage to any property to the extent caused by the work performed for Answering Defendant. *See* Exhibit "B", at 16.

129. Answering Defendant, by virtue of the Snow Subcontract is owed contractual defense and indemnification from Defendant Graeff.

**WHEREFORE**, Answering Defendant respectfully requests the Court enter a judgment that Defendant Graeff defend and indemnify Answering Defendant for any costs, fees or expenses arising out of this suit brought by Plaintiff.

Additionally, it is requested that the Court order Defendant Graeff to indemnify Answering Defendant for any and all liabilities, damages, awards or settlements arising out of the claim brought by Plaintiff.

## NEW MATTER CROSSCLAIM AGAINST ALL CO-DEFENDANTS

130. Answering Defendant incorporates herein the well-pleaded averments of Plaintiff's complaint, and without admission of same, directs them to all Co-Defendants.

131. If the Plaintiff sustained injuries and damages as alleged, which allegations are herein expressly denied, then said injuries and damages were caused by the actions, omissions, negligence, carelessness and other liability producing conduct on the part of Co-Defendants and were caused in no manner whatsoever by Answering Defendant.

132. If it is determined that Co-Defendants are liable to the Plaintiff on any count in Plaintiff's complaint, this being strictly denied, then Co-Defendants are solely liable to Plaintiff, jointly and severally liable to the Plaintiff, or liable over to Answering Defendant by way of contribution and/or indemnification on Plaintiff's causes of action.

WHEREFORE, Answering Defendant denies liability and avers that Co-Defendants are solely liable, and/or jointly and severally liable and/or liable over to it on the cause of action declared upon and demand judgment in its favor.

WILLIAM J. FERREN & ASSOCIATES

BY: _____

Leticia J. Santiago, Esquire
Attorney for Defendant
Patient First of Pennsylvania, Inc.

Dated: October 22, 2018

Case# 2017-28528-80 Docketed at Montgomery County Prothonotary on 10/22/2018 9:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## V E R I F I C A T I O N

I, **LETICIA J. SANTIAGO, ESQUIRE,** verify that the statements made in the foregoing pleadings are true and correct to the best of my knowledge, information and belief. I further verify that I am authorized to take this Verification on behalf of Defendant, Patient First of Pennsylvania, Inc., in the capacity of Defendant's attorney.

I understand that false statements herein made are subject to the penalties of 18 Pa. C.S.A. Section 4904, relating to unsworn falsification to authorities.

_____
**LETICIA J. SANTIAGO, ESQUIRE**

**Dated: 10/22/2018**

Case# 2017-28528-80 Docketed at Montgomery County Prothonotary on 10/22/2018 9:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2017-28528-80 Docketed at Montgomery County Prothonotary on 10/22/2018 9:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## CERTIFICATE OF SERVICE

    I, Leticia J. Santiago, Esquire, hereby certify that a true and correct copy of the within filing was served via electronic mail and/or mailed to all parties and counsel of record.

Respectfully submitted,

WILLIAM J. FERREN & ASSOCIATES

By:      _____
               Leticia J. Santiago, Esquire

Dated:  10/22/2018

Case# 2017-28628-80 Docketed at Montgomery County Prothonotary on 10/22/2018 9:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

 **BRICKMAN**

# *Master Snow Management Agreement*

- **EFFECTIVE DATE:** November, 15, 2014
- **PARTIES:**

| Client Name: | Patient First | | |
|---|---|---|---|
| Street Address: | 5000 Cox Road, Suite 100<br>Glen Allen, VA  23060 | | |
| Office Phone: | 804-822-3840 | Office Fax: | |
| Contact Name: | Brian Sommardahl | Contact Title: | Director of Facilities Management |
| Contact Phone: | 804-928-1159 | Contact Email: | brian.sommardahl@patientfirst.com |

This agreement ("Agreement") is entered into as of the Effective Date between the above client ("Client"), and The Brickman Group Ltd. LLC ("Brickman").

**1. SERVICES:** During the Term (defined below) of this Agreement, Client may engage Brickman to perform (i) snow maintenance, salting, hauling, or other general snow –related services or (ii) property enhancement services (collectively, the "Services"). The location of the performance of Services (each a "Service Location"), a complete description of the Services, and applicable pricing shall be set forth in a Service Order that is provided by Brickman, separately executed by the parties, and references this Agreement. Client shall provide adequate access to each Service Location for performing the Services and, if required, Client shall provide storage and any other items designated on the Service Order. Changes to a Service Order, including, without limitation, additional services or fees, shall be set forth in writing in a Change Order that is executed by the parties hereto.

Brickman shall select all materials and equipment that will be used in connection with the Services. To the extent that Client requires Brickman to use materials or equipment that was not selected by Brickman ("Client Materials"), Brickman shall have no obligation to Client for any damage caused by Services rendered hereunder to the extent such damages are caused directly or indirectly by the use of any Client Materials.

**2. SERVICE FEES:** In consideration for Services rendered during the Term, Client shall pay Brickman the service fees indicated on the applicable Service Order, subject to adjustments described below (the "Service Fees"). Payment of all Service Fees shall be due and payable thirty (30) days after the date of Brickman's invoice and shall be sent to The Brickman Group Ltd. LLC, 3630 Solutions Center, Chicago, IL 60677-3006. A late charge equal to the greater of 1.5% per month or the highest amount permitted by law, shall be applied to any overdue Service Fees and promptly paid by Client. In addition to this late charge, Client shall reimburse Brickman for all costs and expenses (including but not limited to attorneys' fees and court costs) which are reasonably incurred by Brickman in collecting overdue Service Fees and late charges.

In the event that, during the performance of Services under any Service Order, the cost of materials or fuel (collectively, "Materials") required by Brickman to perform the Services increases by more than twenty percent (20%) over the cost of Materials on the date of execution of the Service Order, the Service Fee under said Service Order shall be increased by an amount equal to the increase in the cost of Materials. All cost increases shall be documented by Brickman through quotes, invoices, or receipts and provided to Client upon request.

**3. TERM:** The term of this Agreement ("Term") shall commence on the Effective Date and shall remain in effect until terminated in accordance with the terms herein.

**4. TERMINATION:** Either Client or Brickman may terminate this Agreement and/or any Service Order without cause by giving sixty (60) days' prior written notice to the other party. Termination of this Agreement alone will not result in the termination of any previously entered into Service Order, and the terms of this Agreement will continue in effect for purposes of such Service Order, and the sole effect of terminating this Agreement will be to terminate the ability of either party to enter into subsequent Service Orders that incorporate the terms of this Agreement.

Either Brickman or Client may, in its sole discretion, immediately terminate this Agreement and/or any Service Order upon written notice to the other party if: (a) the other party or record owner of any Service Location makes an assignment for the benefit of creditors, (b) a petition of bankruptcy is filed by or against the other party, or (c) all or substantially all of the other party's property is levied upon or sold in a judicial proceeding. Further, Brickman may delay or cancel performance of Services at any Service

*Form v5.19.14*

*Page 1 of 3*

Case# 2017-28528-50 Docketed at Montgomery County Prothonotary on 10/22/2018 9:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*Master Snow Management Agreement*

Location, in its sole discretion, if foreclosure proceedings are initiated with respect to such Service Location.

In the event that either party materially breaches any term of this Agreement or any Service Order, and fails to cure such breach within thirty (30) days after receiving written notice of the breach from the other party, then the other party may immediately terminate the agreement giving rise to such breach, by delivering written notice of such termination to the breaching party.   Notwithstanding the foregoing, Brickman may delay or cancel performance of Services at any Service Location, in its sole discretion, if Client fails to pay any Service Fees, late charges, and collection costs due under this Agreement and/or any Service Order.

Upon any termination of this Agreement or a Service Order, Client shall pay Brickman for all fees and expenses accrued by Brickman up to and including the effective date of termination at the rates set forth in the applicable Service Order. Sections 2, 5, 6, 7, 8 and 12 shall survive the expiration or termination of this Agreement or any Service Order.

**5. RERESENTATIONS AND WARRANTIES:** Each party represents and warrants on behalf of itself that it has full power and authority to enter into this Agreement and that this Agreement is a legally binding obligation.  Brickman further represents and warrants that it will perform the Services in accordance with all applicable workplace safety requirements and standards promulgated by federal, state, and local authorities.

**6. INDEMNIFICATION:** Brickman agrees to indemnify, hold harmless and defend Client from and against any and all liability for loss, damage or expense, resulting from third party claims, for which Client may be held liable by reason of injury to any person or damage to any property to the extent caused by the work performed for Client, expressly excluding any damage or loss caused by the negligence of Client or Client Materials.

**7. LIMITATION OF LIABILITY:** Brickman's total liability for any losses, damages, and expenses of any type whatsoever incurred by Client or any of its affiliates, guests, tenants, invitees, and lessees ("Losses"), which are caused directly or indirectly by acts or omissions of Brickman in connection with, or related to, the Services hereunder, including but not limited to any breach of Brickman's obligations hereunder, shall be limited solely to direct and actual damages in an aggregate amount not to exceed the amounts actually paid to Brickman hereunder.  In no event will Brickman be liable for special, indirect, incidental or consequential damages, irrespective of the form or cause of action, in contract, tort or otherwise, whether or not the possibility of such damages has been disclosed to Brickman in advance or could have been reasonably foreseen by Brickman. Further, Brickman shall not be liable for any losses resulting from the provision of services or performance of any work hereunder, if such Losses are due to causes of conditions beyond its reasonable control and Brickman shall only be responsible for Losses determined by a court of competent

jurisdiction to have been caused solely by Brickman's gross negligence or willful misconduct.

**8. INSURANCE:** Prior to commencement of any work under a Service Order, Brickman shall, at its sole expense, maintain the following types of insurance on its own behalf with insurance companies lawfully authorized to do business in the jurisdiction in which the work is located and, upon request, furnish to Client Certificates of Insurance evidencing the same.
(a) Workers' Compensation and Employers Liability:  in the State in which the work is to be performed and elsewhere as may be required.

    (i)  Workers'   Compensation   Coverage:   Statutory Requirements

    (ii) Employers Liability Limits not less than:
    Bodily Injury by Accident: $1,000,000 Each Accident
    Bodily Injury by Disease: $1,000,000 Each Employee
    Bodily Injury by Disease: $1,000,000 Policy Limit

    (iii) Including Waiver of Right to Recover from Others Endorsement (WC 00 0313) where permitted by state law, naming Client.

(b)   Commercial   General   Liability:   (including Premises Operations,   Independent   Contractors,   Products/Completed Operations,   Personal   Injury,   and   Broad   Form   Property Damage).

    Occurrence Form with the following limits:

    (i) General Aggregate: $4,000,000
    (ii) Products/Completed Operations
    Aggregate: $2,000,000
    (iii) Each Occurrence: $2,000,000
    (iv) Personal and Advertising Injury: $2,000,000
(c) Automobile Liability:

    (i) Coverage to include All Owned, Hired and Non-Owned Vehicles (Any Auto)

    (ii) Per Accident Combined Single Limit  $2,000,000

(d) Commercial Umbrella Liability:

    (i) Occurrence Limit: $10,000,000
    (ii) Aggregate Limit: $10,000,000

(e) Financial  Rating  and  Admitted  Status  of  Insurance Companies:
    (i) A.M. Best Rating:  A- (Excellent) or Higher
    (ii) A.M. Best Financial Size Category:  Class VII or Higher

(f) Client shall be added / included as Additional Insureds on the above General Liability coverage described above.

**9. DISCLAIMER. BRICKMAN MAKES NO WARRANTY, EXPRESS, IMPLIED OR STATUTORY WITH RESPECT TO THE SERVICES PROVIDED HEREUNDER, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF RELIABILITY, USEFULNESS, OR FITNESS FOR A PARTICULAR PURPOSE.** By signing this Agreement, Client acknowledges and agrees that (a) snow or ice may accumulate while Services are being performed, (b) even when there is no

Case# 2017-28528-80 Docketed at Montgomery County Prothonotary on 10/22/2018 9:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*Master Snow Management Agreement*

precipitation present, snow may blow or drift onto a Service Location or be brushed onto cars, parking, and driving areas or walkways, and (c) properly plowed snow may melt and refreeze after Services are fully performed. Accordingly, Client understands and agrees that (i) Brickman cannot guarantee that the performance of the Services will remove all snow and ice from any Service Location, and (ii) some snow or ice may still be present at a Service Location during or after the performance of Services.

**10. FORCE MAJEURE:** Brickman's performance will be excused to the extent Brickman is unable to perform as a result of strikes, accidents, acts of God, extreme weather conditions, inability to secure labor and/or products, fire, earthquake and rules, regulations or restrictions imposed by any government or governmental agency, or other delays or failure of performance beyond the commercially reasonable control of Brickman.

**11. NOTICES:** Any notice required by this Agreement or any Service Order shall be in writing and given by hand delivery confirmed email transmission or by depositing such written notice in the U.S. mail, certified and postage prepaid. In the case of Client, notices shall be sent to the party at the address set forth in the preamble to this Agreement. In the case of Brickman, notices shall be sent to the Brickman branch address listed in the Service Order with a copy to The Brickman Group Ltd. LLC, 2275 Research Blvd., Suite 600, Rockville, MD 20850, Attn: Office of the General Counsel.

**12. GENERAL:** This Agreement and any Service Order hereunder shall be governed by either (a) the law of the state in which the Service Location is located, or (b) if Service Locations are located in more than one state, then the laws of the State of Maryland, without regard to conflicts of laws doctrines and each party consents to the jurisdiction and exclusive venue in the state and federal courts sitting therein.

This Agreement and any Service Order may not be assigned by either party without the prior written approval of the other party except that either party may assign this Agreement or a Service Order to: (i) a parent, affiliate, or subsidiary, (ii) an acquirer of assets, or (iii) a successor by merger. This Agreement is binding on and inures to the benefit of the parties hereto (including the record owner of the Service Location(s) if other than the Client) and their respective heirs, legal representatives, successors and permitted assigns. Any purported assignment in violation of this section shall be void. Notwithstanding the foregoing, Brickman may subcontract Services to qualified providers, without the prior written consent of the Client.

This Agreement constitutes the entire agreement of the parties with respect to the Services and supersedes all prior contracts or agreements with respect to the Services, whether oral or written.

Except as otherwise provided herein, this Agreement or any Service Order may be amended or modified from time to time only by a written instrument executed and agreed to by both the Client and Brickman. The express or implied waiver by either party of a breach of any provision of this Agreement or any Service Order shall not operate or be construed as a waiver by them of any other or subsequent breach of such provision or any other provision. This Agreement or any Service Order is not valid or binding unless and until in writing signed by a duly authorized representative of both parties. This Agreement or any Service Order may be executed in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute a single instrument and may be delivered by facsimile or electronic transmission.

In the event of any inconsistency between the terms of this Agreement and the terms of a Service Order(s), the terms of this Agreement shall govern.

**This Master Snow Management Agreement is hereby entered into between Brickman and Client as of the Effective Date shown above.**

| **Patient First** | **The Brickman Group Ltd. LLC** |
|---|---|
| ("Client") | ("Brickman") |
| Signature: | Signature: *Bun C Sommerschl* |
| Name: Jeff Topley | Name: *Brian C. Sommersall* |
| Title: Regional Acct. Manager | Title: *Facilities Manager* |
| Date: 10/17/2014 | Date: *11/20/14* |

Case# 2017-28528-80 Docketed at Montgomery County Prothonotary on 10/22/2018 9:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Patient First**  **Brickman Attachment 'A'**  11/11/2014

## Maryland and Pennsylvania

| Address | City | State | Zip Code | Annual Cost | Branch Name | Brickman Contact | Cell Phone | Email |
|---|---|---|---|---|---|---|---|---|
| 6333 Baltimore National Pike | Catonsville | MD | 21228 | $5,184.00 | Baltimore | Alaine Bower | 410-419-8948 | alaine.bower@brickmangroup.com |
| 5900 Cedar Lane | Columbia | MD | 21044 | $3,387.00 | Howard North | Betsy Hernandez | 410-365-8976 | betsy.hernandez@brickmangroup.com |
| 560 West McPhail Road | Bel Air | MD | 21014 | $5,979.00 | White Marsh | Mike Ragan | 443-277-4571 | mike.ragan@brickmangroup.com |
| 8830 Bel Air Road | Perry Hall | MD | 21236 | $3,432.00 | White Marsh | Mike Ragan | | |
| 5100 Eastern Avenue | Baltimore | MD | 22124 | $6,910.00 | White Marsh | Mike Ragan | | |
| 995 Hospitality Way | Aberdeen | MD | 21001 | $2,136.00 | White Marsh | Mike Ragan | | |
| 7116 Ritchie Highway | Glen Burnie | MD | 21061 | $3,906.00 | Anne Arundel | Tod Long | 240-353-1796 | tod.long@brickmangroup.com |
| 3357 Corridor Market Place | Laurel | MD | 20724 | $3,969.00 | Anne Arundel | Tod Long | | |
| 1110 Annapolis Road | Odenton | MD | 21113 | $5,076.00 | Anne Arundel | Tod Long | | |
| 8105 Ritchie Highway | Pasadena | MD | 21122 | $4,859.00 | Anne Arundel | Tod Long | | |
| 2855 Crain Hwy | Waldorf | MD | 20601 | $5,940.00 | PG South | Josh Mueller | 240-354-7466 | josh.mueller@brickmangroup.com |
| 8601 16th Street | Silver Spring | MD | 20910 | $6,108.00 | DC | Mike Garner | 301-442-3894 | michael.garner@brickmangroup.com |
| 1625 Oregon Pike | Lancaster | PA | 17601 | $7,800.00 | Lancaster | John Eldridge | 717-542-6790 | john.eldridge@brickmangroup.com |
| 75 E Street Road | Feasterville | PA | 19053 | $11,200.00 | County Line | Seth Odhner | 610-656-8200 | seth.odhner@brickmangroup.com |
| 713 Bethlehem Pike | Montgomeryville | PA | 18936 | $4,880.00 | County Line | Seth Odhner | | |
| 2450 Butler St. | Easton | PA | 18042 | $6,300.00 | Allentown | Mike Bittenbender | 610-972-5267 | mike.bittenbender@brickmangroup.com |
| 2310 Schoenersville Rd. | Bethlehem | PA | 18017 | $9,000.00 | Allentown | Mike Bittenbender | | |
| 119 Shoemaker Rd. | Pottstown | PA | 19464 | $5,853.00 | Chester | Dave Devenney | 610-721-2542 | david.devenney@brickmangroup.com |

## Virginia

| Address | City | State | Zip Code | Annual Cost | Branch Name | Brickman Contact | Cell Phone | Email |
|---|---|---|---|---|---|---|---|---|
| 3031 Plank Rd. | Fredericksburg | VA | 22401 | $3,144.00 | Richmond | John Tagliaferri | 804-855-7083 | john.tagliaferri@brickmangroup.com |
| 60 Prosperity Rd. | Stafford | VA | 22556 | $5,964.00 | Richmond | John Tagliaferri | | |
| 5486 Indian River Rd. | Virginia Beach | VA | 23464 | $5,994.00 | Chesapeake | Andrew Moore | 757-485-5911 | andrew.moore@brickmangroup.com |
| 705 Battlefield Blvd. | Chesapeake | VA | 23320 | $5,280.00 | Chesapeake | Andrew Moore | | |
| 3432 Holland Rd. | Virginia Beach | VA | 23452 | $7,716.00 | Chesapeake | Andrew Moore | | |
| 1605 General Booth Blvd. | Virginia Beach | VA | 23454 | $6,984.00 | Chesapeake | Andrew Moore | | |
| 332 Newtown Rd. | Virginia Beach | VA | 23462 | $9,888.00 | Chesapeake | Andrew Moore | | |
| 1239 Cedar Rd. | Chesapeake | VA | 23322 | $6,828.00 | Chesapeake | Andrew Moore | | |
| 2425 Taylors Rd. | Chesapeake | VA | 23321 | $5,580.00 | Chesapeake | Andrew Moore | | |
| 611 Denbigh Blvd. | Newport News | VA | 23608 | $5,958.00 | Yorktown | Vince Ward | 757-435-3959 | vince.ward@brickmangroup.com |
| 3918 Centreville Road | Chantilly | VA | 20151 | $4,944.00 | NoVA West | Chris Boss | 703-867-0468 | chris.boss@brickmangroup.com |
| 601 Potomac Station Dr. | Leesburg | VA | 20176 | $4,848.00 | NoVA West | Chris Boss | 703-867-0468 | chris.boss@brickmangroup.com |
| 2199 Old Bridge Road | Lake Ridge | VA | 22192 | $3,168.00 | NoVA West | Glen Goff | 703-798-9371 | glen.goff@brickmangroup.com |

Case# 2017-28528-80 Docketed at Montgomery County Prothonotary on 10/22/2018 9:38 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**BRICKMAN**

# Patient First 2014 Snow Site Contact List and Rates

## Exhibit 'B'

| Address | City | Zip | State | Region | Contact | Phone | Email | Rate 1 | Rate 2 | Rate 3 |
|---|---|---|---|---|---|---|---|---|---|---|
| 3320 Belair Rd | Perry Hall | 21014 | MD | White Marsh / 410-419-4523 | Bill Mercer | 410-905-9670 | bill.mercer@brickmangroup.com | $410.00 | $110.00 | $110.00 |
| Hospital Way | Aberdeen | 21001 | MD | White Marsh / 410-419-4523 | Mike Rosen | 443-277-4571 | | $410.00 | $110.00 | $110.00 |
| W. MacPhail Rd | Bel Air | 21014 | MD | White Marsh / 410-419-4523 | Mike Rosen | 443-277-4571 | | $410.00 | $110.00 | $110.00 |
| 6100 Eastern Ave | Baltimore | 21224 | MD | White Marsh / 410-419-4523 | Greg Timov | 443-977-3860 | greg.timov@brickmangroup.com | $410.00 | $110.00 | $110.00 |
| 7116 Ritchie Highway | Glen Burnie | 21061 | MD | Anne Arundel / 410-724-3922 | Ted Long | 240-988-1799 | ted.long@brickmangroup.com | $410.00 | $110.00 | $110.00 |
| Corridor Market Place | Laurel | 20724 | MD | Anne Arundel / 410-724-3922 | Ted Long | | | $250.00 | $110.00 | $110.00 |
| Annapolis Road | Odenton | 21113 | MD | Anne Arundel / 410-724-3922 | Ted Long | | | $450.00 | $110.00 | $110.00 |
| Ritchie Highway | Pasadena | 21122 | MD | Anne Arundel / 410-724-3922 | Ted Long | | | $410.00 | $110.00 | $110.00 |
| Crain Highway | Waldorf | 20601 | MD | Prince George South / 301-893-6060 | Joshua Mueller | 240-294-7468 | josh.mueller@brickmangroup.com | $250.00 | $110.00 | $110.00 |
| Natl. National Pike | Catonsville | 21228 | MD | Baltimore South / 410-455-0060 | Alvino Baroz | 410-419-8846 | alvino.baroz@brickmangroup.com | $450.00 | $110.00 | $110.00 |
| Cedar Lane | Columbia | 21044 | MD | Howard North / 410-312-3078 | Henry Hernandez | 410-365-6076 | henry.hernandez@brickmangroup.com | $350.00 | $110.00 | $110.00 |
| Centreville Road | Chantilly | 20151 | VA | Sterling / 703-467-4082 | Chris Bara | 410-365-6103 | chris.bara@brickmangroup.com | $350.00 | $110.00 | $110.00 |
| Potomac Station Dr | Leesburg | 20176 | VA | Sterling / 703-467-4082 | Chris Bara | 410-365-6103 | chris.bara@brickmangroup.com | $410.00 | $110.00 | $110.00 |
| Possum Lane | Stafford | 22556 | VA | Fredericksburg / 540-455-4090 | John Trafficanti | 804-360-7050 | john.trafficanti@brickmangroup.com | $450.00 | $110.00 | $110.00 |
| Lake Ridge | | 22192 | VA | Sterling / 703-467-4082 | Dan Goff | 703-731-3571 | dan.goff@brickmangroup.com | $450.00 | $110.00 | $110.00 |
| Old Bridge Road | Bethlehem | 18017 | PA | Allentown / 610-972-3337 | Mike Biesterboer | 610-972-3327 | mike.biesterboer@brickmangroup.com | $450.00 | $110.00 | $110.00 |
| Schoenersville Rd | Easton | 18042 | PA | Allentown / 610-359-8598 | Mike Biesterboer | 610-972-3327 | mike.biesterboer@brickmangroup.com | $350.00 | $110.00 | $110.00 |
| Butler St | Montgomeryville | 18936 | PA | Bucks / 215-491-1125 | Seth Collmar | 610-952-5690 | seth.collmar@brickmangroup.com | $350.00 | $110.00 | $110.00 |
| Bethlehem Pike | Fairlesville | 19053 | PA | Bucks / 215-491-1125 | Seth Collmar | 610-952-5690 | seth.collmar@brickmangroup.com | $350.00 | $110.00 | $110.00 |
| Street Road | Pottstown | 19464 | PA | Exton / 484-872-0111 | Dave Cheverny | 610-721-2462 | dave.cheverny@brickmangroup.com | $350.00 | $110.00 | $110.00 |
| Oregon Pike | Lancaster | 17601 | PA | Lancaster / 717-390-0401 | John Eldridge | 717-304-0444 | john.eldridge@brickmangroup.com | $350.00 | $110.00 | $110.00 |

# EXHIBIT "F"


BRICKMAN

# *Master Snow Management Agreement*

- **EFFECTIVE DATE:** November, 15, 2014
- **PARTIES:**

| Client Name: | Patient First | | |
|---|---|---|---|
| Street Address: | 5000 Cox Road, Suite 100 Glen Allen, VA  23060 | | |
| Office Phone: | 804-822-3840 | Office Fax: | |
| Contact Name: | Brian Sommardahl | Contact Title: | Director of Facilities Management |
| Contact Phone: | 804-928-1159 | Contact Email: | brian.sommardahl@patientfirst.com |

This agreement ("Agreement") is entered into as of the Effective Date between the above client ("Client"), and The Brickman Group Ltd. LLC ("Brickman").

**1. SERVICES:** During the Term (defined below) of this Agreement, Client may engage Brickman to perform (i) snow maintenance, salting, hauling, or other general snow –related services or (ii) property enhancement services (collectively, the "Services"). The location of the performance of Services (each a "Service Location"), a complete description of the Services, and applicable pricing shall be set forth in a Service Order that is provided by Brickman, separately executed by the parties, and references this Agreement. Client shall provide adequate access to each Service Location for performing the Services and, if required, Client shall provide storage and any other items designated on the Service Order. Changes to a Service Order, including, without limitation, additional services or fees, shall be set forth in writing in a Change Order that is executed by the parties hereto.

Brickman shall select all materials and equipment that will be used in connection with the Services. To the extent that Client requires Brickman to use materials or equipment that was not selected by Brickman ("Client Materials"), Brickman shall have no obligation to Client for any damage caused by Services rendered hereunder to the extent such damages are caused directly or indirectly by the use of any Client Materials.

**2. SERVICE FEES:** In consideration for Services rendered during the Term, Client shall pay Brickman the service fees indicated on the applicable Service Order, subject to adjustments described below (the "Service Fees"). Payment of all Service Fees shall be due and payable thirty (30) days after the date of Brickman's invoice and shall be sent to The Brickman Group Ltd. LLC, 3630 Solutions Center, Chicago, IL 60677-3006.  A late charge equal to the greater of 1.5% per month or the highest amount permitted by law, shall be applied to any overdue Service Fees and promptly paid by Client. In addition to this late charge, Client shall reimburse Brickman for all costs and expenses (including but not limited to attorneys' fees and court costs) which are reasonably incurred by Brickman in collecting overdue Service Fees and late charges.

In the event that, during the performance of Services under any Service Order, the cost of materials or fuel (collectively, "Materials") required by Brickman to perform the Services increases by more than twenty percent (20%) over the cost of Materials on the date of execution of the Service Order, the Service Fee under said Service Order shall be increased by an amount equal to the increase in the cost of Materials. All cost increases shall be documented by Brickman through quotes, invoices, or receipts and provided to Client upon request.

**3. TERM:** The term of this Agreement ("Term") shall commence on the Effective Date and shall remain in effect until terminated in accordance with the terms herein.

**4. TERMINATION:** Either Client or Brickman may terminate this Agreement and/or any Service Order without cause by giving sixty (60) days' prior written notice to the other party. Termination of this Agreement alone will not result in the termination of any previously entered into Service Order, and the terms of this Agreement will continue in effect for purposes of such Service Order, the sole effect of terminating this Agreement will be to terminate the ability of either party to enter into subsequent Service Orders that incorporate the terms of this Agreement.

Either Brickman or Client may, in its sole discretion, immediately terminate this Agreement and/or any Service Order upon written notice to the other party if: (a) the other party or record owner of any Service Location makes an assignment for the benefit of creditors, (b) a petition of bankruptcy is filed by or against the other party, or (c) all or substantially all of the other party's property is levied upon or sold in a judicial proceeding.  Further, Brickman may delay or cancel performance of Services at any Service

Location, in its sole discretion, if foreclosure proceedings are initiated with respect to such Service Location.

In the event that either party materially breaches any term of this Agreement or any Service Order, and fails to cure such breach within thirty (30) days after receiving written notice of the breach from the other party, then the other party may immediately terminate the agreement giving rise to such breach, by delivering written notice of such termination to the breaching party. Notwithstanding the foregoing, Brickman may delay or cancel performance of Services at any Service Location, in its sole discretion, if Client fails to pay any Service Fees, late charges, and collection costs due under this Agreement and/or any Service Order.

Upon any termination of this Agreement or a Service Order, Client shall pay Brickman for all fees and expenses accrued by Brickman up to and including the effective date of termination at the rates set forth in the applicable Service Order. Sections 2, 5, 6, 7, 8 and 12 shall survive the expiration or termination of this Agreement or any Service Order.

**5.  RERESENTATIONS AND WARRANTIES:** Each party represents and warrants on behalf of itself that it has full power and authority to enter into this Agreement and that this Agreement is a legally binding obligation. Brickman further represents and warrants that it will perform the Services in accordance with all applicable workplace safety requirements and standards promulgated by federal, state, and local authorities.

**6.  INDEMNIFICATION:** Brickman agrees to indemnify, hold harmless and defend Client from and against any and all liability for loss, damage or expense, resulting from third party claims, for which Client may be held liable by reason of injury to any person or damage to any property to the extent caused by the work performed for Client, expressly excluding any damage or loss caused by the negligence of Client or Client Materials.

**7.  LIMITATION OF LIABILITY:** Brickman's total liability for any losses, damages, and expenses of any type whatsoever incurred by Client or any of its affiliates, guests, tenants, invitees, and lessees ("Losses"), which are caused directly or indirectly by acts or omissions of Brickman in connection with, or related to, the Services hereunder, including but not limited to any breach of Brickman's obligations hereunder, shall be limited solely to direct and actual damages in an aggregate amount not to exceed the amounts actually paid to Brickman hereunder. In no event will Brickman be liable for special, indirect, incidental or consequential damages, irrespective of the form or cause of action, in contract, tort or otherwise, whether or not the possibility of such damages has been disclosed to Brickman in advance or could have been reasonably foreseen by Brickman. Further, Brickman shall not be liable for any losses resulting from the provision of services or performance of any work hereunder, if such Losses are due to causes of conditions beyond its reasonable control and Brickman shall only be responsible for Losses determined by a court of competent

jurisdiction to have been caused solely by Brickman's gross negligence or willful misconduct.

**8.  INSURANCE:** Prior to commencement of any work under a Service Order, Brickman shall, at its sole expense, maintain the following types of insurance on its own behalf with insurance companies lawfully authorized to do business in the jurisdiction in which the work is located and, upon request, furnish to Client Certificates of Insurance evidencing the same.
(a) <u>Workers' Compensation and Employers Liability</u>: in the State in which the work is to be performed and elsewhere as may be required.

  (i)  Workers' Compensation Coverage: Statutory Requirements

  (ii) Employers Liability Limits not less than:
  Bodily Injury by Accident: $1,000,000 Each Accident
  Bodily Injury by Disease: $1,000,000 Each Employee
  Bodily Injury by Disease: $1,000,000 Policy Limit

  (iii) Including Waiver of Right to Recover from Others Endorsement (WC 00 0313) where permitted by state law, naming Client.

(b)  <u>Commercial General Liability</u>: (including Premises Operations, Independent Contractors, Products/Completed Operations, Personal Injury, and Broad Form Property Damage).

  Occurrence Form with the following limits:

  (i) General Aggregate:                              $4,000,000
  (ii) Products/Completed Operations
       Aggregate:                                     $2,000,000
  (iii) Each Occurrence:                              $2,000,000
  (iv) Personal and Advertising Injury: $2,000,000

(c)  <u>Automobile Liability</u>:
  (i) Coverage to include All Owned, Hired and Non-Owned Vehicles (Any Auto)

  (ii) Per Accident Combined Single Limit  $2,000,000

(d)  <u>Commercial Umbrella Liability</u>:

  (i) Occurrence Limit:                  $10,000,000
  (ii) Aggregate Limit:                  $10,000,000

(e)  <u>Financial Rating and Admitted Status of Insurance Companies</u>:
  (i) A.M. Best Rating:  A- (Excellent) or Higher
  (ii) A.M. Best Financial Size Category:  Class VII or Higher

(f)  Client shall be added / included as Additional Insureds on the above General Liability coverage described above.

**9.  DISCLAIMER.** BRICKMAN MAKES NO WARRANTY, EXPRESS, IMPLIED OR STATUTORY WITH RESPECT TO THE SERVICES PROVIDED HEREUNDER, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF RELIABILITY, USEFULNESS, OR FITNESS FOR A PARTICULAR PURPOSE. By signing this Agreement, Client acknowledges and agrees that (a) snow or ice may accumulate while Services are being performed, (b) even when there is no

precipitation present, snow may blow or drift onto a Service Location or be brushed onto cars, parking, and driving areas or walkways, and (c) properly plowed snow may melt and refreeze after Services are fully performed.   Accordingly, Client understands and agrees that (i) Brickman cannot guarantee that the performance of the Services will remove all snow and ice from any Service Location, and (ii) some snow or ice may still be present at a Service Location during or after the performance of Services.

**10.   FORCE MAJEURE:** Brickman's performance will be excused to the extent Brickman is unable to perform as a result of strikes, accidents, acts of God, extreme weather conditions, inability to secure labor and/or products, fire, earthquake and rules, regulations or restrictions imposed by any government or governmental agency, or other delays or failure of performance beyond the commercially reasonable control of Brickman.

**11.   NOTICES:** Any notice required by this Agreement or any Service Order shall be in writing and given by hand delivery confirmed email transmission or by depositing such written notice in the U.S. mail, certified and postage prepaid.   In the case of Client, notices shall be sent to the party at the address set forth in the preamble to this Agreement.   In the case of Brickman, notices shall be sent to the Brickman branch address listed in the Service Order with a copy to The Brickman Group Ltd. LLC, 2275 Research Blvd., Suite 600, Rockville, MD 20850, Attn: Office of the General Counsel.

**12.   GENERAL:** This Agreement and any Service Order hereunder shall be governed by either (a) the law of the state in which the Service Location is located, or (b) if Service Locations are located in more than one state, then the laws of the State of Maryland, without regard to conflicts of laws doctrines and each party consents to the jurisdiction and exclusive venue in the state and federal courts sitting therein.

This Agreement and any Service Order may not be assigned by either party without the prior written approval of the other party except that either party may assign this Agreement or a Service Order to: (i) a parent, affiliate, or subsidiary, (ii) an acquirer of assets, or (iii) a successor by merger.   This Agreement is binding on and inures to the benefit of the parties hereto (including the record owner of the Service Location(s) if other than the Client) and their respective heirs, legal representatives, successors and permitted assigns.   Any purported assignment in violation of this section shall be void.   Notwithstanding the foregoing, Brickman may subcontract Services to qualified providers, without the prior written consent of the Client.

This Agreement constitutes the entire agreement of the parties with respect to the Services and supersedes all prior contracts or agreements with respect to the Services, whether oral or written.

Except as otherwise provided herein, this Agreement or any Service Order may be amended or modified from time to time only by a written instrument executed and agreed to by both the Client and Brickman.   The express or implied waiver by either party of a breach of any provision of this Agreement or any Service Order shall not operate or be construed as a waiver by them of any other or subsequent breach of such provision or any other provision.   This Agreement or any Service Order is not valid or binding unless and until in writing signed by a duly authorized representative of both parties.   This Agreement or any Service Order may be executed in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute a single instrument and may be delivered by facsimile or electronic transmission.

In the event of any inconsistency between the terms of this Agreement and the terms of a Service Order(s), the terms of this Agreement shall govern.

This Master Snow Management Agreement is hereby entered into between Brickman and Client as of the Effective Date shown above.

| Patient First | The Brickman Group Ltd. LLC |
|---|---|
| ("Client") | ("Brickman") |
| Signature: | Signature: _Fur C. Komadell_ |
| Name: Jeff Topley | Name: _BRIAN T. SOMMARDAHL_ |
| Title: Regional Acct. Manager | Title: _Facilities Manager_ |
| Date: 10/17/2014 | Date: _11/20/14_ |

**Patient First**

**Brickman Attachment 'A'**

11/11/2014

**Maryland and Pennsylvania**

| Address | City | State | Zip Code | Annual Cost | Branch Name | Brickman Contact | Cell Phone | Email |
|---|---|---|---|---|---|---|---|---|
| 6333 Baltimore National Pike | Catonsville | MD | 21228 | $ 5,184.00 | Baltimore | Alaine Bower | 410-419-8948 | alaine.bower@brickmangroup.com |
| 5900 Cedar Lane | Columbia | MD | 21044 | $ 3,387.00 | Howard North | Betsy Hernandez | 410-365-8976 | betsy.hernandez@brickmangroup.com |
| 560 West McPhail Road | Bel Air | MD | 21014 | $ 5,979.00 | White Marsh | Mike Ragan | 443-271-4571 | mike.ragan@brickmangroup.com |
| 8830 Bel Air Road | Perry Hall | MD | 21236 | $ 3,432.00 | White Marsh | Mike Ragan | | |
| 5100 Eastern Avenue | Baltimore | MD | 21224 | $ 6,010.00 | White Marsh | Mike Ragan | | |
| 995 Hospitality Way | Aberdeen | MD | 21001 | $ 2,136.00 | White Marsh | Mike Ragan | | |
| 7116 Ritchie Highway | Glen Burnie | MD | 21061 | $ 3,906.00 | Anne Arundel | Tod Long | 240-353-1796 | tod.long@brickmangroup.com |
| 3357 Corridor Market Place | Laurel | MD | 20724 | $ 3,960.00 | Anne Arundel | Tod Long | | |
| 1110 Annapolis Road | Odenton | MD | 21113 | $ 5,076.00 | Anne Arundel | Tod Long | | |
| 8105 Ritchie Highway | Pasadena | MD | 21122 | $ 4,859.00 | Anne Arundel | Tod Long | | |
| 2855 Crain Hwy | Waldorf | MD | 20601 | $ 5,940.00 | PG South | Josh Mueller | 240-354-7466 | josh.mueller@brickmangroup.com |
| 8601 16th Street | Silver Spring | MD | 20910 | $ 6,108.00 | DC | Mike Garner | 301-442-3894 | michael.garner@brickmangroup.com |
| 1625 Oregon Pike | Lancaster | PA | 17601 | $ 7,800.00 | Lancaster | John Eldridge | 717-542-6700 | john.eldridge@brickmangroup.com |
| 75 E Street Road | Feasterville | PA | 19053 | $ 11,200.00 | County Line | Seth Odhner | 610-656-8200 | seth.odhner@brickmangroup.com |
| 713 Bethlehem Pike | Montgomeryville | PA | 18936 | $ 4,800.00 | County Line | Seth Odhner | | |
| 2450 Butler St. | Easton | PA | 18042 | $ 6,300.00 | Allentown | Mike Bittenbender | 610-972-5267 | mike.bittenbender@brickmangroup.com |
| 2310 Schoenersville Rd. | Bethlehem | PA | 18017 | $ 9,000.00 | Allentown | Mike Bittenbender | | |
| 119 Shoemaker Rd. | Pottstown | PA | 19464 | $ 5,853.00 | Chester | Dave Deveney | 610-721-2542 | david.deveney@brickmangroup.com |

**Virginia**

| Address | City | State | Zip Code | Annual Cost | Branch Name | Brickman Contact | Cell Phone | Email |
|---|---|---|---|---|---|---|---|---|
| 3031 Plank Rd. | Fredericksburg | VA | 22401 | $ 3,144.00 | Richmond | John Tagliaferri | 804-855-7083 | john.tagliaferri@brickmangroup.com |
| 60 Prosperity Rd. | Stafford | VA | 22556 | $ 5,964.00 | Richmond | John Tagliaferri | | |
| 5486 Indian River Rd. | Virginia Beach | VA | 23464 | $ 5,904.00 | Chesapeake | Andrew Moore | 757-485-5911 | andrew.moore@brickmangroup.com |
| 705 Battlefield Blvd. | Chesapeake | VA | 23320 | $ 5,280.00 | Chesapeake | Andrew Moore | | |
| 3432 Holland Rd. | Virginia Beach | VA | 23452 | $ 7,716.00 | Chesapeake | Andrew Moore | | |
| 1605 General Booth Blvd. | Virginia Beach | VA | 23454 | $ 6,984.00 | Chesapeake | Andrew Moore | | |
| 332 Newtown Rd. | Virginia Beach | VA | 23462 | $ 9,888.00 | Chesapeake | Andrew Moore | | |
| 1239 Cedar Rd. | Chesapeake | VA | 23322 | $ 6,828.00 | Chesapeake | Andrew Moore | | |
| 2425 Taylors Rd. | Chesapeake | VA | 23321 | $ 5,580.00 | Chesapeake | Andrew Moore | | |
| 611 Denbigh Blvd. | Newport News | VA | 23608 | $ 5,868.00 | Yorktown | Vince Ward | 757-435-3959 | vince.ward@brickmangroup.com |
| 3918 Centreville Road | Chantilly | VA | 20151 | $ 4,944.00 | NoVA West | Chris Boss | 703-867-0468 | chris.boss@brickmangroup.com |
| 601 Potomac Station Dr. | Leesburg | VA | 20176 | $ 4,848.00 | NoVA West | Chris Boss | 703-867-0468 | chris.boss@brickmangroup.com |
| 2199 Old Bridge Road | Lake Ridge | VA | 22192 | $ 3,108.00 | NoVA West | Glen Goff | 703-798-9371 | glen.goff@brickmangroup.com |



# BRICKMAN

# Patient First 2014 Snow Site Contact List and Rates

### Exhibit 'B'

| Address | City | Zip | State | Branch Name / Phone Number | Account Manager | Mobile Phone | Email | Rate 1 | Rate 2 | Rate 3 |
|---|---|---|---|---|---|---|---|---|---|---|
| 8830 Belair Rd | Perry Hall | 21014 | MD | White Marsh / 410-918-9323 | Bill Minster | 410-808-9878 | bill.minster@brickmangroup.com | $415.00 | $190.00 | $100.00 |
| 985 Hospital Way | Aberdeen | 21001 | MD | White Marsh / 410-918-9323 | Mike Ragan | 443-277-4571 | | $435.00 | $210.00 | $100.00 |
| 560 W. MacPhail Rd | Bel Air | 21014 | MD | White Marsh / 410-918-9323 | Mike Ragan | 443-277-4571 | | $415.00 | $190.00 | $100.00 |
| 5100 Eastern Ave | Baltimore | 21224 | MD | White Marsh / 410-918-9323 | Greg Tracey | 443-977-3950 | greg.tracey@brickmangroup.com | $415.00 | $190.00 | $100.00 |
| 7116 Ritchie Highway | Glen Burnie | 21061 | MD | Anne Arundel / 410-724-2022 | Tod Long | 240-353-1798 | tod.long@brickmangroup.com | $415.00 | $190.00 | $100.00 |
| 3357 Corridor Market Place | Laurel | 20724 | MD | Anne Arundel / 410-724-2022 | Tod Long | 240-353-1798 | | $415.00 | $190.00 | $100.00 |
| 1100 Annapolis Road | Odenton | 21113 | MD | Anne Arundel / 410-724-2022 | Tod Long | | | $385.00 | $190.00 | $100.00 |
| 8105 Ritchie Highway | Pasadena | 21122 | MD | Anne Arundel / 410-724-2022 | Tod Long | | | $400.00 | $190.00 | $100.00 |
| 2855 Crain Highway | Waldorf | 20601 | MD | Prince Georges South / 901-952-9850 | Joshua Mueller | 240-354-7488 | josh.mueller@brickmangroup.com | $415.00 | $190.00 | $100.00 |
| 6333 Balt. National Pike | Catonsville | 21228 | MD | Baltimore South / 410-486-9680 | Alaina Bower | 410-419-8948 | alaina.bower@brickmangroup.com | $395.00 | $180.00 | $100.00 |
| 5900 Cedar Lane | Columbia | 21044 | MD | Howard North / 410-312-2978 | Betsy Hernandez | 410-385-5876 | betsy.hernandez@brickmangroup.com | $435.00 | $180.00 | $100.00 |
| 2918 Centreville Road | Chantilly | 20151 | VA | Sterling / 703-467-0062 | Chris Boss | 410-385-6183 | chris.boss@brickmangroup.com | $385.00 | $180.00 | $100.00 |
| 801 Potomac Station Dr. | Leesburg | 20176 | VA | Sterling / 703-467-0062 | Chris Boss | 410-385-6183 | chris.boss@brickmangroup.com | $415.00 | $180.00 | $100.00 |
| 60 Prosperity Lane | Stafford | 22556 | VA | Fredricksburg / 804-590-4090 | John Taglialereti | 804-695-7083 | john.taglia.lereti@brickmangroup.com | $400.00 | $180.00 | $100.00 |
| 21199 Old Bridge Road | Lake Ridge | 22192 | VA | Sterling / 703-467-0062 | John Goff | 703-786-9971 | john.goff@brickmangroup.com | $415.00 | $180.00 | $100.00 |
| 2310 Schoenersville Rd. | Bethlehem | 18017 | PA | Allentown / 610-266-9595 | Mike Bittenbender | 610-972-5287 | mike.bittenbender@brickmangroup.com | $400.00 | $190.00 | $100.00 |
| 2450 Butler St. | Easton | 18042 | PA | Allentown / 610-266-9595 | Mike Bittenbender | 610-972-5287 | mike.bittenbender@brickmangroup.com | $585.00 | $210.00 | $100.00 |
| 713 Bethlehem Rd | Montgomeryville | 18936 | PA | Bucks / 215-591-1235 | Seth Ochner | 610-658-8200 | seth.ochner@brickmangroup.com | $585.00 | $210.00 | $100.00 |
| 75 E Street Road | Feasterville | 19053 | PA | Bucks / 215-591-1235 | Seth Ochner | 610-658-8200 | seth.ochner@brickmangroup.com | $585.00 | $210.00 | $100.00 |
| 119 Shoemaker Rd. | Pottstown | 19464 | PA | Exton / 484-875-0111 | Dave Devenney | 610-721-2542 | dave.devenney@brickmangroup.com | $585.00 | $210.00 | $100.00 |
| 1825 Oregon Pike | Lancaster | 17601 | PA | Lancaster / 717-299-0401 | John Eldridge | 717-664-2444 | john.eldridge@brickmangroup.com | $585.00 | $210.00 | $100.00 |

EXHIBIT "G"

POLICY NUMBER: HDO G24556876 001



**ace group**

# Policyholder Notice
# Commercial Lines Deregulation
# New York

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

**CLASS CODE**  15050

Bates No. 000001

POLICY NUMBER:  HDO G24556876 001



**ace group**

# Information and Complaints

This information is being provided to you pursuant to the requirements of Title 28, Part 1, Chapter 1, Subchapter E. 1.601 of the Texas Administrative Code relating to our Toll Free information and complaint number.

| | |
|---|---|
| **IMPORTANT NOTICE** | **AVISO IMPORTANTE** |
| To obtain information or make a complaint: | Para obtener informacion o para someter una queja: |
| You may call the Company's toll-free telephone number for information or to make a complaint at: | Usted puede llamar al numero de telefono gratis de la Compania para informacion o para someter una queja al: |
| **1 (800) 352-4462** | **1 (800) 352-4462** |
| You may also write to the Company at: | Usted tambien puede escribir a la Compania: |
| ACE USA<br>Customer Services<br>PO Box 1000<br>Philadelphia, PA 19106-3703 | ACE USA<br>Customer Services<br>PO Box 1000<br>Philadelphia, PA 19106-3703 |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Puede communicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al: |
| **1 (800) 252 3439** | **1 (800) 252-3439** |
| You may write the Texas Department of Insurance | Puede escribir al Departamento de Seguros de Texas |
| P. O. Box 149104<br>AUSTIN, TX 78714-9104<br>FAX # (512) 475-1771<br>Web: http://www.tdi.state.tx.us<br>E-mail: ConsumerProtection@tdi.state.tx.us | P.O. Box 149104<br>AUSTIN, TX 78714-9104<br>FAX # (512) 475-1771<br>Web: http://www.tdi.state.tx.us<br>E-mail: ConsumerProtection@tdi.state.tx.us |
| PREMIUM OR CLAIM DISPUTES: Should you have a dispute concerning your premium or about a claim you should contact your agent or the company first. If the dispute is not resolved you may contact the Texas Department of Insurance. | DISPUTAS SOBRE PRIMAS O RECLAMOS: Si tiene una disputa concerniente a su prima o un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa puede entonces communicarse con el departamento de Seguros en Texas |
| ATTACH THIS NOTICE TO YOUR POLICY: This notice is for information only and does not become a part or condition of the attached document. | UNA ESTE AVISO A SU POLIZA: Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto. |

Bates No. 000002

POLICY NUMBER:  HDO G24556876 001



**ACE USA**

**ACE USA**
**Risk Control Services**
436 Walnut Street
Philadelphia, PA 19106-3703

**Phone: 1.866.357.3797**
**Fax: 215.640.5084**
www.ace-ina.com

**National Manager, Jurisdictional Services**

**RE:  RISK CONTROL SERVICES FOR TEXAS POLICYHOLDERS**
     **Commercial Automobile Liability, General Liability, Professional Liability, and Medical**
     **Professional Liability (other than Hospitals)**

The ACE Companies are required by Texas law and regulations to maintain or provide accident prevention services for its commercial automobile, general liability and professional liability policyholders. The Ace Companies offer an array of accident prevention services in Texas at no additional charge. These services are intended to help prevent and/or minimize loss.

These services include but are not limited to: individual risk surveys; improvement recommendations; loss investigation; specific loss problem identification and recommended improvement actions.

ACE may recommend one or more of these services based upon hazard, experience, and size of your Texas operations. You have the choice of receiving or declining any of the services offered. If you wish to decline all of the services or wish to receive only selected risk control service, please indicate that by signing and dating this letter in the space provided below. Please mail or fax to the captioned address or fax number. If you decline all of ACE's risk control services or choose only a support service, such as ergonomics survey, driving training, or other services and not a complete risk survey, we still have a responsibility under Texas law and regulation to monitor your losses. In the event you start to have a loss problem and a trend is established, and/or adverse loss ratio is developed, we will contact you and offer to assist you in addressing the situation.

Sincerely,


National Manager, Jurisdictional & Regulatory Services
ACE USA Risk Control Services
**436 Walnut Street, Philadelphia, PA 19106-3703**
**or call toll free at: 1-866-357-3797**

☐   **I am aware of the loss control services offered and decline them. I have made other arrangements for these services.**

☐   **I wish to obtain the following offered accident prevention services:**

_____

☐   **I have no risk control services needs now. I reserve the right to request loss control services within the period.**


_____    _____    _____
         *(Signature)*                         *(Phone #)*                 *(Date)*

**Print Name:** _____    **Policy #** _____

**Company Name:** _____

**Address:** _____

**City, State, Zip:** _____

*One of the ACE Group of Insurance & Reinsurance Companies*
**This Company has undertaken a survey of your premises, equipment, or operations (whichever is pertinent to the type of insurance applied for or provided) for the purpose of supporting the functions of risk underwriting. Any recommendations or information provided is not intended as a substitute for advice from a safety expert or legal counsel you may retain for your own purposes. It is not intended to supplant any legal duty you may have to provide a safe premises, workplace, product or operation.**

Bates No. 000003

POLICY NUMBER:  HDO G24556876 001



# Policyholder Notice

Pursuant to Arizona Revised Statutes section 20-400.10, this policy and the rates charged for it have not been filed with or approved by the director of the Arizona department of insurance. Certain provisions of Arizona law, specified in Arizona Revised Statutes section 20-400.10, do not apply to this policy, If the insurer that issued this policy becomes insolvent, insureds or claimants will not be eligible for insurance guaranty fund protection pursuant to Arizona Revised Statutes title 20.

Bates No. 000004

POLICY NUMBER:  HDO G24556876 001



# QUESTIONS ABOUT YOUR INSURANCE?

Answers to questions about your insurance, coverage information, or assistance in resolving complaints can be obtained by contacting:

ACE Customer Support Services Department:
436 Walnut Street
Philadelphia, Pennsylvania  19106-3703

Telephone Number: 1-800-352-4462
Email: ACEUSCustomerServices@ACEgroup.com

The **Illinois Department of Insurance** may also be contacted for assistance. Insurance analysts are available to answer general questions by phone at our toll-free Consumer Assistance Hotline (866) 445-5364. **However, complaints must be submitted in writing.**

**How to file a complaint with the Insurance Department:**

Complaints may be submitted in the following ways:

- On-line at
  https://insurance.illinois.gov/applications/ComplaintForms/default.aspx
  and by following the instructions posted.
- By fax: (217) 558-2083
- By email at consumer_complaints@ins.state.il.us
- By mail: 320 W. Washington St. Springfield, IL 62767

Bates No. 000005

POLICY NUMBER:  HDO G24556876 001



**ace usa**

# Disclaimer Notice
# Commercial Lines Deregulation

**The policy to which this form is attached has been issued using Rates, Rules, and/or Contract Provisions and Forms that are exempt from the filing and approval requirements of the Department of Insurance in your state of domicile.**

Bates No. 000006

POLICY NUMBER:  HDO G24556876 001



## ACE Producer Compensation
## Practices & Policies

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.aceproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

ALL-20887 (10/06)                                                                                     Page 1 of 1

Bates No. 000007

POLICY NUMBER:  HDO G24556876 001

# COLORADO FRAUD STATEMENT

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

 © ISO Properties, Inc., 2004

Bates No. 000008

POLICY NUMBER:  HDO G24556876 001



# Disclaimer Notice
# Commercial Lines Deregulation
# New Hampshire

**The policy to which this form is attached has been issued using rates, rating plans, resultant premium, and the policy forms, that are not subject to the rate and form requirements of the State of New Hampshire and other provisions of the insurance law that apply to other commercial products and may contain significant differences from a policy that is subject to all provisions of the insurance law.**

**It is possible for there to be differences in policy conditions, forms, and endorsements, as compared to a policy that is subject to all of the provisions of the insurance laws of New Hampshire. These differences, if any, are described below:**

This policy forms, terms and conditions are as agreed upon by the Insured and the Company, as per our final bound proposal.

**I hereby acknowledge that I have read the above disclaimer notice and have received a copy of the same.**

_____     **Date**   _____
**Signature of Authorized Representative**

_____
**Name and Title of Authorized Representative**

_____
**Name of Commercial Insured**

ALL-23148 (10/07)                                                                                     Page 1 of 1

Bates No. 000009

POLICY NUMBER:  HDO G24556876 001



# Kentucky
# Disclaimer Notice
# Commercial Lines Deregulation

**The rate provided for in this policy is exempt from the filing and approval requirements of Subtitle 13 of KRS Chapter 304. The forms which make up this policy contract are exempt from the filing and approval requirements of Subtitle 14 of KRS Chapter 304.**

Bates No. 000010

POLICY NUMBER:  HDO G24556876 001

# NOTICE TO ALL OKLAHOMA POLICYHOLDERS

**WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

You are insured by the Company listed on the Signature page which is named on the first page of the Declarations of this policy. It is an ACE USA company and has its principal office at 436 Walnut Street, PO Box 1000, Philadelphia, PA 19106-3703.

Bates No. 000011

POLICY NUMBER:  HDO G24556876 001



# Indiana
# Notice to Policyholders

We are here to serve you….

As our policyholder, your satisfaction is very important to us.  If you have a question about your policy, if you need assistance with a problem, or if you have a claim, you should first contact your insurance agent.

If you are unable to reach your agent, or if you wish to contact us directly, please call our Customer Services Department at 1-800-352-4462.  Should you have a valid claim, we fully expect to provide a fair settlement in a timely fashion.

Should you feel you are not being treated fairly with respect to a claim, you may also contact the Indiana Department of Insurance with your complaint.

To contact the Department, write or call:

Consumer Services Division
Indiana Department of Insurance
311 West Washington Street, Suite 300
Indianapolis, IN  46204-2787
317-232-2395 or 1-800-622-4461

ALL-2Y81 (6/03)                                             Page 1 of 1

Bates No. 000012

POLICY NUMBER:  HDO G24556876 001



ace group

# Michigan
# Disclaimer Notice
# Commercial Lines Deregulation

**This policy is exempt from the filing requirements of Section 2236 of the Insurance Code of 1956, 1956 PA 218 and MCL 500.2236.**

Bates No. 000013

POLICY NUMBER:  HDO G24556876 001

# ILLINOIS NOTICE TO POLICYHOLDERS REGARDING THE RELIGIOUS FREEDOM PROTECTION AND CIVIL UNION ACT

Dear Policyholder:

This is to provide notice that, pursuant to Illinois Department of Insurance Company Bulletin 2011-06 (CB 2011-06), this policy is in compliance with the Illinois Religious Freedom Protection and Civil Union Act ("the Act", 750 ILL. COMP. STAT. 75/1). The Act, which became effective on June 1, 2011, creates a legal relationship between two persons of either the same or opposite sex who establish a civil union.

The Act provides that parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the law of Illinois to spouses, whether they are derived from statute, administrative rule, policy, common law or any source of civil or criminal law. In addition, this law requires recognition of a same-sex civil union, marriage, or other substantially similar legal relationship, except for common law marriage, legally entered into in other jurisdictions. The Act further provides that "party to a civil union" shall be included in any definition or use of the terms "spouse", "family", "immediate family", "dependent", "next of kin" and other terms descriptive of spousal relationships as those terms are used throughout the law. According to CB 2011-06, this includes the terms "marriage" or "married" or any variations thereof. CB 2011-06 also states that if policies of insurance provide coverage for children, the children of civil unions must also be provided coverage.

Bates No. 000014

POLICY NUMBER:  HDO G24556876 001

ALL-37505 01 12

# DELAWARE NOTICE TO POLICYHOLDERS REGARDING THE CIVIL UNION AND EQUALITY ACT

Dear Policyholder:

This is to provide notice that, pursuant to the Delaware Insurance Department Domestic/Foreign Insurers Bulletin No. 46, this policy is in compliance with the Delaware Civil Union and Equality Act of 2011, 78 Del. Laws Ch. 22 (2011) (the "Act"). The Act, which becomes effective January 1, 2012, creates a form of legal union between two persons of the same sex who establish a civil union in accordance with the requirements of Delaware law.

The Act provides that parties to a civil union shall have all of the same rights, protections and benefits, and shall be subject to the same responsibilities, obligations and duties, under Delaware law as are granted to, enjoyed by, or imposed upon married spouses. The Act further provides that a party to a civil union shall be included in any definition or use of the terms "dependent", "family", "husband and wife", "immediate family", "next of kin", "spouse", "stepparent", "tenants by the entirety", and other terms, whether or not gender-specific, that denote a spousal relationship or a person in a spousal relationship, as those terms are used throughout Delaware law. For all purposes of Delaware laws that refer to marriage or marital status, other than Chapter 1 of Title 13 of the Delaware Code, parties to a civil union will be included in such reference.

In addition, the Act also automatically recognizes as civil unions, for all purposes of Delaware law, legal unions between two persons of the same sex, such as civil unions, marriages and domestic partnerships that are validly formed in jurisdictions other than Delaware and are substantially similar to Delaware civil unions.

The provisions of the Act apply for all purposes of Delaware law, whether derived from statutes, administrative rules or regulations, court rules, governmental policies, common law, court decisions, or any other provisions or sources of law, which includes the Insurance Code and all regulations and bulletins promulgated thereunder.

Bates No. 000015

POLICY NUMBER:  HDO G24556876 001



# Important Notice - Wisconsin

Wisconsin law requires us to notify you that, if you cancel this policy prior to its expiration date, the terms and conditions of your policy may require that you pay a substantial penalty.

Bates No. 000016

POLICY NUMBER:  HDO G24556876 001



**Notice To Our Florida
Property And Casualty Policyholders
Guidelines For Loss Control Plans**

Florida law requires us to inform you that we have developed guidelines for risk management plan which are available to you at no cost. The guidelines consist of the following:

A.  A booklet entitled "Establishing an Effective Loss Control Program." This booklet describes various loss control procedures that can help you in your selection and implementation of actions that eliminate or reduce the frequency and severity of your losses.

B.  A self inspection checklist that is tailored for your business and when used in inspections it may be of assistance to you in the identification of conditions which could be responsible for losses.

Should you require further help in developing and implementing an effective loss control program, other loss control services are also available to you for an additional charge. The following services are available from ACE USA Loss Control Services:

A.  Loss control management consultation. Through a visit to your facility we will assist you in identifying loss causing conditions, evaluating your loss prevention methods, and recommending loss control enhancements.

B.  Training loss control management techniques. This training supports our consulting and is intended to assist you in the implementation of your loss control procedures. The training can be provided to you or your employees.

To obtain either the free guidelines for loss control plans or information on additional loss control services, please complete the section below and send it to:

National Manager, Jurisdictional Services
ACE USA Risk Control Services
P. O. Box 1000
Philadelphia, PA 19105-1000
Tel: 866-357-3797

Bates No. 000017

| | |
|---|---|
| ☐ | Send me the free guidelines for the loss control plans |
| ☐ | Send me information on how I can obtain additional loss control services |

Business Operation:

Company Name:

Street Address:

| City: | State: | Zip Code: |
|---|---|---|

| Telephone: | Policy No: |
|---|---|

| Person to contact: | Title: |
|---|---|

Signature

Bates No. 000018

POLICY NUMBER:  HDO G24556876 001

# STATE OF LOUISIANA
# DISCLAIMER NOTICE - COVERAGE QUOTE

## COMMERCIAL LINES DEREGULATION

**THE POLICY FORMS USED FOR THIS COVERAGE QUOTE ARE NOT SUBJECT TO THE FORM FILING REQUIREMENTS OF THE LOUISIANA DIVISION OF INSURANCE**

Bates No. 000019

POLICY NUMBER:  HDO G24556876 001



# Wisconsin Notice
# to Policyholders

### KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS

**PROBLEMS WITH YOUR INSURANCE?** -- If you are having problems with your insurance company or agent, do not hesitate to contact the insurance company or agent to resolve your problem.

> **ACE USA**
> **Customer Support Service Department**
> **436 Walnut Street**
> **PO Box 1000**
> **Philadelphia, PA 19106-3703**
> **1-800-352-4462**

You can also contact the **OFFICE OF THE COMMISSIONER OF INSURANCE**, a state agency which enforces Wisconsin's insurance laws, and file a complaint. You can contact the **OFFICE OF THE COMMISSIONER OF INSURANCE** by contacting:

> Office of the Commissioner of Insurance
> Complaints Department
> P.O. Box 7873
> Madison, WI  53707-7873
> 1-800-236-8517
>   608-266-0103

Bates No. 000020

POLICY NUMBER:  HDO G24556876 001

**COMMERCIAL GENERAL LIABILITY**
**CG P 016 05 14**

# GENERAL LIABILITY ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION EXCLUSIONS

# ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following new endorsements, which applies to your renewal policy being issued by us:

**CG 21 06 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability – With Limited Bodily Injury Exception (For Use With The Commercial General Liability Coverage Part)**

When this endorsement is attached to your policy:

- Under Coverage **A** – Bodily Injury And Property Damage Liability, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage.
- Under Coverage **B** – Personal And Advertising Injury Liability, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

**CG 21 07 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability – Limited Bodily Injury Exception Not Included (For Use With The Commercial General Liability Coverage Part)**

When this endorsement is attached to your policy:

- Under Coverage **A** – Bodily Injury And Property Damage Liability, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage. However, when this endorsement is attached, it will result in a reduction of coverage due to the deletion of an exception with respect to damages because of bodily injury arising out of loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.
- Under Coverage **B** – Personal And Advertising Injury Liability, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

**CG 21 08 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information (Coverage B Only) (For Use With The Commercial General Liability Coverage Part)**

When this endorsement is attached to your policy, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

**CG 04 37 – Electronic Data Liability (For Use With The Commercial General Liability Coverage Part)**

With respect to damages arising out of access or disclosure of confidential or personal information, when this endorsement is attached to your policy:

- Under Coverage **A** – Bodily Injury And Property Damage Liability, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage.
- Under Coverage **B** – Personal And Advertising Injury Liability, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

**CG 33 53 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability – With Limited Bodily Injury Exception (For Use With The Owners And Contractors Protective Liability Coverage Part and Products/Completed Operations Coverage Part)**

When this endorsement is attached to your policy, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage.

**CG 33 59 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability – Limited Bodily Injury Exception Not Included (For Use With The Owners And Contractors Protective Liability and Products/Completed Operations Liability Coverage Parts)**

When this endorsement is attached to your policy, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage.

However, when this endorsement is attached, it will result in a reduction of coverage due to the deletion of an exception with respect to damages because of bodily injury arising out of loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

**CG 33 63 – Exclusion – Access, Disclosure Or Unauthorized Use Of Electronic Data (For Use With The Electronic Data Liability Coverage Part)**

With respect to damages arising out of access or disclosure of confidential or personal information, when this endorsement is attached to your policy coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage.

However, to the extent that damages arising out of theft or unauthorized viewing, copying, use, corruption, manipulation or deletion, of electronic data by any Named Insured, past or present employee, temporary worker or volunteer worker of the Named Insured may extend beyond loss of electronic data arising out of such theft or the other listed items, this revision may be considered a reduction in coverage.

© Insurance Services Office, Inc.,  2013  CG P 016 05 14

Bates No. 000022

POLICY NUMBER:  HDO G24556876 001

IL 09 10 07 02

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

---

**Instruction to Policy Writers**

Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania.

---

Bates No. 000023

POLICY NUMBER: HDO G24556876 001

**IL N 001 09 03**

# FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

© ISO Properties, Inc., 2003

Bates No. 000024

POLICY NUMBER:  HDO G24556876 001

IL N 014 09 03

# ARIZONA FRAUD STATEMENT

For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

Bates No. 000025

POLICY NUMBER:  HDO G24556876 001

**IL N 018 09 03**

# CALIFORNIA FRAUD STATEMENT

For your protection, California law requires that you be made aware of the following: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**IL N 018 09 03**                    © ISO Properties, Inc., 2003                    **Page 1 of 1**

POLICY NUMBER:  HDO G24556876 001

**IL N 020 09 03**

# COLORADO FRAUD STATEMENT

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

Bates No. 000027

POLICY NUMBER:  HDO G24556876 001

IL N 026 06 09

# DISTRICT OF COLUMBIA FRAUD STATEMENT

**WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

© Insurance Services Office, Inc., 2009

Bates No. 000028

POLICY NUMBER:  HDO G24556876 001

**IL N 040 09 03**

# INDIANA FRAUD STATEMENT

Any person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

Bates No. 000029

POLICY NUMBER:  HDO G24556876 001

**IL N 043 02 13**

# KANSAS FRAUD STATEMENT

Any person who commits a fraudulent insurance act is guilty of a crime and may be subject to restitution, fines and confinement in prison. A fraudulent insurance act means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer or insurance agent or broker, any written statement as part of, or in support of, an application for insurance, or the rating of an insurance policy, or a claim for payment or other benefit under an insurance policy, which such person knows to contain materially false information concerning any material fact thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto.

Bates No. 000030

POLICY NUMBER:  HDO G24556876 001

IL N 058 09 03

# MINNESOTA FRAUD STATEMENT

Any person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

Bates No. 000031

POLICY NUMBER:  HDO G24556876 001

IL N 070 09 03

# NEW HAMPSHIRE FRAUD STATEMENT

Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

Bates No. 000032

POLICY NUMBER:  HDO G24556876 001

**IL N 072 03 04**

# NEW JERSEY FRAUD STATEMENT – APPLICATION

Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

Bates No. 000033

POLICY NUMBER:  HDO G24556876 001

IL N 073 03 04

# NEW JERSEY FRAUD STATEMENT – CLAIM FORM

Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

Bates No. 000034

POLICY NUMBER:  HDO G24556876 001

IL N 076 08 04

# NEW YORK FRAUD STATEMENT

The following statement is to be attached to and form a part of the policy application:

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

---

**Insured/Applicant/Claimant**


**By (Authorized Representative)**


**Title**


**Date**

---

© ISO Properties, Inc., 2004

Bates No. 000035

POLICY NUMBER:  HDO G24556876 001

**IL N 082 09 03**

# OHIO FRAUD STATEMENT

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

Bates No. 000036

POLICY NUMBER:  HDO G24556876 001

**IL N 084 09 03**

# OKLAHOMA FRAUD STATEMENT

**WARNING** – Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

© ISO Properties, Inc., 2003

Bates No. 000037

POLICY NUMBER:  HDO G24556876 001

**IL N 085 09 04**

# OREGON FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents materially false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

Bates No. 000038

POLICY NUMBER:  HDO G24556876 001

**IL N 088 09 03**

# PENNSYLVANIA FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

Bates No. 000039

POLICY NUMBER:  HDO G24556876 001

**IL N 098 09 03**

# TENNESSEE FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

Bates No. 000040

POLICY NUMBER:  HDO G24556876 001

**IL N 106 09 03**

# VIRGINIA FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company.  Penalties include imprisonment, fines and denial of insurance benefits.

Bates No. 000041

POLICY NUMBER:   HDO G24556876 001

**IL N 142 06 06**

# WASHINGTON FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits.

Bates No. 000042

POLICY NUMBER:   HDO G24556876 001

**IL N 167 01 13**

# MARYLAND FRAUD STATEMENT

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

Bates No. 000043

POLICY NUMBER:  HDO G24556876 001

**IL N 167 06 08**

# MARYLAND FRAUD STATEMENT

Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly and willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

Bates No. 000044

POLICY NUMBER:  HDO G24556876 001

IL N 176 01 12

# DELAWARE NOTICE TO POLICYHOLDERS REGARDING THE CIVIL UNION AND EQUALITY ACT

Dear Policyholder:

This is to provide notice that, pursuant to the Delaware Insurance Department Domestic/Foreign Insurers Bulletin No. 46, this policy is in compliance with the Delaware Civil Union and Equality Act of 2011, 78 Del. Laws Ch. 22 (2011) (the "Act"). The Act, which becomes effective January 1, 2012, creates a form of legal union between two persons of the same sex who establish a civil union in accordance with the requirements of Delaware law.

The Act provides that parties to a civil union shall have all of the same rights, protections and benefits, and shall be subject to the same responsibilities, obligations and duties, under Delaware law as are granted to, enjoyed by, or imposed upon married spouses. The Act further provides that a party to a civil union shall be included in any definition or use of the terms "dependent", "family", "husband and wife", "immediate family", "next of kin", "spouse", "stepparent", "tenants by the entirety", and other terms, whether or not gender-specific, that denote a spousal relationship or a person in a spousal relationship, as those terms are used throughout Delaware law. For all purposes of Delaware laws that refer to marriage or marital status, other than Chapter 1 of Title 13 of the Delaware Code, parties to a civil union will be included in such reference.

In addition, the Act also automatically recognizes as civil unions, for all purposes of Delaware law, legal unions between two persons of the same sex, such as civil unions, marriages and domestic partnerships that are validly formed in jurisdictions other than Delaware and are substantially similar to Delaware civil unions.

The provisions of the Act apply for all purposes of Delaware law, whether derived from statutes, administrative rules or regulations, court rules, governmental policies, common law, court decisions, or any other provisions or sources of law, which includes the Insurance Code and all regulations and bulletins promulgated thereunder.

Bates No. 000045

POLICY NUMBER:  HDO G24556876 001

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004

Bates No. 000046

POLICY NUMBER:  HDO G24556876 001

IL P 006 11 05

# RHODE ISLAND NOTICE TO POLICYHOLDERS CONCERNING AVAILABILITY OF LEAD LIABILITY COVERAGE

This policy does not provide lead liability coverage. You may be eligible for lead liability coverage through the FAIR Plan. The FAIR Plan's address and telephone number(s) are: FAIR Plan, Two Center Place, Boston, MA 02108-1904; (800) 851-8978.

Bates No. 000047



**ACE USA**

# General Liability Policy- Declarations

| | | | |
|---|---|---|---|
| ☐ | Bankers Standard Insurance Company<br>436 Walnut Street, PO Box 1000<br>Philadelphia, Pennsylvania 19106-3703 | ☐ | ACE Property and Casualty Insurance Company<br>436 Walnut Street, PO Box 1000<br>Philadelphia, Pennsylvania 19106-3703 |
| ☐ | Century Indemnity Company<br>436 Walnut Street, PO Box 1000<br>Philadelphia, Pennsylvania 19106-3703 | ☐ | Indemnity Insurance Company of North America<br>436 Walnut Street, PO Box 1000<br>Philadelphia, Pennsylvania 19106-3703 |
| ☐ | ACE Fire Underwriters Insurance Company<br>436 Walnut Street, PO Box 1000<br>Philadelphia, Pennsylvania 19106-3703 | ☐ | Insurance Company of North America<br>436 Walnut Street, PO Box 1000<br>Philadelphia, Pennsylvania 19106-3703 |
| ☒ | ACE American Insurance Company<br>436 Walnut Street, PO Box 1000<br>Philadelphia, Pennsylvania 19106-3703 | ☐ | Pacific Employers Insurance Company<br>436 Walnut Street, PO Box 1000<br>Philadelphia, Pennsylvania 19106-3703 |

POLICY IDENTIFICATION

HDO      G24556876 001

NAMED INSURED AND ADDRESS

PRIOR POLICY NO. OR NEW: G24555525 001

The Brickman Group Ltd. LLC

2275 Research Blvd., Ste. 600
Rockville, MD 20850

PRODUCER CODE:
161156

AON RISK INSURANCE SERVICES
WEST INC
707 WILSHIRE BLVD
STE 2600
LOS ANGELES, CA 90054-0460

MARKETING OFFICE          LAU
MARKET HAZARD CODE:
PIIC CODE:      1500    INDUSTRY CODE:

| | | |
|---|---|---|
| POLICY IS | :Renewal | OF  G24555525 001 |
| NAMED INSURED IS | :The Brickman Group Ltd. LLC | |
| BUSINESS OF INSURED | : | |
| POLICY PERIOD | :FROM  10/01/2015   TO  10/01/2016 | |
| | 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE | |

## PREMIUM PAYMENT CONDITIONS

AUDIT PERIOD

PAYMENT FREQUENCY

PAYMENT SCHEDULE



TOTAL ADVANCE PREMIUM      

PREMIUMS RESULTING FROM AUDIT AND ANY APPLICABLE STATE SURCHARGES OR ASSESSMENTS
SHOWN BELOW ARE NOT INCLUDED IN THE ABOVE.

LD-8E00B (8/96) Printed in the U.S.A.

POLICY IDENTIFICATION

| DECLARATIONS – GENERAL LIABILITY POLICY  Page 2 | HDO | G24556876 001 |
|---|---|---|

TOTAL ADVANCE PREMIU ███████ INCLUDING ALL STATE SURCHARGES AND ASSESSMENTS

## COVERAGES AND LIMITS OF INSURANCE

In return for the payment of premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all of the terms and conditions of this policy.

**Coverage Form:** **Limits of Insurance**

COMMERCIAL GENERAL LIABILITY

| | |
|---|---|
| Each Occurrence Limit | $ 2,000,000 |
| Damage to Premises Rented to You Limit | $ 2,000,000 |
| Medical Expense Limit (any one person or organization) | $ 10,000 |
| Personal & Advertising Injury Limit | $ 2,000,000 |
| General Aggregate Limit (other than Products/Completed Operations) | $ 4,000,000 |
| Products/Completed Operations Aggregate Limit | $ 4,000,000 |
| LIQUOR LIABILITY | |
| Each Common Cause Limit | $ |
| Aggregate Limit | $ |
| Deductible | $ |
| | $ |
| | $ |
| | $ |

## SCHEDULE OF LOCATIONS

**LOCATION NUMBER AND ADDRESS**

LD-2F52b (ED. 10/01) Printed in U.S.A.                                                    AA067274a

POLICY IDENTIFICATION

**DECLARATIONS - GENERAL LIABILITY POLICY** **Page 3**

| HDO | G24556876 001 |

## SCHEDULE OF COVERAGES

**COVERAGE PART:**

| Location Number | Coverage | Class Code/ Classification Description | Premium Basis | Exposure | Rate | Premium |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |
| ___ | ___ | ___ | ___ | ___ | $ ___ | $ ___ |
| ___ | ___ | ___ | ___ | ___ | $ ___ | $ ___ |
| ___ | ___ | ___ | ___ | ___ | $ ___ | $ ___ |
| ___ | ___ | ___ | ___ | ___ | $ ___ | $ ___ |
| ___ | ___ | ___ | ___ | ___ | $ ___ | $ ___ |
| ___ | ___ | ___ | ___ | ___ | $ ___ | $ ___ |
| ___ | ___ | ___ | ___ | ___ | $ ___ | $ ___ |
| ___ | ___ | ___ | ___ | ___ | $ ___ | $ ___ |
| ___ | ___ | ___ | ___ | ___ | $ ___ | $ ___ |

TOTAL PREMIUM FOR THIS COVERAGE PART                    $ _____

When used as a premium basis the following code definitions apply:

- ☐ A - Area - Per 1,000 square feet of area
- ☐ C - Total Cost - per $1,000 of total cost
- ☐ D - If Any
- ☐ E - Admissions - per 1,000 admissions
- ☐ F - Flat Charge
- ☐ J - Total Operating Expenditures - per $1,000 of Expenditures

- ☐ O - Other _____
- ☐ P - Payroll - per $1,000 of payroll
- ☐ S - Gross Sales - per $1,000 of Gross
- ☐ U - Units
- ☐ X - Each

LD-2F51a (Ed. 3/87)  Printed in U.S.A..

POLICY IDENTIFICATION

| DECLARATIONS - GENERAL LIABILITY POLICY   Page 4 | HDO | G24556876 001 |
|---|---|---|

## FORMS AND ENDORSEMENTS

### REFER TO THE ATTACHED SCHEDULE OF FORMS AND ENDORSEMENTS FOR THE FORMS AND ENDORSEMENTS FORMING THIS POLICY AT INCEPTION

| Endorsement Number | Form Number (Edition Date) | Title |
|---|---|---|
| 1 | CC-1K11h (03/14) | Signatures |
| 2 | ALL180571211 | Notification Of Premium Adjustment |
| 3 | ALL211011106 | Trade Or Economic Sanctions Endorsement |
| 4 | ALL326860111 | Notice To Others Endorsement - Schedule Notice |
| 5 | LD12986 | Fellow Employee Coverage - Specified Employees Only |
| 6 | LD12992a0804 | Schedule Of Named Insureds |
| 7 | LD195780106 | Protective Reimbursement Endorsement |
| 8 | LD19644e0909 | Reimbursement Of Deductible Endorsement Allocated Loss Adjustment Expense ("Alae")Included In The Deductible Amount |
| 9 | LD200350206 | Excess Wrap-Up And Joint Venture Coverage Endorsement |
| 10 | LD200360206 | Incidental Medical Malpractice Liability Coverage |
| 11 | LD200380206 | Mental Injury Coverage |
| 12 | LD202830606 | Amendment of Duties In The Event of Occurrence |
| 13 | LD202870606 | Non-Contributory Endorsement For Additional Insureds |
| 14 | LD202870606 | Non-Contributory Endorsement For Additional Insureds |
| 15 | LD202870606 | Non-Contributory Endorsement For Additional Insureds |
| 16 | LD202870606 | Non-Contributory Endorsement For Additional Insureds |
| 17 | LD202870606 | Non-Contributory Endorsement For Additional Insureds |
| 18 | LD246710308 | Definition of Insured Contract Amendment |
| 19 | LD246740308 | Exclusion Of Liability Insurance Afforded Under Another Policy |
| 20 | LD2X58 | Broad Form Named Insured |
| 21 | LD2X61 | Knowledge Of Occurrence |
| 22 | LD2X62a0408 | Unintentional Failure To Disclose |
| 23 | LD342511011 | Employee Benefits Liability Coverage Supplementary Payments Included In The Deductible Amount |
| 24 | LD3R16 | Exclusion - Asbestos |
| 25 | LD3T73 | Fire, Explosion, Smoke And Water Damage Legal Liability |
| 26 | LD4241b1011 | Additional Insured - Specified Employees Professional Health Care Services |
| 27 | LD4S35 | Exclusion - Lead |
| 28 | LD5T98 | Nonowned Watercraft Exception |
| 29 | LD5T99 | Extended Property Damage |
| 30 | LD6575a0797 | Pollution Exclusion - Hostile Fire Exception |
| 31 | LD6X30 | Pesticide Or Herbicide Applicator Coverage |

LD-2A48a (Ed. 3/87) Printed in U.S.A.                                          A067266a

| 32 | CG21090615 | Exclusion - Unmanned Aircraft |
|---|---|---|
| 33 | IL00210908 | Nuclear Energy Liability Exclusion Endorsement |
| 34 | IL09850115 | Disclosure Pursuant To Terrorism Risk Insurance Act |
| 35 | CG00670305 | Exclusion - Violation Of Statutes That Govern E-Mails, FAX, Phone Calls Or Other Methods Of Sending Material Or Information |
| 36 | CG00680509 | Recording And Distribution Of Material Or Information In Violation Of Law Exclusion |
| 37 | CG02241093 | Earlier Notice Of Cancellation Provided By Us |
| 38 | CG20070413 | Additional Insured - Engineers, Architects, Or Surveyors |
| 39 | CG20110413 | Additional Insured - Managers Or Lessors Of Premises |
| 40 | CG20120413 | Additional Insured - State Or Governmental Agency Or Subdivision Or Political Subdivision - Permits Or Authorizations |
| 41 | CG20120509 | Additional Insured - State Or Governmental Agency Or Subdivision Or Political Subdivision - Permits Or Authorizations |
| 42 | CG20120798 | Additional Insured - State Or Political Subdivisions - Permits |
| 43 | CG20150413 | Additional Insured - Vendors |
| 44 | CG20260413 | Additional Insured - Designated Person Or Organization |
| 45 | CG20260413 | Additional Insured - Designated Person Or Organization |
| 46 | CG20260413 | Additional Insured - Designated Person Or Organization |
| 47 | CG20260413 | Additional Insured - Designated Person Or Organization |
| 48 | CG20260413 | Additional Insured - Designated Person Or Organization |
| 49 | CG20260413 | Additional Insured - Designated Person Or Organization |
| 50 | CG20260413 | Additional Insured - Designated Person Or Organization |
| 51 | CG20280413 | Additional Insured - Lessor Of Leased Equipment |
| 52 | CG20370413 | Additional Insured - Owners, Lessees Or Contractors - Completed Operations |
| 53 | CG20370413 | Additional Insured - Owners, Lessees Or Contractors - Completed Operations |
| 54 | CG20370413 | Additional Insured - Owners, Lessees Or Contractors - Completed Operations |
| 55 | CG20370413 | Additional Insured - Owners, Lessees Or Contractors - Completed Operations |
| 56 | CG20370413 | Additional Insured - Owners, Lessees Or Contractors - Completed Operations |
| 57 | CG20370413 | Additional Insured - Owners, Lessees Or Contractors - Completed Operations |
| 58 | CG20370704 | Additional Insured - Owners, Lessees Or Contractors - Completed Operations |
| 59 | CG21070514 | Exclusion - Access Or Disclosure Of Confidential Or Personal nformation And Data-Related Liability - Limited Bodily Injury Exception Not Included |
| 60 | CG21471207 | Employment-Related Practices Exclusion |
| 61 | CG21540196 | Exclusion - Designated Operations Covered By A Consolidated (Wrap-Up) Insurance Program |
| 62 | CG21671204 | Fungi Or Bacteria Exclusion |
| 63 | CG21700115 | Cap On Losses From Certified Acts Of Terrorism |
| 64 | CG21960305 | Silica Or Silica-Related Dust Exclusion |
| 65 | CG22741001 | Limited Contractual Liability Coverage For Personal And Advertising Injury |
| 66 | CG22921207 | Snow plow Operations Coverage |
| 67 | CG24040509 | Waiver Of Transfer Of Rights Of recovery Against Others To Us |
| 68 | CG24040509 | Waiver Of Transfer Of Rights Of recovery Against Others To Us |
| 69 | CG24040509 | Waiver Of Transfer Of Rights Of recovery Against Others To Us |

| 70 | CG24040509 | Waiver Of Transfer Of Rights Of recovery Against Others To Us |
|----|-----------|---------------------------------------------------------------|
| 71 | CG24040509 | Waiver Of Transfer Of Rights Of recovery Against Others To Us |
| 72 | CG24171001 | Contractual Liability - Railroads |
| 73 | CG25030509 | Designated Construction Project(S) General Aggregate Limit |
| 74 | CG25040509 | Designated Location(S) General Aggregate Limit |
| 75 | ALL218580207 | Port Authority Of New York And New Jersey Endorsement |
| 76 | CG01030606 | Texas Changes |
| 77 | CG01041204 | New York Changes - Premium Audit |
| 78 | CG01091185 | Kansas And Oklahoma Changes - Transfer Of Rights |
| 79 | CG01121108 | New Hampshire Changes |
| 80 | CG01221207 | Minnesota Changes - Contractual Liability Exclusion And Supplementary Payments |
| 81 | CG01230397 | Indiana Changes - Pollution Exclusion |
| 82 | CG01240193 | Wisconsin Changes - Amendment Of Policy Conditions |
| 83 | CG01340803 | Missouri Changes - Pollution Exclusion |
| 84 | CG01600798 | Wyoming Changes |
| 85 | CG01630711 | New York Changes - Commercial General Liability Coverage Form |
| 86 | CG01681009 | Michigan Changes |
| 87 | CG01790710 | Virginia Changes |
| 88 | CG01810508 | Washington Changes |
| 89 | CG01850987 | Wyoming Changes - Amendment Of Your Right To Claim And Occurrence Information |
| 90 | CG01861204 | Utah Changes |
| 91 | CG01991093 | Illinois Changes |
| 92 | CG02001207 | Illinois Changes - Cancellation And Nonrenewal |
| 93 | CG02011009 | Maryland Changes |
| 94 | CG02200312 | Florida Changes - Cancellation and Nonrenewal |
| 95 | CG26050207 | Minnesota Changes |
| 96 | CG26201093 | New Jersey Changes - Loss Information |
| 97 | CG26211091 | New York Changes - Transfer Of Duties When A Limit Of Insurance Is Used Up |
| 98 | CG26280893 | Minnesota Changes - Loss Information |
| 99 | CG26500413 | Missouri Changes - Medical Payments |
| 100 | CG26551108 | New Hampshire Changes - Amendment Of Representations Condition |
| 101 | CG26731204 | Maryland Changes - Premium Audit Condition |
| 102 | CG26811204 | Minnesota Changes - Duties Condition |
| 103 | CG27120413 | North Carolina Changes - Extended Reporting Period |
| 104 | CG32340105 | California Changes |
| 105 | IL01141013 | Wyoming Changes -Defense Costs |
| 106 | IL01201013 | Pennsylvania Changes -Defense Costs |
| 107 | IL01231113 | Washington Changes -Defense Costs |
| 108 | IL01251113 | Colorado Changes -Civil Union |
| 109 | IL02580112 | Arizona Changes - Cancellation and NonRenewal |
| 110 | IL02610907 | Kansas Changes - Cancellation And Nonrenewal |
| 111 | IL02680114 | New York Changes - Cancellation And Nonrenewal |

| 112 | IL02730110 | Rhode Island Changes - Cancellation and Nonrenewal |
| 113 | IL02751113 | Texas Changes -Cancellation And Nonrenewal Provisions For Casualty Lines And Commercial Package Policies |
| 114 | IL02780908 | District of Columbia Changes - Cancellation And Nonrenewal |
| 115 | IL00230702 | Nuclear Energy Liability Exclusion Endorsement |
| 116 | IL01150110 | Nevada Changes - Domestic Partnership |
| 117 | IL01171210 | Indiana Changes - Workers' Compensation Exclusion |
| 118 | IL01280908 | Rhode Island Changes - Prejudgment Interest |
| 119 | IL01350908 | New Hampshire Changes - Cancellation and Nonrenewal |
| 120 | IL01381111 | Virginia Changes - Cancellation and Nonrenewal |
| 121 | IL01400908 | Connecticut Changes - Civil Union |
| 122 | IL01410908 | New Jersey Changes - Civil Union |
| 123 | IL01420908 | Oregon Changes - Domestic Partnership |
| 124 | IL01470911 | Illinois Changes - Civil Union |
| 125 | IL01510112 | Delaware Changes - Civil Union |
| 126 | IL01610312 | Rhode Island Changes - Civil Union |
| 127 | IL01620908 | Illinois Changes - Defense Costs |
| 128 | IL01680312 | Texas Changes - Duties |
| 129 | IL01970908 | Rhode Island Changes |
| 130 | IL01980908 | Nuclear Energy Liability Exclusion Endorsement |
| 131 | IL02080907 | New Jersey Changes - Cancellation And Nonrenewal |
| 132 | IL02280907 | Colorado Changes - Cancellation And Nonrenewal |
| 133 | IL02360907 | Oklahoma Changes - Cancellation And Nonrenewal |
| 134 | IL02370412 | Delaware Changes - Termination Provisions |
| 135 | IL02440907 | Ohio Changes - Cancellation And Nonrenewal |
| 136 | IL02450908 | Minnesota Changes - Cancellation And Nonrenewal |
| 137 | IL02460907 | Pennsylvania Changes - Cancellation And Nonrenewal |
| 138 | IL02490908 | South Carolina Changes - Cancellation And Nonrenewal |
| 139 | IL02500908 | Tennessee Changes - Cancellation And Nonrenewal |
| 140 | IL02510907 | Nevada Changes - Cancellation And Nonrenewal |
| 141 | IL02620908 | Georgia Changes - Cancellation And Nonrenewal |
| 142 | IL02630908 | Kentucky Changes - Cancellation And Nonrenewal |
| 143 | IL02660908 | Utah Changes - Cancellation And Nonrenewal |
| 144 | IL02690908 | North Carolina Changes - Cancellation And Nonrenewal |
| 145 | IL02700912 | California Changes - Cancellation And Nonrenewal |
| 146 | IL02720907 | Indiana Changes - Cancellation And Nonrenewal |
| 147 | IL02740213 | Missouri Changes - Cancellation And Nonrenewal |
| 148 | IL02790908 | Oregon Changes - Cancellation And Nonrenewal |
| 149 | IL02810489 | West Virginia Changes - Cancellation |
| 150 | IL02820908 | Mississippi Changes - Cancellation And Nonrenewal |
| 151 | IL02830907 | Wisconsin Changes - Cancellation And Nonrenewal |
| 152 | IL02860908 | Michigan Changes - Cancellation And Nonrenewal |

This declaration and the coverage form(s) and endorsements, if any, listed above and attached, completes this policy.

Bates No. 000054

COUNTERSIGNED AT: _____ AUTHORIZED REPRESENTATIVE: _____

DATE: _____

Bates No. 000055

# SIGNATURES

| Named Insured The Brickman Group Ltd. LLC | | | Endorsement Number 1 |
|---|---|---|---|
| Policy Symbol HDO | Policy Number G24556876 001 | Policy Period 10/01/2015 to 10/01/2016 | Effective Date 10/01/2015 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD FIRE AND MARINE COMPANY** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

_____
Authorized Representative

Bates No. 000056

POLICY NUMBER:  HDO G24556876 001

**COMMERCIAL GENERAL LIABILITY**
**CG 00 01 04 13**

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Bates No. 000057

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

Bates No. 000058

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© Insurance Services Office, Inc., 2012

Bates No. 000059

**(2)** Any loss, cost or expense arising out of any:

  **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

  **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

  However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

  "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

  This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

  This exclusion does not apply to:

  **(1)** A watercraft while ashore on premises you own or rent;

  **(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

  **(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

  **(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

  **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

  **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

  "Bodily injury" or "property damage" arising out of:

  **(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

  **(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

  "Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

  **(1)** War, including undeclared or civil war;

  **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

  **(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

  "Property damage" to:

  **(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

  **(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

  **(3)** Property loaned to you;

 © Insurance Services Office, Inc., 2012

Bates No. 000060

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

Bates No. 000061

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012

Bates No. 000062

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Bates No. 000063

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

Bates No. 000064

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

Bates No. 000065

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by;

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

      © Insurance Services Office, Inc., 2012      CG 00 01 04 13

Bates No. 000066

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

Bates No. 000067

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

Bates No. 000068

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

Bates No. 000069

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

Bates No. 000070

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)** When all of the work called for in your contract has been completed.

    **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   **a.** Means:

     **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

       **(a)** You;

       **(b)** Others trading under your name; or

       **(c)** A person or organization whose business or assets you have acquired; and

     **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.** Includes:

     **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

     **(2)** The providing of or failure to provide warnings or instructions.

   **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

   **a.** Means:

     **(1)** Work or operations performed by you or on your behalf; and

     **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes:

     **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

     **(2)** The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

Bates No. 000072

POLICY NUMBER:  HDO G24556876 001

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

Bates No. 000073

# NOTIFICATION OF PREMIUM ADJUSTMENT

| Named Insured<br>The Brickman Group Ltd. LLC | | | Endorsement Number<br>2 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

For the states and lines of business in which regulatory approval has been granted for the NCCI Large Risk Alternative Rating Option, the ISO Large Risk Alternative Rating Option, or the independently filed ACE Large Risk Rating Plan, the premiums for this policy will be adjusted in accordance with the Notice of Election, signed by you.

_____
Authorized Representative

ALL-18057 (12/11)

Bates No. 000074

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured  The Brickman Group Ltd. LLC | | | Endorsement Number<br>3 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 TO 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims. All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

ALL-21101 (11/06) Ptd. in U.S.A.

Page 1 of 1

Bates No. 000075

# NOTICE TO OTHERS ENDORSEMENT – SCHEDULE
# NOTICE BY INSURED'S REPRESENTATIVE

| Named Insured The Brickman Group Ltd. LLC | | | Endorsement Number 4 |
|---|---|---|---|
| Policy Symbol HDO | Policy Number G24556876 001 | Policy Period 10/01/2015 TO 10/01/2016 | Effective Date of Endorsement 10/01/2015 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**A.**   If we cancel this Policy prior to its expiration date by notice to you or the first Named Insured for any reason other than nonpayment of premium, we will endeavor, as set out in this endorsement, to send written notice of cancellation, to the persons or organizations listed in the schedule that you or your representative create or maintain (the "Schedule") by allowing your representative to send such notice to such persons or organizations.  This notice will be ***in addition to*** our notice to you or the first Named Insured, and any other party whom we are required to notify by statute and in accordance with the cancellation provisions of the Policy.

**B.**   The notice referenced in this endorsement as provided by your representative is intended only to be a courtesy notification to the person(s) or organization(s) named in the Schedule in the event of a pending cancellation of coverage. We have no legal obligation of any kind to any such person(s) or organization(s). The failure to provide advance notification of cancellation to the person(s) or organization(s) shown in the Schedule will impose no obligation or liability of any kind upon us, our agents or representatives, will not extend any Policy cancellation date and will not negate any cancellation of the Policy.

**C.**   We are not responsible for verifying any information in any Schedule, nor are we responsible for any incorrect information that you or your representative may use.

**D.**   We will only be responsible for sending such notice to your representative, and your representative will in turn send the notice to the persons or organizations listed in the Schedule at least 30 days prior to the cancellation date applicable to the Policy. You will cooperate with us in providing the Schedule, or in causing your representative to provide the Schedule.

**E.**   This endorsement does not apply in the event that you cancel the Policy.


All other terms and conditions of this Policy remain unchanged.


_____
                                                    Authorized Representative

Bates No. 000076

# FELLOW EMPLOYEE COVERAGE - SPECIFIED EMPLOYEES ONLY

| Named Insured<br>The Brickman Group Ltd. LLC | | Endorsement Number<br>5 |
|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Paragraphs (a), (b) and (c) of 2.a. (1) of Section II - "WHO IS AN INSURED" do not apply to the following position(s):

Executive Officers, Managers, and _____          _____

Supervisors _____          _____

_____          _____

Coverage under this endorsement is excess over any other insurance, whether primary, excess, contingent or on any other basis, unless written specifically to apply in excess of this policy.

_____
Authorized Agent

Bates No. 000077

# SCHEDULE OF NAMED INSUREDS

| Named Insured<br>The Brickman Group Ltd. LLC | | Endorsement Number<br>6 |
|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The Named Insured shown in the Declarations is amended to read as follows:

ValleyCrest Landscape Development, Inc.

Western Landscape Construction

ValleyCrest Landscape Maintenance, Inc.

ValleyCrest Tree Care Services, Inc.

Valley Crest Tree Company

ValleyCrest Golf Course Development, Inc.

Brickman Acquisition Holdings, Inc.

as well as any organization other than a partnership or joint venture, and over which you or your subsidiary currently maintain ownership or majority interest provided there is no other similar insurance available to that organization; and any other organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, provided:

a)   there is no other similar insurance available to that organization; and

b)   you notify us of such acquisition not later than 60 days after the end of the policy period.

As respects newly acquired or formed organizations:

1.   Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

2.   Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past joint venture that is not shown as a Named Insured on this schedule.

_____
Authorized Agent

Bates No. 000078

## PROTECTIVE REIMBURSEMENT ENDORSEMENT

| | |
|---|---|
| Named Insured<br>The Brickman Group Ltd. LLC | Endorsement Number<br>7 |

| | | | |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |

Issued By (Name of Insurance Company)
ACE American Insurance Company

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

You have purchased the protective liability policies listed in the Schedule below (the "Scheduled Policies"), issued to your customers, the insureds, also shown in such Schedule. If no policies are listed in the Schedule, then the Scheduled Policies are all of the Railroad Protective Policies and/or Owners Contractors' Protective Policies that we issue at your request to your customers at the time when this policy is in effect. You have asked that the Scheduled Policies be subject to the loss reimbursement terms set out in the Deductible Endorsement attached to this policy.

You will pay us, or reimburse us if we pay first, for damages and "allocated loss adjustment expense" under each of the Scheduled Policies, up to the Deductible Amount, as provided in the Deductible Endorsement.

The term Coverage A as used in the Deductible Endorsement attached to this policy includes all amounts paid or payable pursuant to the Scheduled policies except for "allocated loss adjustment expenses". The term "allocated loss adjustment expense" as used in the Deductible Endorsement attached to this policy includes all "allocated loss adjustment expense" arising under the Scheduled Policies.

### <u>SCHEDULE</u>

| <u>Named Insured</u> | <u>Type of Coverage</u> | <u>Policy Number</u> |
|---|---|---|
| Burlington Northern Santa Fe Railroad | Railroad Protective Policy | ORP G2455689A |
| Crossgates Mall Company, NEWCO, LLC and Crossgates Commons C/O Pyramid Companies | Owners' Contractors Protective Policy | OCP G24556888 |

_____
Authorized Agent

Bates No. 000079

## REIMBURSEMENT OF DEDUCTIBLE ENDORSEMENT
## ALLOCATED LOSS ADJUSTMENT EXPENSE ("ALAE")
## INCLUDED IN THE DEDUCTIBLE AMOUNT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| The Brickman Group Ltd. LLC | | | 8 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| HDO | G24556876 001 | 10/01/2015  to  10/01/2016 | 10/01/2015 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies all insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**I)  DEDUCTIBLE AMOUNT**

1)  Deductible Amount:          $ 1,000,000

2)  The Deductible Amount applies to the sum of:

(i)     damages per "occurrence" under Coverage A; and

(ii)    damages sustained by any one person or organization under Coverage B; and

(iii)   medical expenses per accident under Coverage C; and

(iv)    "ALAE".

**II)  ADDITIONAL PROVISIONS**

1)  "We" will pay all sums that "we" become legally obligated to pay up to the Limits of Insurance under this policy.

2)  "You" must reimburse us up to the Deductible Amount for any amounts we have paid under this policy.

3)  The Deductible Amount shown in Section I of this endorsement will apply per "occurrence" or per offense, regardless of the number of claimants, Insureds, claims made or "suits" brought, or persons or organizations making claims or bringing "suits".

4)  If "you" fail to reimburse "us" for any amount due under this endorsement, or fail to provide "us" any collateral that "we" require, "you" will be in default of "your" obligations to "us", and "we" may take any steps "we" deem necessary to enforce our rights against "you", including but not limited to drawing on any amount of collateral "we" hold or canceling this policy, if permitted by law.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Bates No. 000080

5) Each Named Insured is jointly and severally liable for all reimbursable amounts under this endorsement.

6) If "we" recover any payment "we" make under this policy from anyone liable for damages or "ALAE", the amount "we" recover will first be applied to any payments "we" made in excess of the Deductible Amount and to "our" expenses in obtaining the recovery. The remainder of the recovery, if any, will reduce the amount that is reimbursable by "you".


## III) ALLOCATED LOSS ADJUSTMENT EXPENSE DEFINITION

**"Allocated Loss Adjustment Expense(s)" or "ALAE"** means such claim expenses, costs and any interest provided for under Section I – Coverages, Supplementary Payments – Coverages A and B of this policy, that are incurred in connection with the investigation, administration, adjustment, subrogation, settlement or defense of any claim or lawsuit that we, under our accounting practices, directly allocate to a particular claim, whether or not a payment indemnifying the claimant(s) is made.  Such expenses include, but are not limited to all court costs, fees and expenses; fees for service of process; fees and expenses to attorneys for legal services; the cost of services of undercover operations and detectives; fees to obtain medical cost containment services; the cost of employing experts for the purpose of preparing maps, photographs, diagrams, and chemical or physical analysis, or for expert advice or opinion; the cost of obtaining copies of any public records; and the cost of depositions and court reporters or recorded statements, provided, however, that Allocated Loss Adjustment Expense shall not include the salaries and traveling expenses of our employees or our overhead and adjusters' fees.


## IV) NO OTHER CHANGES

All other terms of this policy, including those with respect to:

(a) Our right and duty to defend any "insured" against a "suit" asking for damages to which this insurance applies, and

(b) Limits of Insurance, and

(c) Your Duties In The Event Of Occurrence, Offense, Claim Or Suit

remain unchanged.


_____
Authorized Agent

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## EXCESS WRAP-UP AND JOINT VENTURE COVERAGE ENDORSEMENT

| Named Insured<br>The Brickman Group Ltd. LLC | | | Endorsement Number<br>9 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM
### EXCESS COMMERCIAL GENERAL LIABILITY POLICY

**Coverage Part II – WHO IS AN INSURED**

With respect to "bodily injury", "property damage", and "personal and advertising injury" you are an insured for your liability arising out of the conduct of the wrap-up or joint venture scheduled below:

SCHEDULE:

> Wrap-up or Joint Venture for which the named insured has agreed by written contract or agreement, provided such contract or agreement was executed prior to the date of loss.

This coverage is excess over any available liability insurance purchased specifically to insure the scheduled wrap-up or joint venture.  Such excess insurance shall be limited to the amount by which the liability limits of the policy (subject to any "retained limit" or self-insured retention) exceed the available liability limits of the wrap-up or joint venture policies.

To the extent that the insurance provided by this policy is broader or less restrictive than the insurance afforded to you by other policies specifically covering the scheduled wrap-up program or joint venture, such insurance as is afforded by this policy shall apply to "bodily injury", "property damage" and "personal and advertising injury" not covered by such other policies.

The coverage provided by this endorsement **will not**:

1. Extend to or cover your liability assumed in any contract.

2. Inure to the benefit of any other party except you and shall be primary (subject to any "retained limit" or self-insured retention) when no other insurance is available to you.

_____
Authorized Agent

Bates No. 000082

## INCIDENTAL MEDICAL MALPRACTICE LIABILITY COVERAGE

| Named Insured<br>The Brickman Group Ltd. LLC | | Endorsement Number<br>10 |
|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**EXCESS COMMERCIAL GENERAL LIABILITY POLICY**

The following definition is added:

"Incidental Medical Malpractice Injury" means "Bodily Injury" arising out of the rendering of or failure to render the following services:

a.   medical, surgical, dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

b.   the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

Section II – WHO IS INSURED, 2, a. (1) (d) is deleted in its entirety and replaced with the following:

(d)   Arising out of his or her providing or failing to provide professional health care services, except for "bodily injury" arising out of "Incidental Medical Malpractice Injury" by any licensed physician, dentist, nurse or other medical practitioner employed or retained by you and acting within the scope of his or her license.  The insurance provided hereunder to such persons shall not apply to liability arising out of services performed outside of the scope of their duties as your "employees."  Any series of continuous, repeated or related acts will be treated as the occurrence of a single negligent professional healthcare service.

The Coverage provided by this endorsement does not apply to you or any insured if you are engaged in the business or occupation of providing any of the services described in the definition of "Incidental Medical Malpractice Injury."

_____
Authorized Agent

Bates No. 000083

## MENTAL INJURY COVERAGE

| Named Insured The Brickman Group Ltd. LLC | | Endorsement Number 11 |
|---|---|---|
| Policy Symbol HDO | Policy Number G24556876 001 | Policy Period 10/01/2015 to 10/01/2016 | Effective Date of Endorsement 10/01/2015 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM
### EXCESS COMMERCIAL GENERAL LIABILITY POLICY

The definition of "bodily injury" is deleted and replaced by the following:

"Bodily injury" means physical injury, sickness or disease sustained by a natural person, including:

(i)     death resulting from any of these at any time; or

(ii)    mental injury that subsequently manifests itself after such physical injury, sickness or disease is sustained by a natural person.

_____
Authorized Agent

LD-20038 (02/06)                                                                                                    Page 1 of 1

Bates No. 000084

## AMENDMENT OF DUTIES IN THE EVENT OF OCCURRENCE

| Named Insured<br>The Brickman Group Ltd. LLC | | Endorsement Number<br>12 |
|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This Endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM
EXCESS COMMERCIAL GENERAL LIABILITY POLICY
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY
RAILROAD PROTECTIVE LIABILITY**

The following is added to Duties In The Event of Occurrence, Claim or Suit of the Conditions Section:

It is agreed that if you report an occurrence to an insurer providing other than General Liability insurance, which later develops into a General Liability claim covered under this policy, failure to report such occurrence to us at the time of the occurrence shall not be deemed a violation of these conditions. However, you shall give immediate notification of the occurrence to us, as soon as is reasonably possible, that the occurrence is a General Liability claim.

_____
Authorized Agent

## NON-CONTRIBUTORY ENDORSEMENT FOR ADDITIONAL INSUREDS

| Named Insured<br>The Brickman Group Ltd. LLC | | | Endorsement Number<br>13 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### COMMERCIAL GENERAL LIABILITY COVERAGE

### **Schedule**

Organization                                                                                   Additional Insured Endorsement
 Any additional insured with whom you have agreed to provide
such non-contributory insurance, pursuant to and as required
under a written contract executed prior to the date of loss.

*(If no information is filled in, the schedule shall read: "All persons or entities added as additional insureds
through an endorsement with the term "Additional Insured" in the title)*

For organizations that are listed in the Schedule above that are also an Additional Insured under an endorsement attached to this policy, the following is added to Section IV.4.a:

If other insurance is available to an insured we cover under any of the endorsements listed or described above (the "Additional Insured") for a loss we cover under this policy, this insurance will apply to such loss on a primary basis and we will not seek contribution from the other insurance available to the Additional Insured.

_____
Authorized Agent

Bates No. 000086

## NON-CONTRIBUTORY ENDORSEMENT FOR ADDITIONAL INSUREDS

| Named Insured<br>The Brickman Group Ltd. LLC | | | Endorsement Number<br>14 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### COMMERCIAL GENERAL LIABILITY COVERAGE

### Schedule

Organization                                          Additional Insured Endorsement

 Cassidy Turley Commercial Real Estate Service, Inc. db. DTZ

*(If no information is filled in, the schedule shall read: "All persons or entities added as additional insureds through an endorsement with the term "Additional Insured" in the title)*

For organizations that are listed in the Schedule above that are also an Additional Insured under an endorsement attached to this policy, the following is added to Section IV.4.a:

If other insurance is available to an insured we cover under any of the endorsements listed or described above (the "Additional Insured") for a loss we cover under this policy, this insurance will apply to such loss on a primary basis and we will not seek contribution from the other insurance available to the Additional Insured.

_____
                                          Authorized Agent

Bates No. 000087

## NON-CONTRIBUTORY ENDORSEMENT FOR ADDITIONAL INSUREDS

| Named Insured<br>The Brickman Group Ltd. LLC | | | Endorsement Number<br>15 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
#### COMMERCIAL GENERAL LIABILITY COVERAGE

### Schedule

Organization                                              Additional Insured Endorsement

 CHCA Pearland L.P, dba Pearland Hospital; City of Pearland;
Skanska USA Building, Inc.; Skanska USA, Inc.

*(If no information is filled in, the schedule shall read: "All persons or entities added as additional insureds through an endorsement with the term "Additional Insured" in the title)*

For organizations that are listed in the Schedule above that are also an Additional Insured under an endorsement attached to this policy, the following is added to Section IV.4.a:

If other insurance is available to an insured we cover under any of the endorsements listed or described above (the "Additional Insured") for a loss we cover under this policy, this insurance will apply to such loss on a primary basis and we will not seek contribution from the other insurance available to the Additional Insured.

_____
Authorized Agent

LD-20287 (06/06)                                                                    Page 1 of 1

Bates No. 000088

## NON-CONTRIBUTORY ENDORSEMENT FOR ADDITIONAL INSUREDS

| Named Insured<br>The Brickman Group Ltd. LLC | | | Endorsement Number<br>16 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
### COMMERCIAL GENERAL LIABILITY COVERAGE

### Schedule

Organization                                              Additional Insured Endorsement

The Realty Associates Fund X, LP and Davis Partners LLC

Location:
3051, 3081-3087 & 3099 N. 1st Street, 30th West Montague
Expy, 3047 Orchard Pkwy, 3052 & 3070 Orchard Drive,
San Jose, CA 95134

*(If no information is filled in, the schedule shall read: "All persons or entities added as additional insureds through an endorsement with the term "Additional Insured" in the title)*

For organizations that are listed in the Schedule above that are also an Additional Insured under an endorsement attached to this policy, the following is added to Section IV.4.a:

If other insurance is available to an insured we cover under any of the endorsements listed or described above (the "Additional Insured") for a loss we cover under this policy, this insurance will apply to such loss on a primary basis and we will not seek contribution from the other insurance available to the Additional Insured.

_____

Authorized Agent

LD-20287 (06/06)                                                                                     Page 1 of 1

Bates No. 000089

## NON-CONTRIBUTORY ENDORSEMENT FOR ADDITIONAL INSUREDS

| Named Insured | Endorsement Number |
|---|---|
| The Brickman Group Ltd. LLC | 17 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| HDO | G24556876 001 | 10/01/2015 to 10/01/2016 | 10/01/2015 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### COMMERCIAL GENERAL LIABILITY COVERAGE

### Schedule

Organization                                                                 Additional Insured Endorsement
Lease Crutcher Lewis WA, LLC, Fred Hutchinson Cancer
Research Center, and ZGF Architects LLP

*(If no information is filled in, the schedule shall read: "All persons or entities added as additional insureds through an endorsement with the term "Additional Insured" in the title)*

For organizations that are listed in the Schedule above that are also an Additional Insured under an endorsement attached to this policy, the following is added to Section IV.4.a:

If other insurance is available to an insured we cover under any of the endorsements listed or described above (the "Additional Insured") for a loss we cover under this policy, this insurance will apply to such loss on a primary basis and we will not seek contribution from the other insurance available to the Additional Insured.

_____
Authorized Agent

Bates No. 000090

## DEFINITION OF INSURED CONTRACT AMENDMENT

| Named Insured<br>The Brickman Group Ltd. LLC | | Endorsement Number<br>18 |
|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This Endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM
### EXCESS COMMERCIAL GENERAL LIABILITY POLICY

The definition of "Insured Contract" is modified as follows:

Item c. is deleted and replaced with the following:

c.   Any easement or license agreement;

Item d. is deleted and replaced with the following:

d.   An obligation, as required by ordinance, to indemnify a municipality;

_____
Authorized Agent

Bates No. 000091

## EXCLUSION OF LIABILITY INSURANCE AFFORDED UNDER ANOTHER POLICY

| Named Insured<br>The Brickman Group Ltd. LLC | | | Endorsement Number<br>19 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM
### EXCESS COMMERCIAL GENERAL LIABILITY POLICY

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" for which liability insurance is afforded under the policy(ies) designated below, including any replacement, renewal or extension thereof, or would have been afforded but for the exhaustion of the limits of liability or cancellation or expiration of such policy(ies).

DESIGNATED POLICY(IES):
WLR C47855081
SCF C47855093
WCU C4785510A
ISA H08878535
OCP G24556888
ORP G2455689A

---
Authorized Agent

Bates No. 000092

## BROAD FORM NAMED INSURED

| Named Insured The Brickman Group Ltd. LLC | Endorsement Number 20 |
|---|---|

| Policy Symbol HDO | Policy Number G24556876 001 | Policy Period 10/01/2015 to 10/01/2016 | Effective Date of Endorsement 10/01/2015 |
|---|---|---|---|

| Issued By (Name of Insurance Company) ACE American Insurance Company |
|---|

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

It is agreed that:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any business entity incorporated or organized under the laws of the United States of America (including any State thereof), its territories or possessions or Canada (including any Province thereof) in which the Named Insured shown in the Declarations owns, during the policy period, an interest of more than 50 percent. If other valid and collectible insurance is available to any business entity covered by this policy solely by reason of ownership by the Named Insured shown in the Declarations in excess of 50 percent, this insurance is excess over the other insurance, whether primary, excess, contingent, or any other basis.

_____
Authorized Agent

Bates No. 000093

## KNOWLEDGE OF OCCURRENCE

| Named Insured<br>The Brickman Group Ltd. LLC | | | Endorsement Number<br>21 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

#### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

It is agreed that the following is added:

Knowledge of an "occurrence", claim, or "suit" by the agent, servant or employee of any insured shall not in itself constitute knowledge of the insured unless individuals in the following positions shall have received such notice from the agent, servant or employee:

Your executive officers or anyone responsible for administering your

Insurance program.

_____
Authorized Agent

Bates No. 000094

## UNINTENTIONAL FAILURE TO DISCLOSE

| Named Insured<br>The Brickman Group Ltd. LLC | Endorsement Number<br>22 |
|---|---|

| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
|---|---|---|---|

| Issued By (Name of Insurance Company)<br>ACE American Insurance Company |
|---|

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies all insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**EXCESS COMMERCIAL GENERAL LIABILITY POLICY**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY**
**RAILROAD PROTECTIVE LIABILITY**

It is agreed that the following is added:

Your failure to disclose all hazards or prior "occurrences" existing as of the inception date of the policy shall not prejudice the coverage afforded by this policy provided such failure to disclose all hazards or prior "occurrences" is not intentional.

_____
Authorized Agent

Bates No. 000095

## EMPLOYEE BENEFITS LIABILITY COVERAGE
## SUPPLEMENTARY PAYMENTS INCLUDED IN THE DEDUCTIBLE AMOUNT

| Named Insured<br>The Brickman Group Ltd. LLC | | | Endorsement Number<br>23 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.
### PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SCHEDULE

| Coverage | Limit Of Insurance | | Each Employee Deductible inclusive of Supplementary Payments |
|---|---|---|---|
| Employee Benefits Programs | $ 2,000,000 | **Each employee** | $ 1,000,000 |
| | $ 2,000,000 | **aggregate** | |
| **Retroactive Date:** | 04/01/2009 | | |

**A.** The following is added to **Section I – Coverages:**

    **COVERAGE – EMPLOYEE BENEFITS LIABILITY**

    **1. Insuring Agreement**

        **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

            **(1)** The amount we will pay for damages is limited as described in Paragraph **D.** (Section **III** – Limits Of Insurance); and

            **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

        **b.** This insurance applies to damages only if:

            **(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

            **(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

Bates No. 000096

**(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **F.** of this endorsement.

**c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

**(2)** When we make settlement in accordance with Paragraph **a.** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**2. Exclusions**

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

Bates No. 000097

    **j. Employment-Related Practices**

      Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

    **1.** All references to Supplementary Payments – Coverages **A** and **B** are replaced by Supplementary Payments – Coverages **A, B** and **Employee Benefits Liability.**

    **2.** Paragraphs **1.b.** and **2.** of the Supplementary Payments provision do not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **3.** of **Section II – Who Is An Insured** are replaced by the following:

    **2.** Each of the following is also an insured:

      **a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

      **b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

      **c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

    **3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

      **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

      **b.** Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**D.** For the purposes of the coverage provided by this endorsement, **Section III – Limits Of Insurance** is replaced by the following:

    **1. Limits Of Insurance**

      **a.** The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

        **(1)** Insureds;

        **(2)** "Claims" made or "suits" brought;

        **(3)** Persons or organizations making "claims" or bringing "suits";

        **(4)** Acts, errors or omissions; or

        **(5)** Benefits included in your "employee benefit program".

      **b.** The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

      **c.** Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

        **(1)** An act, error or omission; or

        **(2)** A series of related acts, errors or omissions

      negligently committed in the "administration" of your "employee benefit program".

      However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

Bates No. 000098

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**2. Deductible**

    **a.** We will pay all sums that we become legally obligated to pay up to the Limits of Insurance under this endorsement and you must reimburse us up to the Each Employee Deductible amount.

    **b.** The Each Employee Deductible amount stated in the Schedule applies to damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies. Payments under Supplementary Payments – Coverages A, B, and Employee Benefits Liability will erode the Each Employee Deductible amount.

    **c.** The terms of this insurance, including those with respect to:

        **(1)** Our right and duty to defend any "suits" seeking those damages; and

        **(2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim" apply irrespective of the application of the deductible amount.

**E.** For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV – Commercial General Liability Conditions** are replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

    **a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

        **(1)** What the act, error or omission was and when it occurred; and

        **(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

    **b.** If a "claim" is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

        **(2)** Authorize us to obtain records and other information;

        **(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

        **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

    **a. Primary Insurance**

    This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

Bates No. 000099

**b. Excess Insurance**

**(1)** This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

**(a)** No Retroactive Date is shown in the Schedule of this insurance; or

**(b)** The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

**(2)** When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or all of the loss has been paid, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

**F.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

**1.** You will have the right to purchase an Extended Reporting Period, as described below, if:

**a.** This endorsement is canceled or not renewed; or

**b.** We renew or replace this endorsement with insurance that:

**(1)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

**(2)** Does not apply to an act, error or omission on a claims-made basis.

**2.** The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

**3.** An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

**a.** The "employee benefit programs" insured;

**b.** Previous types and amounts of insurance;

**c.** Limits of insurance available under this endorsement for future payment of damages; and

**d.** Other related factors.

Bates No. 000100

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

**4.** If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

Paragraph **D.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **D.1.c.**

**G.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

**1.** "Administration" means:

**a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

**b.** Handling records in connection with the "employee benefit program"; or

**c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

**3.** "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

**4.** "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

**a.** Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

**b.** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

**c.** Unemployment insurance, social security benefits, workers' compensation and disability benefits;

**d.** Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

**e.** Any other similar benefits designated in the Schedule or added thereto by endorsement.

**H.** For the purposes of the coverage provided by this endorsement, Definitions **5.** and **18.** in the **Definitions** Section are replaced by the following:

**5.** "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**18.** "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

Bates No. 000101

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

Bates No. 000102

## EXCLUSION – ASBESTOS

| Named Insured | | | | Endorsement Number |
|---|---|---|---|---|
| The Brickman Group Ltd. LLC | | | | 24 |

| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
|---|---|---|---|---|
| HDO | G24556876 001 | 10/01/2015 to 10/01/2016 | | 10/01/2015 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM
FARM COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVEAGE FORM
POLLUTION LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
SPECIAL PROTECTIVE AND HIGHWAY LIABILTIY POLICY – NEW YORK**

This insurance does not apply to any loss, demand, claim or "suit" arising out of or related in any way to asbestos or asbestos-containing materials.

_____
Authorized Agent

Bates No. 000103

## FIRE, EXPLOSION, SMOKE AND WATER DAMAGE LEGAL LIABILITY

| Named Insured<br>The Brickman Group Ltd. LLC | | | Endorsement Number<br>25 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

#### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The word fire is changed to **fire, explosion, smoke or water damage** where it appears in:

1. The Limits of Insurance section of the Declarations:

2. Paragraph 6. of **Limits of Insurance**

3. Paragraph b of the **Other Insurance** condition;

Paragraph a. of the definition of "insured contract" in the **Definitions** section is replaced by the following:

a. A contract for a lease of premises.  However, that portion of the contract that indemnifies any person or organization for damage by fire, explosion, smoke or water damage to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract."

Bates No. 000104

**ADDITIONAL INSURED – SPECIFIED EMPLOYEES**
**PROFESSIONAL HEALTH CARE SERVICES**

| Named Insured<br>The Brickman Group Ltd. LLC | | | Endorsement Number<br>26 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

Paragraph 2.a (1) (d) of SECTION II – "WHO IS AN INSURED" does not apply to the following positions(s):

| Position | Contract or Job Description |
|---|---|
| Health care professionals specified under written contract or agreement, executed prior to the date of loss. | If Any |

Coverage under this endorsement is excess over any other insurance, whether primary, excess, contingent or on any other basis if the loss arises out of "bodily Injury" or "personal and advertising injury" arising out of an "employee" or "volunteer worker" providing or failing to provide professional health care services.

_____
Authorized Representative

Bates No. 000105

# EXCLUSION – LEAD

| Named Insured<br>The Brickman Group Ltd. LLC | | | Endorsement Number<br>27 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement amends all insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY FORM**
**FARM COVERAGE FORM**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**
**RAILROAD PROTECTIVE LIABILITY COVERAGE FORM**
**SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK**

**THE COMBINED POLICY – SECTION II**
**COMMERCIAL FARM POLICY – SECTION II**
**FARMERS PACKAGE POLICY – SECTION II**

---

This insurance does not apply to, and we shall have no duty of any kind with respect to, any injury, damage, expense, cost, loss, liability or legal obligation arising out of or allegedly arising out of or in any way related to the toxic properties of lead or lead-containing products, materials or substances.

This exclusion applies to all forms of lead, including but not limited to solid, liquid, vapor and fumes.

This exclusion applies, but is not limited, to any injury, damage, expense, cost, loss, liability or legal obligation to test for, monitor, abate, remove, or take any other remedial action with respect to lead or lead-containing products, materials or substances.

The addition of this endorsement does not imply that other policy provisions, including but not limited to any pollution exclusion, do not also exclude coverage for lead-related injury, damage, expense, cost, loss, liability or legal obligation.

_____
Authorized Agent

Bates No. 000106

## NONOWNED WATERCRAFT EXCEPTION

| Named Insured<br>The Brickman Group Ltd. LLC | | Endorsement Number<br>28 |
|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

Subparagraph (2) of Exclusion 2.g. of Coverage I.A., Bodily Injury and Property Damage Liability is deleted in its entirety and replaced by the following:

(2)  A watercraft you do not own that is:

(a)  Less than   50        feet long; and

(b)  Not being used to carry persons or property for a charge;

Bates No. 000107

# EXTENDED PROPERTY DAMAGE

| | |
|---|---|
| Named Insured<br>The Brickman Group Ltd. LLC | Endorsement Number<br>29 |

| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
|---|---|---|---|

| Issued By (Name of Insurance Company)<br>ACE American Insurance Company |
|---|

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

#### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Exclusion 2.a. of Section I, Coverage A, "Bodily Injury and Property Damage" is replaced by the following:

    a.  "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

Bates No. 000108

## POLLUTION EXCLUSION – HOSTILE FIRE EXCEPTION

| Named Insured | Endorsement Number |
|---|---|
| The Brickman Group Ltd. LLC | 30 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| HDO | G24556876 001 | 10/01/2015 to 10/01/2016 | 10/01/2015 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement replaces any pollution exclusion

### and amends all insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY FORM

### FARM COVERAGE FORM

### OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM

### PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

### RAILROAD PROTECTIVE LIABILITY COVERAGE FORM

### SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY - NEW YORK

_____

1.  This insurance does not apply to any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to pollution, however caused.

    Section 1. of this exclusion does not apply to:

    "Bodily injury" or "property damage" caused by heat, smoke or fumes from a hostile fire:

    a.  At or from premises you own, rent, or occupy; or

    b.  At or from any site or location on which you or any of your contractors working directly or indirectly on your behalf are performing operations, if pollutants are brought on or to the site in connection with such operations.

    A hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

2.  This insurance does not apply to any expense, cost or loss arising out of any:

    a.  Request, demand or order that any or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollution; or

    b.  Claim or "suit" by or behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollution.

    We shall have no duty to defend any "suit", claim or proceeding arising out of or in any way related to pollution excluded by this endorsement.

    Pollution includes the actual, alleged or potential presence in or introduction into the environment of any substance, including pollutants, if such substance has, or is alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water.

    Pollutants include any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

_____
Authorized Agent

Bates No. 000109

## PESTICIDE OR HERBICIDE APPLICATOR COVERAGE

| Named Insured<br>The Brickman Group Ltd. LLC | | | Endorsement Number<br>31 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24556876 001 | Policy Period<br>10/01/2015 to 10/01/2016 | Effective Date of Endorsement<br>10/01/2015 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

#### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

#### SCHEDULE

**Description of Operations:**  If any

With respect to the operations shown in the Schedule above, the pollution exclusion does not apply to "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants, at or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations provided:

a.    the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; and

b.    the operations meet all standards of any statute, ordinance, regulation or license requirement of any federal, state or local government which apply to those operations.

_____
Authorized Agent

LD-6X30  Ptd. in U.S.A.

Page 1 of 1

POLICY NUMBER: HDO G24556876 001

Endorsement Number: 32

**COMMERCIAL GENERAL LIABILITY**
**CG 21 09 06 15**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.g. Aircraft, Auto Or Watercraft** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**g. Aircraft, Auto Or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This Paragraph **g.(1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

**(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph **g.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This Paragraph **g.(2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

**(i)** Less than 26 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

Bates No. 000111

**(e)** "Bodily injury" or "property damage" arising out of:

**(i)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(ii)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Unmanned Aircraft**

"Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This exclusion does not apply to:

**a.** The use of another's advertising idea in your "advertisement"; or

**b.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**C.** The following definition is added to the **Definitions** section:

"Unmanned aircraft" means an aircraft that is not:

**1.** Designed;

**2.** Manufactured; or

**3.** Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

Page 2 of 2

Bates No. 000112

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  33

**IL 00 21 09 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

Bates No. 000113

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007

Bates No. 000114

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  34

**IL 09 85 01 15**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| SCHEDULE – PART I |
| --- |
| **Terrorism Premium (Certified Acts)**      $27,766<br>**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):**<br>HDO G24556876 001<br><br><br><br><br>**Additional information, if any, concerning the terrorism premium:**<br><br> |

| SCHEDULE – PART II |
| --- |
| **Federal share of terrorism losses**   85   **% Year: 20** 15<br>(Refer to Paragraph **B.** in this endorsement.)<br><br>**Federal share of terrorism losses**   86   **% Year: 20** 16<br>(Refer to Paragraph **B.** in this endorsement.) |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
| --- |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

Bates No. 000115

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2015   **IL 09 85 01 15**

Bates No. 000116

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  35

**COMMERCIAL GENERAL LIABILITY
CG 00 67 03 05**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

  **2. Exclusions**

  This insurance does not apply to:

  **DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

  "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

  **a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

  **b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

  **c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

  **2. Exclusions**

  This insurance does not apply to:

  **DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

  "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

  **a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

  **b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

  **c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Bates No. 000117

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  36

**COMMERCIAL GENERAL LIABILITY**
**CG 00 68 05 09**

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **q.** of Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p.** of Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Bates No. 000118

POLICY NUMBER:  HDO G24556876 001                              Endorsement Number:  37

**COMMERCIAL GENERAL LIABILITY**
**CG 02 24 10 93**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EARLIER NOTICE OF CANCELLATION
# PROVIDED BY US

This endorsement modifies insurance provided under the following:

      COMMERCIAL GENERAL LIABILITY COVERAGE PART
      LIQUOR LIABILITY COVERAGE PART
      POLLUTION LIABILITY COVERAGE PART
      PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Number of Days' Notice**   90 Days

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph **2.** of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

**CG 02 24 10 93**                    Copyright, Insurance Services Office, Inc.,  1992                    **Page 1 of 1**

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  38

**COMMERCIAL GENERAL LIABILITY**
**CG 20 07 04 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED –
# ENGINEERS, ARCHITECTS OR SURVEYORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an additional insured any architect, engineer, or surveyor engaged by you but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In connection with your premises; or

**2.** In the performance of your ongoing operations.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by or for you, including:

**1.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**2.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional services by or for you.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**CG 20 07 04 13**                    © Insurance Services Office, Inc., 2012                    **Page 1 of 1**

Bates No. 000120

POLICY NUMBER:  HDO G24556876 001                     Endorsement Number:  39

**COMMERCIAL GENERAL LIABILITY**
**CG 20 11 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Designation Of Premises (Part Leased To You):**  All premises leased by you as lessee. |
| **Name Of Person(s) Or Organization(s) (Additional Insured):**  Any Manager or Lessor of premises leased to you whom you have agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss. |
| **Additional Premium:  $** Included. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

**1.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**2.** Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

CG 20 11 04 13                     © Insurance Services Office, Inc., 2012                     Page 1 of 1

POLICY NUMBER:  HDO G24556876 001                           Endorsement Number:  40

**COMMERCIAL GENERAL LIABILITY**
**CG 20 12 04 13**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION – PERMITS OR AUTHORIZATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **State Or Governmental Agency Or Subdivision Or Political Subdivision:**  Any state, government agency or political subdivision that has issued a permit or authorization to you in connection with your operations. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following provisions:

**1.** This insurance applies only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

However:

**a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**2.** This insurance does not apply to:

**a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

**b.** "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

CG 20 12 04 13                    © Insurance Services Office, Inc., 2012                    Page 1 of 1

POLICY NUMBER:  HDO G24556876 001                          Endorsement Number:  41

**COMMERCIAL GENERAL LIABILITY**
**CG 20 12 05 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION – PERMITS OR AUTHORIZATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **State Or Governmental Agency Or Subdivision Or Political Subdivision:** |
| The City of San Bernardino and their officers, employees and agents are additionally insureds thereunder with respect to operations for which city has issued a permit or authorization. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**Section II – Who Is An Insured** is amended to include as an insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following provisions:

**1.** This insurance applies only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

**2.** This insurance does not apply to:

**a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

**b.** "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**CG 20 12 05 09**          © Insurance Services Office, Inc., 2008          **Page 1 of 1**

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  42

**COMMERCIAL GENERAL LIABILITY**
**CG 20 12 07 98**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED –
# STATE OR POLITICAL SUBDIVISIONS – PERMITS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**State Or Political Subdivision:**  The City of New York and the Department of Transporation Its Offices, Employees Representatives are included As Additional Insured(s)

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**Section II – Who Is An Insured**  is amended to include as an insured any state or political subdivision shown in the Schedule, subject to the following provisions:

1. This insurance applies only with respect to operations performed by you or on your behalf for which the state or political subdivision has issued a permit.

2. This insurance does not apply to:

   a. "Bodily injury," "property damage" or "personal and advertising injury" arising out of operations performed for the state or municipality; or

   b. "Bodily injury" or "property damage" included within the "products-completed operations hazard".

Bates No. 000124

POLICY NUMBER:  HDO G24556876 001                          Endorsement Number:  43

**COMMERCIAL GENERAL LIABILITY**
**CG 20 15 04 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| Any Vendor whom you have agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss. | All of your products |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

**1.** The insurance afforded to such vendor only applies to the extent permitted by law; and

**2.** If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

**1.** The insurance afforded the vendor does not apply to:

**a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**b.** Any express warranty unauthorized by you;

**c.** Any physical or chemical change in the product made intentionally by the vendor;

**d.** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

CG 20 15 04 13                   © Insurance Services Office, Inc., 2012                   **Page 1 of 2**

Bates No. 000125

**e.** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**f.** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**h.** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

   **(1)** The exceptions contained in Subparagraphs **d.** or **f.;** or

   **(2)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**2.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**C.** With respect to the insurance afforded to these vendors, the following is added to **Section III – Limits Of Insurance**:

If coverage provided to the vendor is required by a contract or agreement, the most we will pay on behalf of the vendor is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

CG 20 15 04 13

Bates No. 000126

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  44

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s):  Any person or organization whom you have agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss. |
|---|

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**CG 20 26 04 13**          © Insurance Services Office, Inc., 2012          **Page 1 of 1**

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  45

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):** |
| DPR Construction, A General Partnership, its joint venture and joint venture partner, where . applicable, its/their officers, owners, employees, agents, parents, partners, subsidiaries and affiliates; the Owner and any person or organization that Owner requires by written contract |
| DPR Construction, a General Partnership, Cymer LLC, and Ferguson, Pape, Baldwin Architects, |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

Bates No. 000128

POLICY NUMBER:  HDO G24556876 001                               Endorsement Number:  46

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| Re: 460.486 Aventine 8910 University Center Lane, San Diego, CA 92122<br>RP Aventine Office Owner. LLC<br>RP Aventine Retail Owner, LLC<br>Montgomery Advisors<br>RiverRock Real Estate Group, Inc.<br>Attn: M. Cochran<br>8910 University Center Lane, Ste. 415<br>San Diego CA 92122 USA |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

Bates No. 000129

POLICY NUMBER:  HDO G24556876 001                                   Endorsement Number:  47

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| Cassidy Turley Commercial Real Estate Service, Inc. db. DTZ |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or

2. In connection with your premises owned by or rented to you.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

CG 20 26 04 13                           © Insurance Services Office, Inc., 2012                           Page 1 of 1

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  48

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| **Name Of Additional Insured Person(s) Or Organization(s):** |
|---|
| The Realty Associates Fund X, LP and Davis Partners LLC Location: 3051, 3081-3087 & 3099 N. 1st Street, 30 West Montague Expy, 3047 Orchard Pkwy, 3052 & 3070 Orchard Drive, San Jose, CA 95134 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**CG 20 26 04 13**          © Insurance Services Office, Inc., 2012          **Page 1 of 1**

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  49

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
| --- |
| Westfield Property Services, Inc.<br>1800 Larimer, LLC<br>1800 Larimer Street, Suite 1800, Denver, Co 80202<br>RE: 400400000, 180 Larimer, Denver, CO |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or

2. In connection with your premises owned by or rented to you.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

          © Insurance Services Office, Inc., 2012

Bates No. 000132

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  50

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):** |
| The City of San Bernardino and their officers, employees and agents are additionally insureds thereunder with respect to operations for which the City has issued a permit or authorization. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or

2. In connection with your premises owned by or rented to you.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

                   © Insurance Services Office, Inc., 2012

Bates No. 000133

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  51

**COMMERCIAL GENERAL LIABILITY**
**CG 20 28 04 13**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **Name Of Additional Insured Person(s) Or Organization(s):**  Any person or organization whom you have agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

Bates No. 000134

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  52

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 04 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| Any person or organization whom you have agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss. | All locations where you perform work for such additional insured pursuant to any such written contract. |
|  |  |
|  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**CG 20 37 04 13**                    © Insurance Services Office, Inc., 2012                    **Page 1 of 1**

POLICY NUMBER:  HDO G24556876 001                          Endorsement Number:  53

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 04 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| RP Aventine Office Owner, LLC<br>RP Aventine Owner, LLC<br>Montgomery Advisors<br>Attn: M. Cochran<br>8910 University Center Lane, Ste. 415<br>San Diego, CA 92122 USA | Re; 460.486 Aventine 8910 University Center Lane, San Diego, CA 92122 |
|  |  |
|  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

Bates No. 000136

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  54

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 04 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| DPR Construction, A General Partnership, its joint venture and joint venture partner, where applicable, its/their officers, owners, employees, agents, parents, partners, subsidiaries and affiliates; the Owner and any person or organization that Owner requires by written contract DPR Construction, a General Partnership, Cymer LLC, and Ferguson, Pape, Baldwin Architects. | Cymer CSD-4 Employee Cafeteria Addition 17075 Thornmint Ct. San Diego CA 92127 |
|  |  |
|  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

          © Insurance Services Office, Inc., 2012

Bates No. 000137

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  55

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| The City of New York | The City of New York and Department of Transportation |
|  |  |
|  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

Bates No. 000138

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  56

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
**SCHEDULE**

| Name Of Additional Insured Person(s)<br>Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| Westfield Property Services, Inc.<br>1800 Larimer, LLC<br>1800 Larimer Street, Suite 1800, Denver, CO 80202 | 400400000, 1800 Larimer, Denver, CO |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

              © Insurance Services Office, Inc., 2012

Bates No. 000139

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  57

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 04 13**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| The City of San Bernardino and their officers, Employees and agents are additionally insureds thereunder with respect to operations for which the City has issued a permit or authorization | RE: City of San Bernardino<br>     300 N. D. Street, San Bernardino, CA 92418 |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**CG 20 37 04 13**                    © Insurance Services Office, Inc., 2012                    **Page 1 of 1**

Bates No. 000140

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  58

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 07 04**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location And Description Of Completed Operations |
|---|---|
| The Realty Associates Fund X, LP and Davis Partners LLC | 3051, 3081-3087 & 3099 N. 1st Street, 30 West Montague Expy, 3047 Orchard Pkwy. 3052 & 3070 Orchard Drive, San Jose, CA 95134 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

Bates No. 000141

POLICY NUMBER:  HDO G24556876 001      Endorsement Number:  59

**COMMERCIAL GENERAL LIABILITY**
**CG 21 07 05 14**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – LIMITED BODILY INJURY EXCEPTION NOT INCLUDED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

Bates No. 000142

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  60

**COMMERCIAL GENERAL LIABILITY**
**CG 21 47 12 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)**  A person arising out of any:

    **(a)**  Refusal to employ that person;

    **(b)**  Termination of that person's employment; or

    **(c)**  Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)**  The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)**  Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)**  Whether the insured may be liable as an employer or in any other capacity; and

**(3)**  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)**  A person arising out of any:

    **(a)**  Refusal to employ that person;

    **(b)**  Termination of that person's employment; or

    **(c)**  Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)**  The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)**  Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)**  Whether the insured may be liable as an employer or in any other capacity; and

**(3)**  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Bates No. 000143

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  61

**COMMERCIAL GENERAL LIABILITY**
**CG 21 54 01 96**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description and Location of Operation(s):**
Excludes work conducted at or from any OCIP or CCIP for which the Named Insured is an enrolled participant.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.,** Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

**(1)** Provides coverage identical to that provided by this Coverage Part;

**(2)** Has limits adequate to cover all claims; or

**(3)** Remains in effect.

**CG 21 54 01 96**

Copyright, Insurance Services Office, Inc.,  1994

**Page 1 of 1**

POLICY NUMBER:  HDO G24556876 001                                         Endorsement Number:  62

**COMMERCIAL GENERAL LIABILITY**
**CG 21 67 12 04**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

    **2. Exclusions**

    This insurance does not apply to:

    **Fungi Or Bacteria**

    **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

    **b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

    This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

    **2. Exclusions**

    This insurance does not apply to:

    **Fungi Or Bacteria**

    **a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

    **b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

    "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Bates No. 000145

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  63

**COMMERCIAL GENERAL LIABILITY**
**CG 21 70 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

**CG 21 70 01 15**                    © Insurance Services Office, Inc., 2015                    **Page 1 of 1**

POLICY NUMBER:  HDO G24556876 001      Endorsement Number:  64

**COMMERCIAL GENERAL LIABILITY**
**CG 21 96 03 05**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

Bates No. 000147

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  65

**COMMERCIAL GENERAL LIABILITY**
**CG 22 74 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED CONTRACTUAL LIABILITY COVERAGE FOR PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

Designated Contract Or Agreement:
Any written contract, executed prior to the date of loss, under which you have agreed to assume the tort liability of another arising out of the offenses of false arrest, detention or imprisonment.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** With respect to the contract or agreement designated in the Schedule above, Subparagraph **e.** of Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement.

This exclusion does not apply to:

**(1)** Liability for damages that the insured would have in the absence of the contract or agreement; or

**(2)** Liability for "personal and advertising injury" if:

**(a)** The liability pertains to your business and is assumed in the designated contract or agreement shown in the Schedule in which you assume the tort liability of another. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**(b)** The "personal and advertising injury" occurs subsequent to the execution of the designated contract or agreement shown in the Schedule; and

**(c)** The "personal and advertising injury" arises out of the offenses of false arrest, detention or imprisonment.

Bates No. 000148

Solely for the purposes of liability so assumed in such designated contract or agreement, reasonable attorney fees and litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "personal injury" described in Paragraph **A.2.e.(2)(c)** above, provided:

**(i)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same designated contract or agreement; and

**(ii)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**B.** With respect to the contract or agreement designated in the Schedule above, the following is added to **Section I – Supplementary Payments – Coverages A And B:**

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**1.** The "suit" against the indemnitee seeks damages for which the insured has assumed tort liability of the indemnitee in a designated contract or agreement shown in the Schedule, if such liability pertains to your business. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**2.** This insurance applies to such liability assumed by the insured;

**3.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same designated contract or agreement;

**4.** The allegations in the "suit" and the information we know about the offense are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**5.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**6.** The indemnitee:

**a.** Agrees in writing to:

**(1)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(2)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(3)** Notify any other insurer whose coverage is available to the indemnitee; and

**(4)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**b.** Provides us with written authorization to:

**(1)** Obtain records and other information related to the "suit"; and

**(2)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **A.2.e.(2)** of this endorsement, such payments will not be deemed to be damages for "personal and advertising injury" as described in Paragraph **A.2.e.(2)(c)** above and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

**1.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**2.** The conditions set forth above, or the terms of the agreement described in Paragraph **6.** above, are no longer met.

 © ISO Properties, Inc., 2001 CG 22 74 10 01

Bates No. 000149

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  66

**COMMERCIAL GENERAL LIABILITY**
**CG 22 92 12 07**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SNOW PLOW OPERATIONS COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Within the "products-completed operations hazard", Exclusion **g.** under Section **I – Coverage A – Bodily Injury And Property Damage Liability** does not apply to any "auto" used for snow plow operations.

Bates No. 000150

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  67

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 05 09**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Person Or Organization:**  Any person or organization against whom you have agreed to waive your right of recovery in a written contract, provided such contract was executed prior to the date of loss. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

© Insurance Services Office, Inc., 2008

Bates No. 000151

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  68

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 05 09**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Person Or Organization:**  Cassidy Turley Commercial Real Estate Service, Inc. db. DTZ |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

© Insurance Services Office, Inc., 2008

Bates No. 000152

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  69

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 05 09**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person Or Organization: |
| --- |
| The Realty Associates Fund X, LP and Davis Partners LLC Location: |
| 3051, 3081-3087 & 3099 N. 1st Street, 30th West Montague Expy, 3047 Orchard Pkwy, 3052 & 3070 Orchard Drive, San Jose, CA 95134 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

**CG 24 04 05 09**                    © Insurance Services Office, Inc., 2008                    Page 1 of 1

POLICY NUMBER:  HDO G24556876 001                          Endorsement Number:  70

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 05 09**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Person Or Organization:**<br><br>1800 Larimer, LLC and Westfield Property Services, Inc.<br><br>1800 Larimer Street, Suite 1800, Denver, CO 80202<br><br>RE: 400400000 – 1800 Larimer, Denver CO |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

© Insurance Services Office, Inc., 2008

Bates No. 000154

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  71

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 05 09**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| **Name Of Person Or Organization:** |
| --- |
| Re: 460.486 Aventine 8910 University Center Lane |
| San Diego, CA 92122 |
| RP Aventine Office Owner, LLC |
| RP Aventine Retail Owner, LLC |
| Montgomery Advisors |
| RiverRock Real Estate Group, Inc. |
| Attn: M. Cochran |
| 8910 University Center Lane, Ste. 415 |
| San Diego CA 92122 USA |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

CG 24 04 05 09                © Insurance Services Office, Inc., 2008                Page 1 of 1

Bates No. 000155

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  72

**COMMERCIAL GENERAL LIABILITY**
**CG 24 17 10 01**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CONTRACTUAL LIABILITY – RAILROADS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Scheduled Railroad: | Designated Job Site: |
|---|---|
| Any railroad (RR) which you have agreed to Indemnify pursuant to written contract entered Into with such RR that was signed prior to loss, in connection with an easement granted by such RR to you. | All job sites where you are operating under an easement granted by a scheduled RR, and where you have agreed to indemnify such RR for your operations pursuant to such easement under a written contract entered into with such RR prior to loss. |

 (If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of "insured contract" in the Definitions section is replaced by the following:

**9.** "Insured Contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an in-demnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to pre-pare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifi-cations; or

**(b)** Giving directions or instructions, or fail-ing to give them, if that is the primary cause of the injury or damage;

**(2)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the in-sured's rendering or failure to render pro-fessional services, including those listed in Paragraph **(1)** above and supervisory, in-spection, architectural or engineering activities.

© ISO Properties, Inc.,  2000

Bates No. 000156

POLICY NUMBER:  HDO G24556876 001                          Endorsement Number:  73

**COMMERCIAL GENERAL LIABILITY**
**CG 25 03 05 09**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Designated Construction Project(s):**  Each project for which the insured has agreed, pursuant to a written contract signed prior to the date of loss, to provide a separate Designated Construction Project General Aggregate Limit under this policy. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

**1.** A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

**2.** The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

**3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

**4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

Bates No. 000157

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** Coverage **C,** which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1.  Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

2.  Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

**D.** If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties de-viate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

**E.** The provisions of Section **III** – Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

Bates No. 000158

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  74

**COMMERCIAL GENERAL LIABILITY**
**CG 25 04 05 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED LOCATION(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Designated Location(s):**  Each location for which the Insured has agreed, pursuant to a written contract signed prior to the date of loss, to provide a separate Designated location General Aggregate Limit under this policy.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which can be attributed only to operations at a single designated "location" shown in the Schedule above:

**1.** A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

**2.** The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

**4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

Bates No. 000159

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

  **1.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

  **2.** Such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:

  "Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Section **III** – Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

 © Insurance Services Office, Inc., 2008 **CG 25 04 05 09**

Bates No. 000160

# PORT AUTHORITY OF NEW YORK AND NEW JERSEY ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| The Brickman Group Ltd. LLC | 75 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| HDO | G24556876 001 | 10/01/2015 to 10/01/2016 | 10/01/2015 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following.

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM
EXCESS COMMERCIAL GENERAL LIABILITY POLICY
BUSINESS AUTO COVERAGE FORM
TRUCKERS COVERAGE FORM
EXCESS BUSINESS AUTO COVERAGE FORM
EXCESS TRUCKERS COVERAGE FORM**

We shall not, without obtaining express advance permission from the General Counsel of the Port Authority of New York and New Jersey, raise any defense involving in any way the jurisdiction of the tribunal over the person of the Port Authority, the immunity of the Port Authority, its commissioners, officers, agents or employees, the governmental nature of the Port Authority or the provisions of any statutes respecting suits against the Port Authority.

Authorized Agent

Bates No. 000161

POLICY NUMBER:  HDO G24556876 001                          Endorsement Number:  76

**COMMERCIAL GENERAL LIABILITY**
**CG 01 03 06 06**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** With regard to liability for Bodily Injury, Property Damage and Personal And Advertising Injury, unless we are prejudiced by the insured's or your failure to comply with the requirement, no provision of this Coverage Part requiring you or any insured to give notice of "occurrence", claim or "suit", or forward demands, notices, summonses or legal papers in connection with a claim or "suit" will bar coverage under this Coverage Part.

Bates No. 000162

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  77

**COMMERCIAL GENERAL LIABILITY**
**CG 01 04 12 04**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NEW YORK CHANGES – PREMIUM AUDIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **b.** of the **Premium Audit** Condition **Section IV** is replaced by the following:

**PREMIUM AUDIT**

    **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. An audit to determine the final premium due or to be refunded will be completed within 180 days after the expiration date of the policy. But the audit may be waived if the total annual premium attributable to the auditable exposure base is not reasonably expected to exceed $1500. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

**B.** Except as provided in Paragraph **A.** above, the **Examination Of Your Books And Records** Common Policy Condition continues to apply.

---

**CG 01 04 12 04**                    © ISO Properties, Inc., 2003                    **Page 1 of 1**

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  78

**COMMERCIAL GENERAL LIABILITY**


**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# KANSAS AND OKLAHOMA CHANGES – TRANSFER OF RIGHTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.


Condition 8. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (Section IV), does not apply to COVERAGE C. MEDICAL PAYMENTS.

Bates No. 000164

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  79

**COMMERCIAL GENERAL LIABILITY**
**CG 01 12 11 08**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NEW HAMPSHIRE CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **2.g. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**B.** The following paragraph is added to **Section II – Who Is An Insured**:

**4.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**C.** The definitions of "auto" and "mobile equipment" in the Definitions Section are replaced by the following:

**1.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**2.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

CG 01 12 11 08

© Insurance Services Office, Inc., 2008

Page 1 of 2

Bates No. 000165

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

 **(1)** Power cranes, shovels, loaders, diggers or drills; or

 **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

 **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

 **(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

 **(1)** Equipment designed primarily for:

  **(a)** Snow removal;

  **(b)** Road maintenance, but not construction or resurfacing; or

  **(c)** Street cleaning;

 **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

 **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

   © Insurance Services Office, Inc., 2008   CG 01 12 11 08

Bates No. 000166

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  80

**COMMERCIAL GENERAL LIABILITY**
**CG 01 22 12 07**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MINNESOTA CHANGES – CONTRACTUAL LIABILITY EXCLUSION AND SUPPLEMENTARY PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.b.** of **Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

   **2. Exclusions**

     This insurance does not apply to:

     **b. Contractual Liability**

       "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

       **(1)** That the insured would have in the absence of the contract or agreement; or

       **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

**B.** Section **I – Supplementary Payments – Coverages A And B** is replaced by the following:

   **1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

     **a.** All expenses we incur.

     **b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

     **c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

     **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

     **e.** All court costs taxed against the insured in the "suit". However, this coverage does not include attorneys' fees or attorneys' expenses taxed against the insured.

     **f.** Prejudgment interest awarded against the insured on that part of the judgment we pay.

     **g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

     These payments will not reduce the limits of insurance.

   **2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

     **a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

     **b.** This insurance applies to such liability assumed by the insured;

     **c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

© ISO Properties, Inc., 2006

Bates No. 000167

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

    **(1)** Agrees in writing to:

        **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

        **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

        **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

        **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

    **(2)** Provides us with written authorization to:

        **(a)** Obtain records and other information related to the "suit"; and

        **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

© ISO Properties, Inc., 2006

**CG 01 22 12 07**

Bates No. 000168

POLICY NUMBER: HDO G24556876 001                    Endorsement Number: 81

**COMMERCIAL GENERAL LIABILITY**
**CG 01 23 03 97**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES – POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Subparagraph **f., Pollution** of Paragraph **2., Exclusions** of **Bodily Injury And Property Damage Liability Coverage (Section I – Coverages)** and to Paragraph **2., Exclusions** of **Personal And Advertising Injury Liability Coverage (Section I – Coverages)** or to any amendment to or replacement thereof:

This Pollution Exclusion applies whether or not such irritant or contaminant has any function in your business, operations, premises, site or location.

Bates No. 000169

POLICY NUMBER: HDO G24556876 001                              Endorsement Number: 82

**COMMERCIAL GENERAL LIABILITY**
**CG 01 24 01 93**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WISCONSIN CHANGES – AMENDMENT OF POLICY CONDITIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**1.** The following is added to CHANGES (Common Policy Conditions):

If one of our agents knows of a fact that breaches a condition of this Coverage Part, we will be considered to have knowledge of this same fact if:

**a.** The agent knows of this fact at the time the Coverage Part is issued or an application is made; or

**b.** The agent later learns of this fact in the course of his dealings as an agent with you.

Any fact that breaches a condition of this Coverage Part and is known to the agent prior to loss shall not void the Coverage Part or prevent a recovery in the event of loss.

**2.** The LEGAL ACTION AGAINST US Condition (Section **IV**) does not apply.

**3.** The following is added to Condition **6.** REPRESENTATIONS (Section **IV**):

No misrepresentation or breach of affirmative warranty made by you or on your behalf in the negotiation of this Coverage Part affects our obligation under this Coverage Part unless:

**a.** We rely on it and it is either material or made with intent to deceive; or

**b.** The facts misrepresented or falsely warranted contribute to the loss.

No failure of a condition before the loss and no breach of a promissory warranty affects our obligation under this Coverage Part unless such failure or breach:

**a.** Exists at the time of the loss; and

**b.** Either increases the risk at the time of the loss or contributes to the loss.

The provisions of this condition do not apply to nonpayment of premium.

**4.** Condition **8.** TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (Section **IV**) is replaced by the following:

In the event of any payment under this Coverage Part, we will be entitled to the insured's rights of recovery against any person or organization and the insured will do whatever is necessary to secure such rights. We will be entitled to a recovery only after the insured has been fully compensated for damages.

**5.** **CONFORMITY TO STATUTE OR RULE**

Any provision of this policy (including endorsements which modify the policy) that is in conflict with a Wisconsin statute or rule is hereby amended to conform to that statute or rule.

The term rule means a valid rule promulgated by the Commissioner of Insurance in accordance with the rule-making authority conferred under Wis. Stat. Ann. Section 227.11(2) and published in the Wisconsin Administrative Code.

Bates No. 000170

POLICY NUMBER:  HDO G24556876 001                           Endorsement Number:  83

**COMMERCIAL GENERAL LIABILITY**
**CG 01 34 08 03**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MISSOURI CHANGES – POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Subparagraph **f., Pollution** of Paragraph **2., Exclusions** under **Section I – Coverage A – Bodily Injury And Property Damage Liability Coverage** and to Subparagraph **m., Pollution** of Paragraph **2., Exclusions** under **Section I – Coverage B – Personal And Advertising Injury Liability** or to any amendment to or replacement thereof:

This Pollution Exclusion applies even if such irritant or contaminant has a function in your business, operations, premises, site or location.

Bates No. 000171

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  84

**COMMERCIAL GENERAL LIABILITY**
**CG 01 60 07 98**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WYOMING CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following is added to Paragraph **1.a.(2)** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** and Section **I – Coverage B – Personal And Advertising Injury Liability:**

The tender of the limits of insurance before judgment or settlement does not relieve us of our duty to defend.

**B.** The following is added as the final full paragraph of Paragraph **1., Insuring Agreement** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** and Section **I – Coverage B – Personal And Advertising Injury Liability:**

Damages include prejudgment interest awarded against the insured.

**C.** Paragraph **1.f.** dealing with prejudgment interest in Section **I – Supplementary Payments – Coverages A And B** is deleted.

Bates No. 000172

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  85

**COMMERCIAL GENERAL LIABILITY**
**CG 01 63 07 11**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES –
# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **1. Insuring Agreement** of Section **I – Coverage A Bodily Injury And Property Damage Liability** is replaced by the following:

  **1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Section **III –** Limits Of Insurance; and

      **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

      **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II –** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II –** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II –** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

Bates No. 000173

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**B.** Paragraph **1.a.** of Section **I – Coverage B Personal And Advertising Injury Liability** is replaced by the following:

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III –** Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** and **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**C.** The following is added as Paragraph **e.** to the **Duties In The Event Of Occurrence, Offense, Claim Or Suit** Condition (Paragraph **2.** of **Section IV – Commercial General Liability Conditions**):

**e.** Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

**D.** Paragraph **3.** of **Section IV – Commercial General Liability Conditions** is replaced by the following:

**3. Legal Action Against Us**

**a.** Except as provided in Paragraph **b.,** no person or organization has a right under this Coverage Part:

**(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**(2)** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**b.** With respect to "bodily injury" and "personal and advertising injury" claims, if we deny coverage or do not admit liability because an insured or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

However, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an insured:

**(1)** Brings an action to declare the rights of the parties under the policy; and

**(2)** Names the injured person, someone acting for the injured person or other claimant as a party to the action.

Bates No. 000174

**E.** The following provision is added and supersedes any provision to the contrary:

Failure to give notice to us as required under this Coverage Part shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

**F.** The definition of "loading or unloading" in the **Definitions** Section does not apply.

Bates No. 000175

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  86

**COMMERCIAL GENERAL LIABILITY**
**CG 01 68 10 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MICHIGAN CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The paragraph relating to prejudgment interest in **Supplementary Payments,** Section **I,** is replaced by the following:

Prejudgment interest awarded against the insured on that part of the judgment we pay.

**B.** With respect to the **Duties** Condition, Section **IV:**

    **1.** Notice given by or on behalf of the insured to our authorized agent, with particulars sufficient to identify the insured, shall be considered notice to us.

    **2.** The last sentence of Paragraph **2.b.** is deleted.

    **3.** The reference to Paragraph **d.** is amended to read Paragraph **e.**

    **4.** The following is added:

        **d.** Failure to give any notice required by this condition within the time period specified shall not invalidate any claim made by you if it shall be shown not to have been reasonably possible to give notice within the prescribed time period and that notice was given as soon as was reasonably possible.

**CG 01 68 10 09**

© Insurance Services Office, Inc., 2009

**Page 1 of 1**

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  87

**COMMERCIAL GENERAL LIABILITY**
**CG 01 79 07 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **f.(1)(a)(i)** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

   **(i)** "Bodily injury" or "property damage" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

 © Insurance Services Office, Inc., 2010

Bates No. 000177

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  88

**COMMERCIAL GENERAL LIABILITY
CG 01 81 05 08**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WASHINGTON CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **e.** of Coverage **A** – Bodily Injury And Property Damage Liability (Section **I** – Coverages) applies only to "bodily injury" to any "employee" of the insured whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

With respect to "bodily injury" to "employees" of the insured whose employment is subject to the Industrial Insurance Act of Washington, Exclusion **e.** is replaced with the following:

This insurance does not apply to:

**1.** "Bodily injury" to an "employee" of the insured arising out of and in the course of:

    **a.** Employment by the insured; or

    **b.** Performing duties related to the conduct of the insured's business; or

**2.** Any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**B.** Paragraphs **2.a.(1)(a), (b)** and **(c)** of Section **II** – Who Is An Insured apply only to "employees" of the insured whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

With respect to "employees" of the insured whose employment is subject to the Industrial Insurance Act of Washington, the reference to "volunteer workers" is removed from Paragraph **2.(a)** of **Section II – Who Is An Insured** and Paragraph **2.a.(1)** of **Section II** is replaced with the following:

**2.** Each of the following is also an insured:

    **a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

        **(1)** "Bodily injury" or "personal and advertising injury":

            **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

            **(b)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** above; or

            **(c)** Arising out of his or her providing or failing to provide professional health care services.

**CG 01 81 05 08**

© ISO Properties, Inc., 2007

**Page 1 of 1**

POLICY NUMBER:  HDO G24556876 001                          Endorsement Number:  89

**COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WYOMING CHANGES – AMENDMENT OF YOUR RIGHT TO CLAIM AND OCCURRENCE INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM (CLAIMS MADE)
PRODUCTS/COMPLETED OPERATIONS COVERAGE FORM (CLAIMS MADE)

Condition 10. YOUR RIGHT TO CLAIM AND "OCCURRENCE" INFORMATION (SECTION IV) is replaced by the following:

We will provide the first Named Insured shown in the Declarations the following information relating to claims made Coverage Parts we have issued to you within thirty (30) days of receipt of your written request:

**a.** Information on claims closed within the preceding two years limited to the date and description of "occurrence" and amount of payments, if any;

**b.** Information on open claims limited to the date and description of "occurrence," amount of claim and amount of payment, if any;

**c.** Information on notices of "occurrence" limited to the date and description of "occurrence" and amount of claim; and

**d.** The total amount of reserve on open claims. However, this information will not include any reserve specifically applicable to or identifying any claim which is or may become subject to proceedings before state or federal courts.

The above information will not be provided more frequently than once in any twelve (12) month period.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured we make no representations or warranties to insureds, insurers or others to whom this information is furnished by or on behalf of any insured. Cancellation or nonrenewal will be effective even if we inadvertently provide inaccurate information.

CG 01 85 09 87                Copyright, Insurance Services Office, Inc.,  1987                **Page 1 of 1**

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  90

**COMMERCIAL GENERAL LIABILITY**
**CG 01 86 12 04**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# UTAH CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** Any Condition titled:

Duties In the Event of An Electronic Data Incident
Duties in the Event of Occurrence, Offense, Claim or Suit
Duties in the Event of Occurrence, Claim or Suit
Duties in the Event of Injury, Claim or Suit
Duties in the Event of A Pollution Incident, Claim or Suit
Duties In the Event of A Claim Or Suit Or A Defect Or Product Withdrawal
Insured's Duties in the Event of a Loss
Duties in the Event of An Underground Storage Tank Incident

requiring notice to us is amended to include:

"Notice to our authorized representative is notice to us".

**B.** The **Legal Action Against Us** Condition does not apply.

**CG 01 86 12 04**                    © ISO Properties, Inc., 2003                    **Page 1 of 1**

POLICY NUMBER:  HDO G24556876 001                                Endorsement Number:  91

**COMMERCIAL GENERAL LIABILITY**
**CG 01 99 10 93**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (CLAIMS-MADE VERSION)

Condition **10,** YOUR RIGHT TO CLAIM AND "OCCURRENCE" INFORMATION (SECTION **IV**) is replaced by the following:

**10. Your Right To Claim And Occurrence Information**

**a.** Subject to paragraph **e.** below, we will provide the first Named Insured shown in the Declarations, within thirty (30) days of the insured's written request or at the same time as any notice of cancellation or nonrenewal, the following claim and "occurrence" information relating to claims-made Coverage Parts we have issued to you within the last three years:

**(1)** Information concerning closed claims limited to the date and description of "occurrence" and total amount of payments, if any;

**(2)** Information concerning open claims limited to the date and description of "occurrence", total amount of payments and total reserves, if any; and

**(3)** Information concerning "occurrences" not included in subparagraphs **(1)** and **(2)** above limited to the date and description of "occurrence" and total reserves, if any.

**b.** Subject to paragraph **e.** below, we will provide the first Named Insured shown in the Declarations, within twenty (20) days after receipt of written request by the Named Insured, detailed claim and "occurrence" information in addition to that provided under paragraph **a.** above and including specific reserve amounts.

**c.** Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

**d.** We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured we make no representations or warranties to insureds, insurers or others to whom this information is furnished by or on behalf of any insured. Cancellation or nonrenewal will be effective even if we inadvertently provide inaccurate information.

**e.** We will not provide the information included in paragraphs **a.** and **b.** above, if this policy has been cancelled for nonpayment of premium, material misrepresentations or fraud on the part of the insured.

**CG 01 99 10 93**          Copyright, Insurance Services Office, Inc.,  1992          **Page 1 of 1**

Bates No. 000181

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  92

**COMMERCIAL GENERAL LIABILITY**
**CG 02 00 12 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CANCELLATION
# AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

**A. Cancellation** (Common Policy Conditions) is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. We may cancel this policy by mailing to you written notice stating the reason for cancellation. If we cancel:

   **a.** For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   **b.** For a reason other than nonpayment of premium, we will mail the notice at least:

      **(1)** 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

      **(2)** 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** The policy was obtained through a material misrepresentation;

   **c.** Any insured has violated any of the terms and conditions of the policy;

   **d.** The risk originally accepted has measurably increased;

   **e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   **f.** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

If we decide not to renew or continue this policy, we will mail you and your agent or broker written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**C. Mailing Of Notices**

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

CG 02 00 12 07                              © ISO Properties, Inc., 2006                              Page 1 of 1

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  93

**COMMERCIAL GENERAL LIABILITY**
**CG 02 01 10 09**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MARYLAND CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2.** When this policy has been in effect for 45 days or less and is not a renewal policy, we may cancel this Coverage Part by mailing to the first Named Insured, at the last mailing address known to us, written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

**b.** 15 days before the effective date of cancellation if we cancel because the risk does not meet our underwriting standards.

**3.** When this policy has been in effect for more than 45 days or is a renewal policy, we may cancel this policy by mailing to the first Named Insured, at the last mailing address known to us, written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

**b.** 45 days before the effective date of cancellation if we cancel for a permissible reason other than nonpayment of premium, stating the reason for cancellation. Under this Paragraph **b.**, we may cancel only for one or more of the following reasons:

**(1)** When there exists material misrepresentation or fraud in connection with the application, policy, or presentation of a claim.

**(2)** A change in the condition of the risk that results in an increase in the hazard insured against.

**(3)** A matter or issue related to the risk that constitutes a threat to public safety.

If we cancel pursuant to Paragraph **3.b.,** you may request additional information on the reason for cancellation within 30 days from the date of our notice.

**B.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be calculated as follows:

**a. Policies Written For One Year Or Less**

We will refund 90% of the pro rata unearned premium.

**b. Policies Written For More Than One Year**

**(1)** If the policy is cancelled in the first year, we will refund 90% of the pro rata unearned premium for the first year, plus the full annual premium for subsequent years.

**(2)** If the policy is cancelled after the first year, we will refund the pro rata unearned premium.

**c. Continuous And Annual Premium Payment Policies**

We will refund 90% of the pro rata unearned premium for the year in which the policy is cancelled.

We will retain the minimum premium, except if the policy is cancelled as of the inception date.

© Insurance Services Office, Inc., 2009

Bates No. 000183

However, if this policy is financed by a premium finance company and we or the premium finance company or the first Named Insured cancels the policy, the refund will consist of the gross unearned premium computed pro rata, excluding any expense constant, administrative fee or nonrefundable charge filed with and approved by the insurance commissioner.

The cancellation will be effective even if we have not made or offered a refund.

**C.** Paragraph **6.** of the **Cancellation** Common Policy Condition is replaced by the following:

We will send notice of cancellation to the first Named Insured by certificate of mail if:

    **a.** We cancel for nonpayment of premium; or

    **b.** This policy is not a renewal of a policy we issued and has been in effect for 45 days or less.

We will send notice to the first Named Insured by certificate of mail or by commercial mail delivery service if we cancel for a reason other than nonpayment of premium and this policy:

    **a.** Is a renewal of a policy we issued; or

    **b.** Has been in effect for more than 45 days.

We will maintain proof of mailing in a form authorized or accepted by the United States Postal Service or by other commercial mail delivery service when such service is used. Proof of mailing will be sufficient proof of notice.

**D.** The following condition is added and supersedes any provisions to the contrary:

**When We Do Not Renew**

    **1.** We may elect not to renew this policy by mailing notice of nonrenewal to the first Named Insured at the last mailing address known to us at least 45 days before the expiration date of this policy.

    **2.** We will send notice of nonrenewal to the first Named Insured by certificate of mail or by commercial mail delivery service. We will maintain proof of mailing in a form authorized or accepted by the United States Postal Service or by other commercial mail delivery service when such service is used. Proof of mailing will be sufficient proof of notice.

    **3.** When we elect not to renew a policy that has been in effect for more than 45 days for a reason other than nonpayment of premium, we will provide a written statement of the actual reason for the refusal to renew. You may request additional information within 30 days from the date of our notice.

    **4.** If we offer to renew at least 45 days before the renewal date and you fail to make the required premium payment by the renewal date, the policy will terminate on the renewal date for nonpayment of premium.

© Insurance Services Office, Inc., 2009

CG 02 01 10 09

Bates No. 000184

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  94

**COMMERCIAL GENERAL LIABILITY
CG 02 20 03 12**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Of Policies In Effect**

**a. For 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for   nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresent-ation; or

**(b)** A failure to comply with the underwriting requirements established by the insurer.

**b. For More Than 90 Days**

If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** The policy was obtained by a material misstatement;

**(3)** Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

**(4)** A substantial change in the risk covered by the policy; or

**(5)** The cancellation is for all insureds under such policies for a given class of insureds.

If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph **2.b.**

**B.** Paragraph **3.** of the **Cancellation** Common Policy Condition is replaced by the following:

**3.** We will mail or deliver our notice to the first Named Insured at the last mailing address known to us.

Bates No. 000185

**C.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

**D.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

**1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

© Insurance Services Office, Inc., 2011

CG 02 20 03 12

Bates No. 000186

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  95

COMMERCIAL GENERAL LIABILITY
CG 26 05 02 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINNESOTA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. The Examination Of Your Books And Records** Common Policy Condition is replaced by the following:

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to one year afterward.

**B.** Paragraph **1. Bankruptcy** under **Section IV – Commercial General Liability Conditions** is replaced by the following:

**1. Bankruptcy**

Bankruptcy, insolvency or dissolution of the insured or of the insured's estate will not relieve us of our obligation under this Cover–age Part, and in case an execution against the insured on a final judgment is returned unsatisfied, then such judgment creditor shall have a right of action on this Coverage Part against the company to the same extent that the insured would have, had the insured paid the final judgment.

**C.** The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** Condition under **Section IV– Commercial General Liability Conditions:**

Our rights do not apply against any person or organization insured, under this or any other Coverage Part we issue, with respect to the same "occurrence".

**CG 26 05 02 07**                     © ISO Properties, Inc., 2006                     **Page 1 of 1**

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  96

**COMMERCIAL GENERAL LIABILITY**
**CG 26 20 10 93**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES – LOSS INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART ("OCCURRENCE" VERSION)

The following Condition is added TO COMMERCIAL GENERAL LIABILITY CONDITIONS (Section **IV**):

**10. Your Right to Loss Information**

We will provide the first Named Insured shown in the Declarations the following loss information relating to this and any preceding general liability Coverage Part we have issued to you during the previous three years:

**a.** A list or other record of each "occurrence" of which we were notified in accordance with paragraph **2.a.** of the Duties in the Event of Occurrence, Offense, Claim or Suit Condition in this Section. We will include a brief description of the "occurrence" and information on whether any claim arising out of the "occurrence" is open or closed.

**b.** A summary by policy year, of payments made and amounts reserved, stated separately under any applicable General Aggregate Limit and Products-Completed Operations Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

We will provide this information only if we receive a written request from the first Named Insured during the policy period. We will provide this information within 45 days of receipt of the request.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers or others to whom this information is furnished by or on behalf of any insured.

Bates No. 000188

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  97

**COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – TRANSFER OF DUTIES WHEN A LIMIT OF INSURANCE IS USED UP

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following Condition is added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

**Transfer of Duties When a Limit of Insurance Is Used Up.**

**a.** If we conclude that, based on "occurrences," offenses, claims or "suits" which have been reported to us and to which this insurance may apply, the:

**(1)** General Aggregate Limit (other than the Products/Completed Operations Aggregate Limit);

**(2)** Products/Completed Operations Aggregate Limit;

**(3)** Personal and Advertising Injury Limit;

**(4)** Each Occurrence Limit; or

**(5)** Fire Damage Limit

is likely to be used up in the payment of judgments or settlements, we will notify the first Named Insured, in writing, to that effect.

**b.** When a limit of insurance described in paragraph **a.** above has actually been used up in the payment of judgments or settlements:

**(1)** We will notify the first Named Insured, in writing, as soon as practicable, that:

**(a)** Such a limit has actually been used up; and

**(b)** Our duty to defend "suits" seeking damages subject to that limit has also ended.

**(2)** We will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all claims and "suits" seeking damages which are subject to that limit and which are reported to us before that limit is used up. That insured must cooperate in the transfer of control of said claims and "suits".

We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

We will take no action whatsoever with respect to any claim or "suit" seeking damages that would have been subject to that limit, had it not been used up, if the claim or "suit" is reported to us after that limit of insurance has been used up.

**(3)** The first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

**c.** The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with paragraph **b.(2)** above.

The duty of the first Named Insured to reimburse us will begin on:

**(1)** The date on which the applicable limit of insurance is used up, if we sent notice in accordance with paragraph **a.** above; or

**(2)** The date on which we sent notice in accordance with paragraph **b.(1)** above, if we did not send notice in accordance with paragraph **a.** above.

**d.** The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

**CG 26 21 10 91**              Copyright, Insurance Services Office, Inc., 1991              **Page 1 of 1**

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  98

**COMMERCIAL GENERAL LIABILITY**
**CG 26 28 08 93**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MINNESOTA CHANGES – LOSS INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM (CLAIMS-MADE VERSION)

Condition **10.** Your Right to Claim and "Occurrence" Information of COMMERCIAL GENERAL LIABILITY CONDITIONS (Section **IV**) is replaced by the following:

**10. Your Right to Claim and "Occurrence" Information**

We will provide the first Named Insured shown in the Declarations the following information relating to this and any preceding general liability claims-made Coverage Part we have issued to you during the previous three years:

**a.** A list or other record of each "occurrence", not previously reported to any other insurer, of which we were notified in accordance with paragraph **2.a.** of this Section. We will include the date and brief description of the "occurrence" if that information was in the notice we received.

**b.** A summary by policy year, of payments made and amounts reserved, stated separately, under any applicable General Aggregate Limit and Products-Completed Operations Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

If we cancel or elect not to renew this Coverage Part, we will provide such information no later than 30 days before the date of policy termination. In other circumstances, we will provide this information without cost only if we receive a request from the first Named Insured. In this case, we will provide this information within 30 days of receipt of the request. We will not provide this information without cost more than once in a 12 month period.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or nonrenewal will be effective even if we inadvertently provide inaccurate information.

**CG 26 28 08 93**            Copyright, Insurance Services Office, Inc.,  1993            **Page 1 of 1**

Bates No. 000190

POLICY NUMBER:  HDO G24556876 001                                  Endorsement Number:  99

**COMMERCIAL GENERAL LIABILITY**
**CG 26 50 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MISSOURI CHANGES – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **1.a.** of **Coverage C – Medical Payments** is replaced by the following:

**1. Insuring Agreement**

  **a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

    **(1)** On premises you own or rent;

    **(2)** On ways next to premises you own or rent; or

    **(3)** Because of your operations;

    provided that:

      **(a)** The accident takes place in the "coverage territory" and during the policy period;

      **(b)** The expenses are incurred and reported to us within one year of the date of the accident. However, expenses reported to us after one year of the date of the accident will not be denied solely because of the late submission unless such late submission operates to prejudice our rights; and

      **(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

Bates No. 000191

POLICY NUMBER:  HDO G24556876 001                          Endorsement Number:  100

**COMMERCIAL GENERAL LIABILITY**
**CG 26 55 11 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW HAMPSHIRE CHANGES – AMENDMENT OF REPRESENTATIONS CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The **Representations** Condition is replaced by the following:

**REPRESENTATIONS**

**1.** You represent that all information and statements contained in the Declarations are true, accurate and complete. All such information and statements are the basis for our issuing this policy.

**2.** Any intentional:

  **a.** Misrepresentation;

  **b.** Omission;

  **c.** Concealment; or

  **d.** Misstatement of a material fact;

in the Declarations or otherwise, which relates to a particular claim, shall be grounds to deny coverage.

**CG 26 55 11 08**            © Insurance Services Office, Inc., 2008            **Page 1 of 1**

Bates No. 000192

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  101

**COMMERCIAL GENERAL LIABILITY**
**CG 26 73 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MARYLAND CHANGES – PREMIUM AUDIT CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

Paragraph **b.** of the **Premium Audit Condition Section IV** is replaced by the following:

**Premium Audit**

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is 30 days from the date of the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**CG 26 73 12 04**

© ISO Properties, Inc., 2003

**Page 1 of 1**

POLICY NUMBER:  HDO G24556876 001                                          Endorsement Number:  102

**COMMERCIAL GENERAL LIABILITY**
**CG 26 81 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINNESOTA CHANGES – DUTIES CONDITION

This endorsement modifies insurance provided under the following:

      COMMERCIAL GENERAL LIABILITY COVERAGE PART
      ELECTRONIC DATA LIABILITY COVERAGE PART
      EMPLOYEE BENEFITS LIABILITY COVERAGE **CG 04 35**
      LIMITED PRODUCT WITHDRAWAL EXPENSE ENDORSEMENT **CG 04 36**
      LIQUOR LIABILITY COVERAGE PART
      OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
      PERSONAL INJURY LIABILITY ENDORSEMENT **CG 28 05**
      POLLUTION LIABILITY COVERAGE PART
      PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
      PRODUCT WITHDRAWAL COVERAGE PART
      RAILROAD PROTECTIVE LIABILITY COVERAGE PART
      UNDERGROUND STORAGE TANK POLICY

The following is added to the Duties Condition:

The requirement to notify us can be satisfied by notifying our agent. Notice can be by any means of communication.

**CG 26 81 12 04**                                  © ISO Properties, Inc., 2003                                  **Page 1 of 1**

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  103

**COMMERCIAL GENERAL LIABILITY
CG 27 12 04 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NORTH CAROLINA CHANGES –
# EXTENDED REPORTING PERIOD

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (CLAIMS-MADE VERSION)

**A.** Paragraph **6.** of **Section V – Extended Reporting Periods** is replaced by the following:

  **6.** If the Supplemental Extended Reporting Period is in effect, we will provide the supplemental aggregate limits of insurance described below, but only for claims first received and recorded during the Supplemental Extended Reporting Period.

  The supplemental aggregate limits of insurance will be equal, respectively, to the General Aggregate Limit and the Products-Completed Operations Aggregate Limit, if any, entered on the Declarations in effect at the inception of the policy period of the policy to which the Extended Reporting Period endorsement is attached.

**B.** Paragraphs **2.** and **3.** of **Section III – Limits Of Insurance** will be amended accordingly. The Personal And Advertising Injury Limit, the Each Occurrence Limit and the Damage To Premises Rented To You Limit shown in the Declarations will then continue to apply, as set forth in Paragraphs **4.**, **5.** and **6.** of that section.

**CG 27 12 04 13**              © Insurance Services Office, Inc., 2012              **Page 1 of 1**

POLICY NUMBER:  HDO G24556876 001                              Endorsement Number:  104

**COMMERCIAL GENERAL LIABILITY**
**CG 32 34 01 05**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

      COMMERCIAL GENERAL LIABILITY COVERAGE PART
      ELECTRONIC DATA LIABILITY COVERAGE PART
      LIQUOR LIABILITY COVERAGE PART
      OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
      POLLUTION LIABILITY COVERAGE PART
      PRODUCT WITHDRAWAL COVERAGE PART
      PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
      UNDERGROUND STORAGE TANK POLICY

The term "spouse" is replaced by the following:

Spouse or registered domestic partner under California law.

Bates No. 000196

POLICY NUMBER:  HDO G24556876 001                                Endorsement Number:  105

IL 01 14 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WYOMING CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDER'S ERRORS AND OMISSIONS
COVERAGE FORM
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

1. Section **I** of the Commercial General Liability, Commercial Liability Umbrella, Electronic Data Liability, Employment-related Practices Liability, Farm, Liquor Liability, Owners And Contractors Protective Liability, Pollution Liability, Products/Completed Operations Liability, Product Withdrawal, Medical Professional Liability, Railroad Protective Liability and Underground Storage Tank Coverage Parts, Auto Dealers Coverage Form and the Farm Umbrella Liability Policy;

2. Section **II** under the Auto Dealers, Business Auto and Motor Carrier Coverage Forms;

3. Section **III** under the Auto Dealers and Motor Carrier Coverage Forms;

4. Section **A.** Coverage under the Legal Liability Coverage Form; and

5. Coverage **C** – Mortgageholder's Liability under the Mortgageholder's Errors And Omissions Coverage Form.

Paragraph **B.** also applies to any other provision in the policy that sets forth a duty to defend.

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims, for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

              © Insurance Services Office, Inc., 2013

Bates No. 000197

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  106

**IL 01 20 10 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDER'S ERRORS AND OMISSIONS
COVERAGE FORM
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

  **1.** Section **I** of the Commercial General Liability, Commercial Liability Umbrella, Electronic Data Liability, Employment-related Practices Liability, Farm, Liquor Liability, Medical Professional Liability, Owners And Contractors Protective Liability, Pollution Liability, Product Withdrawal, Products/Completed Operations Liability, Railroad Protective Liability and Underground Storage Tank Coverage Parts, Auto Dealers Coverage Form and the Farm Umbrella Liability Policy;

  **2.** Section **II** under the Auto Dealers, Business Auto and Motor Carrier Coverage Forms;

  **3.** Section **III** under the Auto Dealers and Motor Carrier Coverage Forms;

  **4.** Section **A.** Coverage under the Legal Liability Coverage Form; and

  **5.** Coverage **C** – Mortgageholder's Liability under the Mortgageholder's Errors And Omissions Coverage Form.

  Paragraph **B.** also applies to any other provision in the policy that sets forth a duty to defend.

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

  The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

Bates No. 000198

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  107

**IL 01 23 11 13**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WASHINGTON CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDER'S ERRORS AND OMISSIONS
COVERAGE FORM
ELECTRONIC DATA LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

   **1.** Section **I** of the Commercial General Liability, Commercial Liability Umbrella, Electronic Data Liability, Farm, Liquor Liability, Owners And Contractors Protective Liability, Pollution Liability, Products/Completed Operations Liability, Product Withdrawal, Medical Professional Liability, Railroad Protective Liability and Underground Storage Tank Coverage Parts, Auto Dealers Coverage Form and the Farm Umbrella Liability Policy;

   **2.** Section **II** under the Auto Dealers, Business Auto and Motor Carrier Coverage Forms;

   **3.** Section **III** under the Auto Dealers and Motor Carrier Coverage Forms;

   **4.** Section **A.** Coverage under the Legal Liability Coverage Form; and

   **5.** Coverage **C** – Mortgageholder's Liability under the Mortgageholder's Errors And Omissions Coverage Form.

Paragraph **B.** also applies to any other provision in the policy that sets forth a duty to defend.

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we may have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

Bates No. 000199

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  108

**IL 01 25 11 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COLORADO CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Colorado law.

**B.** Under the Commercial Automobile Coverage Part, the term "family member" is replaced by the following and supersedes any other provisions to the contrary:

"Family member" means a person related to:

**1.** The individual Named Insured by blood, adoption, marriage or civil union recognized under Colorado law, who is a resident of such Named Insured's household, including a ward or foster child;

**2.** The individual named in the Schedule by blood, adoption, marriage or civil union recognized under Colorado law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individuals endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Colorado law, who is a resident of your household, including a ward or foster child.

Bates No. 000200

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  109

**IL 02 58 01 12**

# ARIZONA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following is added to the **Cancellation** Common Policy Condition (and applies except in situations where **B.,** below, applies):

**7. Cancellation Of Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** Your conviction of a crime arising out of acts increasing the hazard insured against;

**c.** Acts or omissions by you or your representative constituting fraud or material misrepresentation in the procurement of this policy, in continuing this policy or in presenting a claim under this policy;

**d.** Substantial change in the risk assumed, except to the extent that we should have reasonably foreseen the change or contemplated the risk in writing the contract;

**e.** Substantial breach of contractual duties or conditions;

**f.** Loss of reinsurance applicable to the risk insured against resulting from termination of treaty or facultative reinsurance initiated by our reinsurer or reinsurers;

**g.** Determination by the Director of Insurance that the continuation of the policy would place us in violation of the insurance laws of this state or would jeopardize our solvency; or

**h.** Acts or omissions by you or your representative which materially increase the hazard insured against.

If we cancel this policy based on one or more of the above reasons, we will mail by certified mail to the first Named Insured, and mail to the agent, if any, written notice of cancellation stating the reason(s) for cancellation. We will mail this notice to the last mailing addresses known to us, at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 45 days before the effective date of cancellation if we cancel for any of the other reasons.

Bates No. 000201

**B.** If the Commercial Property Coverage Part, Capital Assets Program (Output Policy) Coverage Part or the Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form provides coverage for:

**1.** Real property which is used predominantly for residential purposes and consists of one through four dwelling units; and/or

**2.** Personal property (except business or farm personal property) of a person residing in such real property;

the following provisions apply (instead of those provided in Item **A.** above) with respect to cancellation of such coverage:

If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

  **a.** Nonpayment of premium;

  **b.** Your conviction of a crime arising out of acts increasing the hazard insured against;

  **c.** Acts or omissions by you or your representative constituting fraud or material misrepresentation in obtaining the policy, continuing the policy or presenting a claim under the policy;

  **d.** Discovery of grossly negligent acts or omissions by you substantially increasing any of the hazards insured against;

  **e.** Substantial change in the risk assumed by us, since the policy was issued, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

  **f.** A determination by the Director of Insurance that the continuation of the policy would place us in violation of the insurance laws of this state; or

  **g.** Your failure to take reasonable steps to eliminate or reduce any conditions in or on the insured premises which contributed to a loss in the past or will increase the probability of future losses.

If we cancel this policy based on one or more of these reasons, we will mail written notice of cancellation, stating the reason(s) for cancellation, to the first Named Insured. We will mail this notice to the last mailing address known to us, at least:

  **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

  **(2)** 30 days before the effective date of cancellation, if we cancel for any of the other reasons.

**C.** The following is added and supersedes any provision to the contrary (and applies except in situations where **D.,** below, applies):

**Nonrenewal**

**1.** If we elect not to renew this policy, we will mail by certified mail to the first Named Insured, and mail to the agent, if any, written notice of nonrenewal. We will mail this notice to the last mailing addresses known to us at least 45 days prior to the expiration of this policy.

**2.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**3.** If either one of the following occurs, we are not required to provide written notice of nonrenewal:

  **a.** We or a company within the same insurance group has offered to issue a renewal policy; or

  **b.** You have obtained replacement coverage or agreed in writing to do so.

**4.** If written notice of nonrenewal is mailed less than 45 days prior to expiration of this policy, and neither **3.a.** or **3.b.** applies, the coverage shall remain in effect until 45 days after the notice is mailed. Earned premium for any period of coverage that extends beyond the expiration date of this policy shall be considered pro rata based upon the previous year's rate.

**D.** If the Commercial Property Coverage Part, Capital Assets Program (Output Policy) Coverage Part or the Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form provides coverage for:

**1.** Real property which is used predominantly for residential purposes and consists of one through four dwelling units; and/or

**2.** Personal property (except business or farm personal property) of a person residing in such real property;

the following provisions apply (instead of those provided in Item **C.** above) with respect to nonrenewal of such coverage:

**1.** If we elect not to renew, we will mail written notice of nonrenewal to the first Named Insured. We will mail this notice to the last mailing address known to us, at least 30 days before the end of the policy period. Proof of mailing will be sufficient proof of notice.

**2.** If either one of the following occurs, we are not required to provide notice of nonrenewal:

  **a.** You have agreed to nonrenewal; or

  **b.** You have accepted replacement coverage.

 © Insurance Services Office, Inc., 2011 **IL 02 58 01 12**

Bates No. 000202

3. If our nonrenewal is based on the condition of the premises, you will be given 30 days' notice to remedy the identified conditions. If the identified conditions are remedied, coverage will be renewed. If the identified conditions are not remedied to our satisfaction, you will be given an additional 30 days, upon payment of premium, to correct the defective conditions.

**E.** The following condition is added:

**Renewal**

1. If we elect to renew this policy and the renewal is subject to any of the following:

   **a.** Increase in premium;

   **b.** Change in deductible;

   **c.** Reduction in limits of insurance; or

   **d.** Substantial reduction in coverage;

   we will mail or deliver written notice of the change(s) to the first Named Insured, at the last mailing address known to us, at least 30 days before the anniversary or expiration date of the policy.

2. If renewal is subject to any condition described in **1.a.** through **1.d.** above, and we fail to provide notice 30 days before the anniversary or expiration date of this policy, the following procedures apply:

   **a.** The present policy will remain in effect until the earlier of the following:

      **(1)** 30 days after the date of mailing or delivery of the notice; or

      **(2)** The effective date of replacement coverage obtained by the first Named Insured.

   **b.** If the first Named Insured elects not to renew, any earned premium for the period of extension of the terminated policy will be calculated pro rata at the lower of the following rates:

      **(1)** The rates applicable to the terminated policy; or

      **(2)** The rates presently in effect.

   **c.** If the first Named Insured accepts the renewal, the premium increase, if any, and other changes are effective the day following this policy's anniversary or expiration date.

Bates No. 000203

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  110

**IL 02 61 09 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# KANSAS CHANGES – CANCELLATION
# AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.a.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b.** If this policy has been in effect for 90 days or more, or if it is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** This policy was issued because of material misrepresentation;

**(3)** You or any other insured violated any of the material terms and conditions of this policy;

**(4)** Unfavorable underwriting factors, specific to you, exist that were not present at the inception of this policy;

**(5)** A determination by the insurance commissioner that continuation of coverage could place us in a hazardous financial condition or in violation of the laws of Kansas; or

**(6)** A determination by the insurance commissioner that we no longer have adequate reinsurance to meet our needs.

**B.** The following is added and supersedes any condition to the contrary:

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured at least 60 days prior to the expiration of the policy.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006

Bates No. 000204

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  111

**IL 02 68 01 14**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NEW YORK CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **1., 2., 3.** and **5.** of the **Cancellation** Common Policy Condition are replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this entire policy by mailing or delivering to us advance written notice of cancellation.

**2. Cancellation Of Policies In Effect**

**a. 60 Days Or Less**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 30 days before the effective date of cancellation if we cancel for any reason not included in Paragraph **A.2.b.** below.

**(2)** 15 days before the effective date of cancellation if we cancel for any of the reasons included in Paragraph **A.2.b.** below.

**b. For More Than 60 Days**

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel only for any of the reasons listed below, provided we mail the first Named Insured written notice at least 15 days before the effective date of cancellation:

**(1)** Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

**(2)** Conviction of a crime arising out of acts increasing the hazard insured against;

**(3)** Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim;

**(4)** After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current policy period;

**(5)** Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, which results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

**(6)** Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

**(7)** A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code; or

**(8)** Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If we cancel for this reason, you may make a written request to the Department of Financial Services, within 10 days of receipt of this notice, to review our cancellation decision. Also, we will simultaneously send a copy of this cancellation notice to the Department of Financial Services.

**3.** We will mail or deliver our notice, including the reason for cancellation, to the first Named Insured at the address shown in the policy and to the authorized agent or broker.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7.** If one of the reasons for cancellation in Paragraph **A.2.b.** or **D.2.b.(2)** exists, we may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

**C.** The following conditions are added:

**1. Nonrenewal**

If we decide not to renew this policy we will send notice as provided in Paragraph **C.3.** below.

**2. Conditional Renewal**

If we conditionally renew this policy subject to:

**a.** A change of limits;

**b.** A change in type of coverage;

**c.** A reduction of coverage;

**d.** An increased deductible;

**e.** An addition of exclusion; or

**f.** Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

we will send notice as provided in Paragraph **C.3.** below.

**3. Notices Of Nonrenewal And Conditional Renewal**

**a.** If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs **C.1.** and **C.2.** above, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 60 but not more than 120 days before:

**(1)** The expiration date; or

**(2)** The anniversary date if this is a continuous policy.

**b.** Notice will be mailed or delivered to the first Named Insured at the address shown in the policy and to the authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

**c.** Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

**d.** If we violate any of the provisions of Paragraph **C.3.a., b.** or **c.** above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

**(1)** And if notice is provided prior to the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60-day period, has replaced the coverage or elects to cancel;

 © Insurance Services Office, Inc.,  2013 IL 02 68 01 14

Bates No. 000206

**(2)** And if the notice is provided on or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

**e.** If you elect to renew on the basis of a late conditional renewal notice, the terms, conditions and rates set forth in such notice shall apply:

**(1)** Upon expiration of the 60-day period, unless Subparagraph **(2)** below applies; or

**(2)** Notwithstanding the provisions in Paragraphs **d.(1)** and **d.(2)**, as of the renewal date of the policy if the conditional renewal notice was sent at least 30 days prior to the expiration or anniversary date of the policy.

**f.** We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or is no longer desired.

**D.** The following provisions apply when the Commercial Property Coverage Part, the Farm Coverage Part or the Capital Assets Program (Output Policy) Coverage Part is made a part of this policy:

**1.** Items **D.2.** and **D.3.** apply if this policy meets the following conditions:

**a.** The policy is issued or issued for delivery in New York State covering property located in this state; and

**b.** The policy insures:

**(1)** For loss of or damage to structures, other than hotels or motels, used predominantly for residential purposes and consisting of no more than four dwelling units; or

**(2)** For loss of or damage to personal property other than farm personal property or business property; or

**(3)** Against damages arising from liability for loss of, damage to or injury to persons or property, except liability arising from business or farming; and

**c.** The portion of the annual premium attributable to the property and contingencies described in 1.b. exceeds the portion applicable to other property and contingencies.

**2.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Procedure And Reasons For Cancellation**

**a.** We may cancel this entire policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b.** But if this policy:

**(1)** Has been in effect for more than 60 days; or

**(2)** Is a renewal of a policy we issued;

we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

**(2)** Conviction of a crime arising out of acts increasing the risk of loss;

**(3)** Discovery of fraud or material misrepresentation in obtaining the policy or in making a claim;

**(4)** Discovery of willful or reckless acts or omissions increasing the risk of loss;

**(5)** Physical changes in the covered property that make that property uninsurable in accordance with our objective and uniformly applied underwriting standards in effect when we:

**(a)** Issued the policy; or

**(b)** Last voluntarily renewed the policy;

Bates No. 000207

**(6)** The Superintendent of Financial Services' determination that continuing the policy would violate Chapter 28 of the Insurance Law; or

**(7)** Required pursuant to a determination by the Superintendent of Financial Services that the continuation of our present premium volume would be hazardous to the interests of our policyholders, our creditors or the public.

**3.** The following are added:

**a. Conditional Continuation**

Instead of cancelling this policy, we may continue it on the condition that:

**(1)** The policy limits are changed; or

**(2)** Any coverage not required by law be eliminated.

If this policy is conditionally continued, we will mail or deliver to the first Named Insured written notice at least 20 days before the effective date of the change or elimination. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**b. Nonrenewal**

If, as allowed by the laws of New York State, we:

**(1)** Do not renew this policy; or

**(2)** Condition policy renewal upon:

**(a)** Change of limits; or

**(b)** Elimination of coverage;

we will mail or deliver written notice of nonrenewal or conditional renewal:

**(a)** At least 45 days; but

**(b)** Not more than 60 days;

before the expiration date of the policy. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**E.** The following is added to the Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions, the Commercial Property Coverage Part and the Capital Assets Program (Output Policy) Coverage Part:

When the property is subject to the Anti-arson Application in accordance with New York Department of Financial Services' Insurance Regulation No. 96, the following provisions are added:

If you fail to return the completed, signed and affirmed anti-arson application to us:

**1.** Or our broker or agent within 45 days of the effective date of a new policy, we will cancel the entire policy by giving 20 days' written notice to you and to the mortgageholder shown in the Declarations.

**2.** Before the expiration date of any policy, we will cancel the policy by giving written notice to you and to the mortgageholder shown in the Declarations at least 15 days before the effective date of cancellation.

The cancellation provisions set forth in **E.1.** and **E.2.** above supersede any contrary provisions in this policy including this endorsement.

If the notice in **E.1.** or **E.2.** above is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**F.** The following applies to the Commercial Property Coverage Part, the Farm Coverage Part and the Capital Assets Program (Output Policy) Coverage Part:

Paragraphs **f.** and **g.** of the **Mortgageholders** Condition are replaced by the following:

**f. Cancellation**

**(1)** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(a)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(b)** 30 days before the effective date of cancellation if we cancel for any other reason.

Bates No. 000208

**(2)** If you cancel this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, cancellation will become effective on the later of:

    **(a)** The effective date of cancellation of the insured's coverage; or

    **(b)** 10 days after we give notice to the mortgageholder.

**g. Nonrenewal**

    **(1)** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

    **(2)** If you elect not to renew this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, nonrenewal will become effective on the later of:

        **(a)** The expiration date of the policy; or

        **(b)** 10 days after we give notice to the mortgageholder.

**G.** The following provisions apply when the following are made a part of this policy:

Commercial General Liability Coverage Part

Employment-Related Practices Liability Coverage Part

Farm Liability Coverage Form

Liquor Liability Coverage Part

Products/Completed Operations Liability Coverage Part

**1.** The aggregate limits of this policy as shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Paragraph **C.3.d.** above.

**2.** The last sentence of Limits Of Insurance does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

Bates No. 000209

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  112

**IL 02 73 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# RHODE ISLAND CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99**, the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** With respect to the:

Capital Assets Program (Output Policy) Coverage Part

Commercial Inland Marine Coverage Part

Commercial Property Coverage Part

Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions

Farm – Livestock Coverage Form

Farm – Mobile Agricultural Machinery And Equipment Coverage Form;

Paragraph **1.** of the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by giving, mailing or delivering advance written notice of cancellation to us or to the insurance agent or producer who issued the policy.

**C.** With respect to all Coverage Parts and Policies addressed in this endorsement, the **Cancellation** Common Policy Condition is amended by replacing Paragraphs **2.**, **3.**, **5.** and **6.** with the following:

**2.** We may cancel this policy by giving, mailing or delivering to the first Named Insured and the insurance producer of record, if any, written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

If this policy has been in effect for 60 days or more, or if this is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

© Insurance Services Office, Inc., 2010

Bates No. 000210

**c.** Activities or omissions on your part which increase any hazard insured against, including a failure to comply with loss control recommendations;

**d.** Change in the risk which increases the risk of loss after insurance coverage has been issued or renewed, including but not limited to an increase in exposure due to regulation, legislation, or court decision;

**e.** Loss or decrease of our reinsurance covering all or part of the risk or exposure covered by the policy;

**f.** Determination by the Commissioner of Insurance that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of this state;

**g.** Owner or occupant incendiarism;

**h.** Violation or breach by you of any policy terms or conditions;

**i.** Constructive or actual total loss of the Covered Property; or

**j.** Such other reasons as may be approved by the Commissioner of Insurance.

**3.** We will give, mail or deliver written notice to the first Named Insured at the address shown on the policy, and to the insurance producer of record, if any.

However, with respect to the:

Capital Assets Program (Output Policy) Coverage Part

Commercial Inland Marine Coverage Part

Commercial Property Coverage Part

Employment-Related Practices Liability Coverage Part

Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions

Farm – Livestock Coverage Form

Farm – Mobile Agricultural Machinery And Equipment Coverage Form;

We will give, mail or deliver written notice to the first Named Insured at the last address known to us, and to the insurance producer of record, if any.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

The cancellation will be effective even if we have not made or offered a refund.

The following provisions govern calculation of return premium:

**a.** We will compute return premium pro rata and round to the next higher whole dollar when this policy is:

**(1)** Cancelled at our request;

**(2)** Cancelled because you no longer have a financial or insurable interest in the property or business operation that is the subject of insurance;

**(3)** Cancelled and rewritten by us or a member of our company group;

**(4)** Cancelled after the first year, if it is a prepaid policy written for a term of more than one year; or

**(5)** Cancelled by us at the request of a premium finance company upon default of the first Named Insured, when this policy is financed under a premium finance agreement.

**b.** When this policy is cancelled at your request (except when Paragraph **a.(2)**, **a.(3)** or **a.(4)** applies), we will return 90% (75% for Equipment Breakdown policies) of the pro rata unearned premium, rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multiyear prepaid policy, we will return the full annual premium for the subsequent years.

**6.** Proof of giving, mailing or delivering notice of cancellation will be sufficient proof of notice.

**D.** With respect to all Coverage Parts and Policies addressed in this endorsement, the following is added to the **Cancellation** Common Policy Condition:

**7.** We will provide you with the reason or reasons for cancellation if:

**a.** You request in writing a statement of the reasons for cancellation; and

**b.** You agree in writing to hold us harmless from liability for any:

**(1)** Communication giving notice of, or specifying the reasons for, cancellation; or

**(2)** Statement made in connection with an attempt to discover or verify the existence of conditions which would be a reason for cancellation as provided under Paragraph **C.2.**

 © Insurance Services Office, Inc., 2010 IL 02 73 01 10

Bates No. 000211

**E.** With respect to all Coverage Parts and Policies addressed in this endorsement, the following is added and supersedes any provision to the contrary:

**Nonrenewal**

**1.** If we elect not to renew this policy, we will give, mail or deliver to the first Named Insured and the insurance producer of record, if any, written notice of nonrenewal at least 60 days before:

**a.** The expiration date of the policy; or

**b.** An anniversary date of the policy, if the policy is written for a term longer than one year or with no fixed expiration date.

**2.** However, we need not give, mail or deliver this notice if:

**a.** We have offered to issue a renewal policy; or

**b.** The first Named Insured has obtained, or has agreed in writing to obtain, replacement coverage.

**F.** The following is added to the Common Policy Conditions with respect to the Coverage Parts to which this endorsement applies, except the Employment-Related Practices Liability Coverage Part:

If notice of nonrenewal is mailed to the insured, we shall forward the notice of nonrenewal to the last known address of the first Named Insured by first class mail and maintain proof of mailing by the United States Postal Service certificate of mailing. This proof of mailing will be sufficient proof of notice.

**G.** With respect to the:

Capital Assets Program (Output Policy) Coverage Part

Commercial Inland Marine Coverage Part

Commercial Property Coverage Part

Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions

Farm – Livestock Coverage Form

Farm – Mobile Agricultural Machinery And Equipment Coverage Form;

The following is added to the Common Policy Conditions:

If notice of cancellation is mailed to the insured, we shall forward the notice of cancellation to the last known address of the first Named Insured by first class mail and maintain proof of mailing by the United States Postal Service certificate of mailing. This proof of mailing will be sufficient proof of notice.

**H.** With respect to a loss payee named in the policy, if any, we will give, mail or deliver written notice of cancellation, subject to **C.2.** above, and written notice of nonrenewal, subject to **E.1.** above. Mailing will be accomplished in accordance with the applicable procedure stated in **F.** or **G.** above.

**I.** Under the **Mortgageholders** Condition, the paragraphs pertaining to cancellation and nonrenewal are replaced by the following:

**1.** If we cancel this policy, we will give, mail or deliver written notice to the mortgageholder at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**2.** If we do not renew this policy, we will give, mail or deliver written notice to the mortgageholder at least 10 days before:

**a.** The expiration date of the policy; or

**b.** An anniversary date of the policy, if the policy is written for a term longer than one year or with no fixed expiration date.

Bates No. 000212

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  113

IL 02 75 11 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – CANCELLATION AND NONRENEWAL PROVISIONS FOR CASUALTY LINES AND COMMERCIAL PACKAGE POLICIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY
FARM COVERAGE PART – FARM LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This endorsement also modifies insurance provided under the following when written as part of a Commercial Package Policy:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** We may cancel this policy:

**a.** By mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

However, if this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the notice of cancellation, as described above, will be provided to the first Named Insured 30 days before the effective date of cancellation. We will also provide 30 days' written notice to each unit-owner to whom we issued a certificate or memorandum of insurance, by mailing or delivering the notice to each last mailing address known to us.

     © Insurance Services Office, Inc., 2013

Bates No. 000213

**b.** For the following reasons, if this policy does not provide coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001 or on one- and two family dwellings:

**(1)** If this policy has been in effect for 60 days or less, we may cancel for any reason except that, under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

**(2)** If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

  **(a)** Fraud in obtaining coverage;

  **(b)** Failure to pay premiums when due;

  **(c)** An increase in hazard within the control of the insured which would produce an increase in rate;

  **(d)** Loss of our reinsurance covering all or part of the risk covered by the policy; or

  **(e)** If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

**c.** For the following reasons, if this policy provides coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001 or on one- and two-family dwellings:

**(1)** If this policy has been in effect for less than 90 days, we may cancel coverage for any reason.

**(2)** If this policy has been in effect for 90 days or more, or if it is a renewal or continuation of a policy issued by us, we may cancel coverage, only for the following reasons:

  **(a)** If the first Named Insured does not pay the premium or any portion of the premium when due;

  **(b)** If the Texas Department of Insurance determines that continuation of this policy would result in violation of the Texas Insurance Code or any other law governing the business of insurance in Texas;

  **(c)** If the Named Insured submits a fraudulent claim; or

  **(d)** If there is an increase in the hazard within the control of the Named Insured which would produce an increase in rate.

**B.** The following condition is added and supersedes any provision to the contrary:

**Nonrenewal**

**1.** We may elect not to renew this policy except that, under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

**2.** This paragraph, **2.,** applies unless the policy qualifies under Paragraph **3.** below.

If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

**3.** If this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then we will mail or deliver written notice of nonrenewal, at least 30 days before the expiration or anniversary date of the policy, to:

  **a.** The first Named Insured; and

  **b.** Each unit-owner to whom we issued a certificate or memorandum of insurance.

We will mail or deliver such notice to each last mailing address known to us.

**4.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**5.** The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

Bates No. 000214

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  114

**IL 02 78 09 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DISTRICT OF COLUMBIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

> CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> EQUIPMENT BREAKDOWN COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation. At least five days before sending notice to the first Named Insured, we will notify the agent or broker, if any, who wrote the policy.

If this policy has been in effect for 30 days or less and is not a renewal of a policy we issued, we may cancel this policy for any reason.

If this policy has been in effect more than 30 days, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**1.** You have refused or failed to pay a premium due under the terms of the policy;

**2.** You have made a material and willful misstatement or omission of fact to us or our employees, agents or brokers in connection with any application to or claim against us;

**3.** You have transferred your property or other interest to a person other than you or your beneficiary, unless the transfer is permitted under the terms of the policy; or

**4.** The property, interest or use of the property or interest has materially changed with respect to its insurability.

**B.** The following is added:

**NONRENEWAL**

We may elect not to renew this policy by mailing or delivering written notice of nonrenewal to the first Named Insured's last mailing address known to us. We will mail or deliver the notice at least 30 days before the expiration of the policy. At least five days before sending notice to the first Named Insured, we will notify the agent or broker, if any, who wrote the policy. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

Bates No. 000215

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  115

IL 00 23 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

© ISO Properties, Inc.,  2001

Bates No. 000216

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001
**IL 00 23 07 02**

Bates No. 000217

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  116

**IL 01 15 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEVADA CHANGES – DOMESTIC PARTNERSHIP

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** All references to spouse shall include an individual who is in a domestic partnership recognized under Nevada law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

**1.** Individual Named Insured by blood, adoption, marriage or domestic partnership recognized under Nevada law, who is a resident of such Named Insured's household, including a ward or foster child; or

**2.** Individual named in the Schedule by blood, adoption, marriage or domestic partnership recognized under Nevada law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or domestic partnership recognized under Nevada law, who is a resident of your household, including a ward or foster child.

Bates No. 000218

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  117

**IL 01 17 12 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES - WORKERS' COMPENSATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM LIABILITY COVERAGE FORM
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** For insurance provided under the:

Commercial General Liability Coverage Part
Commercial Liability Umbrella Coverage Part
Employment-Related Practices Liability Coverage Part
Liquor Liability Coverage Part
Medical Professional Liability Coverage Part
Owners And Contractors Protective Liability Coverage Part
Pollution Liability Coverage Part
Products/Completed Operations Liability Coverage Part
Railroad Protective Liability Coverage Part
Underground Storage Tank Policy

The following is added to the **Workers' Compensation And Similar Laws** Exclusion:

This exclusion also applies to any obligation of the insured under the Indiana Workers' Compensation statutes arising out of the failure of the insured to exact from a contractor (or subcontractor if the insured is a contractor) a certificate from the workers' compensation board showing that the contractor (or subcontractor) has complied with the applicable workers' compensation insurance requirements.

**B.** For insurance provided under the Commercial Automobile Coverage Part, the following is added to the **Workers' Compensation** Exclusion:

This exclusion also applies to any obligation of the "insured" under the Indiana Workers' Compensation statutes arising out of the failure of the "insured" to exact from a contractor (or subcontractor if the "insured" is a contractor) a certificate from the workers' compensation board showing that the contractor (or subcontractor) has complied with the applicable workers' compensation insurance requirements.

**C.** For insurance provided under the Farm Liability Coverage Form and Farm Umbrella Liability Policy, the following is added to the **Workers' Compensation Or Similar Law** Exclusion:

This exclusion also applies to any obligation of the "insured" under the Indiana Workers' Compensation statutes arising out of the failure of the "insured" to exact from a contractor (or subcontractor if the "insured" is a contractor) a certificate from the workers' compensation board showing that the contractor (or subcontractor) has complied with the applicable workers' compensation insurance requirements.

Bates No. 000219

POLICY NUMBER:  HDO G24556876 001                          Endorsement Number:  118

**IL 01 28 09 08**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# RHODE ISLAND CHANGES – PREJUDGMENT INTEREST

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    COMMERCIAL PROPERTY – LEGAL LIABILITY COVERAGE FORM
    COMMERCIAL PROPERTY – MORTGAGEHOLDER'S ERRORS AND OMISSIONS COVERAGE FORM
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    FARM COVERAGE PART
    FARM UMBRELLA LIABILITY POLICY
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

The paragraph in the **Supplementary Payments** Section relating to prejudgment interest is replaced by the following:

1. Prejudgment interest awarded against you* on the entire judgment if we reject a written settlement offer by the plaintiff that is equal to or less than the applicable limit of insurance in this policy; or

2. If Paragraph **1.** above does not apply, prejudgment interest awarded against you* on that part of the judgment we pay.

\* For the Commercial General Liability Coverage Part, Commercial Liability Umbrella Coverage Part, Employment-related Practices Liability Coverage Part, Farm Coverage Part, Farm Umbrella Liability Policy, Liquor Liability Coverage Part, Owners And Contractors Protective Liability Coverage Part, Pollution Liability Coverage Part, Products/Completed Operations Liability Coverage Part, Medical Professional Liability Coverage Part, Railroad Protective Liability Coverage Part and the Underground Storage Tank Policy the word you is replaced by the term "the insured".

                          © ISO Properties, Inc., 2007

Bates No. 000220

POLICY NUMBER:  HDO G24556876 001                              Endorsement Number:  119

**INTERLINE**
**IL 01 35 09 08**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NEW HAMPSHIRE CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2.a.** We may cancel this policy by mailing or physically delivering to you written notice of cancellation, stating the reasons for cancellation, at least:

  **(1)** 10 days before the effective date of cancellation if we cancel for:

    **(a)** Nonpayment of premium; or

    **(b)** Substantial increase in hazard;

  **(2)** 60 days before the effective date of cancellation if we cancel for any other reason.

**b.** If this policy has been in effect for 60 days or more, or if this is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

  **(1)** Nonpayment of premium;

  **(2)** Fraud or material misrepresentation affecting the policy or in the presentation of a claim thereunder, or violation of any of the terms or conditions of the policy; or

  **(3)** Substantial increase in hazard; provided that cancellation for this reason shall be effective only after prior approval of the Commissioner.

**3.** We will mail or physically deliver our notice to your last mailing address known to us. If notice is mailed, it will be by:

  **a.** Certified mail or certificate of mailing if cancellation is for nonpayment of premium; or

  **b.** Certified mail if cancellation is for any other reason.

  Proof that the notice was mailed in accordance with Paragraph **3.a.** or **3.b.** will be sufficient proof of notice.

**B.** Paragraph **6.** of the **Cancellation** Common Policy Condition is deleted.

**C.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail or physically deliver written notice of nonrenewal, stating the reasons for nonrenewal, to your last mailing address known to us at least 60 days prior to the expiration of the policy, or its anniversary date if it is a policy written for a term of more than one year.

**2.** However, we need not mail or physically deliver this notice if:

  **(a)** We have indicated a willingness to renew;

  **(b)** We refuse to renew due to nonpayment of premium;

 © ISO Properties, Inc., 2007

Bates No. 000221

**(c)** You do not pay any advance premium required by us for renewal; or

**(d)** Any property covered in this policy is insured under any other insurance policy.

**3.** If notice is mailed, proof of mailing will be sufficient proof of notice.

Bates No. 000222

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  120

**IL 01 38 11 11**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES – CANCELLATION
# AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.**, **3.** and **5.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least:

**a.** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 45 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will send written notice by registered or certified mail or deliver written notice to the first Named Insured's last mailing address known to us.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. The cancellation will be effective even if we have not made or offered a refund. The following provisions govern calculation of return premium.

**a.** We will compute return premium pro rata and round to the next higher whole dollar when this policy is cancelled:

**(1)** At our request;

**(2)** Because you no longer have a financial or insurable interest in the property or business operation that is the subject of insurance;

**(3)** And rewritten by us or a member of our company group; or

**(4)** After the first year, if it is a prepaid policy written for a term of more than one year.

**b.** When this policy is cancelled at your request (except when Paragraph **a.(2)**, **a.(3)** or **a.(4)** applies), we will return 90% of the pro rata unearned premium, rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multiyear prepaid policy, we will return the full annual premium for the subsequent years. In addition, earned premium will not be less than our policywriting minimum premium.

**B.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

**1.** If we elect not to renew this policy, we will mail or deliver a notice of nonrenewal to the first Named Insured shown in the Declarations, stating the reason for nonrenewal, at least:

**a.** 15 days before the expiration date if the nonrenewal is due to nonpayment of premium; or

**b.** 45 days before the expiration date if the nonrenewal is for any other reason.

**2.** We will send written notice by registered or certified mail or deliver written notice of nonrenewal to the first Named Insured's last mailing address known to us.

**IL 01 38 11 11**                          © Insurance Services Office, Inc., 2011                          **Page 1 of 1**

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  121

IL 01 40 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONNECTICUT CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Connecticut law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

**1.** Individual Named Insured by blood, adoption, marriage or civil union recognized under Connecticut law, who is a resident of such Named Insured's household, including a ward or foster child; or

**2.** Individual named in the Schedule by blood, adoption, marriage or civil union recognized under Connecticut law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, or Farm Umbrella Liability Policy, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Connecticut law, who is a resident of your household, including a ward or foster child.

Bates No. 000224

POLICY NUMBER:  HDO G24556876 001                          Endorsement Number:  122

**IL 01 41 09 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under New Jersey law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

**1.** Individual Named Insured by blood, adoption, marriage or civil union recognized under New Jersey law, who is a resident of such Named Insured's household, including a ward or foster child; or

**2.** Individual named in the Schedule by blood, adoption, marriage or civil union recognized under New Jersey law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under New Jersey law, who is a resident of your household, including a ward or foster child.

IL 01 41 09 08                    © Insurance Services Office, Inc., 2008                    Page 1 of 1

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  123

IL 01 42 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# OREGON CHANGES – DOMESTIC PARTNERSHIP

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or individual who is in a domestic partnership recognized under Oregon law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

**1.** Individual Named Insured by blood, adoption, marriage or domestic partnership recognized under Oregon law, who is a resident of such Named Insured's household, including a ward or foster child; or

**2.** Individual named in the Schedule by blood, adoption, marriage or domestic partnership recognized under Oregon law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or domestic partnership recognized under Oregon law, who is a resident of your household, including a ward or foster child.

© ISO Properties, Inc., 2007

Bates No. 000226

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  124

IL 01 47 09 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Illinois law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

**1.** Individual Named Insured by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of such Named Insured's household, including a ward or foster child; or

**2.** Individual named in the Schedule by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of your household, including a ward or foster child.

Bates No. 000227

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  125

**IL 01 51 01 12**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DELAWARE CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Delaware law.

**B.** Under the Commercial Automobile Coverage Part, the term "family member" is replaced by the following and supersedes any other provisions to the contrary:

"Family member" means:

**1.** A person related to the individual Named Insured by blood, adoption, marriage or civil union recognized under Delaware law, who is a resident of such Named Insured's household, including a ward or foster child;

**2.** Members of your immediate family including a partner to a civil union recognized under Delaware law, not having a separate household and persons actually residing with and economically dependent upon you, if Delaware Personal Injury Protection Endorsement is attached;

**3.** A person related to the individual named in the Schedule by blood, adoption, marriage or civil union recognized under Delaware law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individuals endorsement is attached; or

**4.** A person related to you by blood, adoption, marriage or civil union recognized under Delaware law, who is a resident of your household, including a ward or foster child, if the Individual Named Insured endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Delaware law, who is a resident of your household, including a ward or foster child.

© Insurance Services Office, Inc., 2011

Bates No. 000228

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  126

**IL 01 61 03 12**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# RHODE ISLAND CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    ELECTRONIC DATA LIABILITY COVERAGE PART
    FARM COVERAGE PART
    FARM UMBRELLA LIABILITY POLICY
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCT WITHDRAWAL COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Rhode Island law.

**B.** Under the Commercial Automobile Coverage Part, the term "family member" is replaced by the following and supersedes any other provisions to the contrary:

"Family member" means a person related to:

**1.** An individual Named Insured by blood, adoption, marriage or civil union recognized under Rhode Island law, who is a resident of such Named Insured's household, including a ward or foster child;

**2.** The individual named in the Schedule by blood, adoption, marriage or civil union recognized under Rhode Island law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individuals endorsement is attached; or

**3.** You by blood, adoption, marriage or civil union recognized under Rhode Island law, who is a resident of your household, including a ward or foster child, if the Individual Named Insured endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Rhode Island law, who is a resident of your household, including a ward or foster child.

Bates No. 000229

POLICY NUMBER:  HDO G24556876 001　　　　　　　　　　　Endorsement Number:  127

**IL 01 62 09 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDERS ERRORS AND OMISSIONS
COVERAGE FORM
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

  **1.** Section **I** of the Commercial General Liability, Commercial Liability Umbrella, Employment-Related Practices Liability, Farm, Liquor Liability, Owners And Contractors Protective Liability, Pollution Liability, Products/Completed Operations Liability, Product Withdrawal, Medical Professional Liability, Railroad Protective Liability, Underground Storage Tank Coverage Parts and the Farm Umbrella Liability Policy;

  **2.** Section **II** – Liability Coverage in Paragraph **A.** Coverage under the Business Auto, Garage, Motor Carrier and Truckers Coverage Forms;

  **3.** Section **A.** Coverage under the Legal Liability Coverage Form; and

  **4.** Coverage **C** – Mortgageholder's Liability under the Mortgageholders Errors And Omissions Coverage Form.

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

Bates No. 000230

POLICY NUMBER:  HDO G24556876 001                           Endorsement Number:  128

**IL 01 68 03 12**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – DUTIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added to the **Duties** Condition:

We will notify the first Named Insured in writing of:

1. An initial offer to settle a claim made or "suit" brought against any insured ("insured") under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

2. Any settlement of a claim made or "suit" brought against the insured ("insured") under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

Bates No. 000231

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  129

**IL 01 97 09 08**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# RHODE ISLAND CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY – MORTGAGEHOLDERS ERRORS AND OMISSIONS COVERAGE FORM
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM LIABILITY COVERAGE FORM
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following is added to the **Transfer Of Rights Of Recovery Against Others To Us** Condition:

When an insurer or its agents recover payment on a casualty loss from a third party through subrogation, the insurer must first pay the insured the deductible portion of the casualty loss, less the pro-rated share of subrogation expenses and thereafter retain any funds in excess of the deductible portion of the recovery.

**B.** The following provision is added:

**DIRECT LIABILITY OF INSURERS**

We will be directly liable for those sums the insured becomes legally obligated to pay as damages to the injured party to which this insurance applies. In the event of that injured party's death, we will be directly liable for those sums the insured becomes legally obligated to pay as damages to the party entitled to sue as a result of the injured party's death, and to which this insurance applies.

© ISO Properties, Inc., 2007

Bates No. 000232

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  130

**IL 01 98 09 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

©ISO Properties, Inc., 2007                      ☐

Bates No. 000233

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "Special nuclear material" or "by-product material";

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Bates No. 000234

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  131

IL 02 08 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

> CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> EQUIPMENT BREAKDOWN COVERAGE PART
> FARM COVERAGE PART
> FARM UMBRELLA LIABILITY POLICY
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Pursuant to New Jersey law, this policy cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the insured. The underwriting reasons or guidelines that an insurer can use to cancel or nonrenew this policy are maintained by the insurer in writing and will be furnished to the insured and/or the insured's lawful representative upon written request.

This provision shall not apply to any policy which has been in effect for less than 60 days at the time notice of cancellation is mailed or delivered, unless the policy is a renewal policy.

**B.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** If this policy has been in effect for less than 60 days, we may cancel this policy for any reason subject to the following:

**a.** We may cancel this policy by mailing or delivering to the first Named Insured and any person entitled to notice under this policy written notice, of cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for:

**(a)** Nonpayment of premium; or

**(b)** Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f) as follows:

**(i)** "The risk, danger or probability that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. Any change in the circumstances of an insured that will increase the probability of such a destruction may be considered a 'moral hazard'"; and

**(ii)** "The substantial risk, danger or probability that the character, circumstances or personal habits of the insured may increase the possibility of loss or liability for which an insurer will be held responsible. Any change in the character or circumstances of an individual, corporate, partnership or other insured that will increase the probability of such a loss or liability may be considered a 'moral hazard'".

IL 02 08 09 07

© ISO Properties, Inc., 2006

Page 1 of 3    ☐

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b.** In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation.

**C.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation Of Policies In Effect For 60 Days Or More**

**a.** If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f);

**(3)** Material misrepresentation or nondisclosure to us of a material fact at the time of acceptance of the risk;

**(4)** Increased hazard or material change in the risk assumed which we could not have reasonably contemplated at the time of assumption of the risk;

**(5)** Substantial breaches of contractual duties, conditions or warranties that materially affect the nature and/or insurability of the risk;

**(6)** Lack of cooperation from the insured on loss control matters materially affecting insurability of the risk;

**(7)** Fraudulent acts against us by the insured or its representative that materially affect the nature of the risk insured;

**(8)** Loss of or reduction in available insurance capacity;

**(9)** Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract or any subsequent renewal;

**(10)** Loss of or substantial changes in applicable reinsurance;

**(11)** Failure by the insured to comply with any Federal, State or local fire, health, safety or building or construction regulation, law or ordinance with respect to an insured risk which substantially increases any hazard insured against within 60 days of written notification of a violation of any such law, regulation or ordinance;

**(12)** Failure by the insured to provide reasonable and necessary underwriting information to us upon written request therefore and a reasonable opportunity to respond.

**(13)** Agency termination, provided:

**(a)** We document that replacement coverage at comparable rates and terms has been provided to the first Named Insured, and we have informed the first Named Insured, in writing, of the right to continue coverage with us; or

**(b)** We have informed the first Named Insured, in writing, of the right to continue coverage with us and the first Named Insured has agreed, in writing, to the cancellation or nonrenewal based on the termination of the first Named Insured's appointed agent.

**(14)** Any other reasons in accordance with our underwriting guidelines for cancellation of commercial lines coverage.

**b.** If we cancel this policy based on Paragraph **7.a.(1)** or **(2)** above, we will mail or deliver a written notice, to the first Named Insured and any person entitled to notice under this policy, at least 10 days before the effective date of cancellation. If we cancel this policy for any other reason listed above, we will mail or deliver a written notice to the first Named Insured and any person entitled to notice under this policy, not more than 120 days nor less than 30 days before the effective date of such cancellation.

**c.** In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation. For cancellation due to the nonpayment of premium, the notice will state the effect of nonpayment by the due date. Cancellation for nonpayment of premium will not be effective if payment of the amount due is made before the effective date set forth in the notice.

**d.** Notice will be sent to the last mailing addresses known to us, by:

**(1)** Certified mail; or

**(2)** First class mail, if we have obtained from the post office a date stamped proof of mailing showing names and addresses.

© ISO Properties, Inc., 2006  IL 02 08 09 07  □

Bates No. 000236

**e.** We need not send notice of cancellation if you have:

    **(1)** Replaced coverage elsewhere; or

    **(2)** Specifically requested termination.

**D.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

**1.** We may elect not to renew this policy for any reason permitted to cancel it. If we elect not to renew this policy, we will mail a notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured at least 30 days but not more than 120 days before the expiration date of this policy. If this policy does not have a fixed expiration date, it shall be deemed to expire annually on the anniversary of its inception.

**2.** This notice will be sent to the first Named Insured at the last mailing address known to us by:

    **a.** Certified mail; or

    **b.** First class mail, if we have obtained from the post office a date stamped proof of mailing showing the first Named Insured's name and address.

**3.** We need not mail or deliver this notice if you have:

    **a.** Replaced coverage elsewhere; or

    **b.** Specifically requested termination.

Bates No. 000237

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  132

**IL 02 28 09 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COLORADO CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation Of Policies In Effect For 60 Days Or More**

**a.** If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy by mailing through first-class mail to the first Named Insured written notice of cancellation:

**(1)** Including the actual reason, at least 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** At least 45 days before the effective date of cancellation if we cancel for any other reason.

We may only cancel this policy based on one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** A false statement knowingly made by the insured on the application for insurance; or

**(3)** A substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the first Named Insured has notified us of the change and we accept such change.

**C.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

If we decide not to renew this policy, we will mail through first-class mail to the first Named Insured shown in the Declarations written notice of the nonrenewal at least 45 days before the expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006

Bates No. 000238

**D.** The following condition is added:

**INCREASE IN PREMIUM OR DECREASE IN COVERAGE**

We will not increase the premium unilaterally or decrease the coverage benefits on renewal of this policy unless we mail through first-class mail written notice of our intention, including the actual reason, to the first Named Insured's last mailing address known to us, at least 45 days before the effective date.

Any decrease in coverage during the policy term must be based on one or more of the following reasons:

**1.** Nonpayment of premium;

**2.** A false statement knowingly made by the insured on the application for insurance; or

**3.** A substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the first Named Insured has notified us of the change and we accept such change.

If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006

**IL 02 28 09 07**   ☐

Bates No. 000239

POLICY NUMBER:  HDO G24556876 001            Endorsement Number:  133

**IL 02 36 09 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# OKLAHOMA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART
    FARM UMBRELLA LIABILITY POLICY
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

  **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

After coverage has been in effect for more than 45 business days or after the effective date of a renewal of this policy, no notice of cancellation will be issued by us unless it is based on at least one of the following reasons:

  **(1)** Nonpayment of premium;

  **(2)** Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted under it;

  **(3)** Discovery of willful or reckless acts or omissions by you that increase any hazard insured against;

  **(4)** The occurrence of a change in the risk that substantially increases any hazard insured against after insurance coverage has been issued or renewed;

  **(5)** A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any covered property or its occupancy that substantially increases any hazard insured against;

  **(6)** A determination by the Insurance Commissioner that the continuation of the policy would place us in violation of the insurance laws of this state;

  **(7)** Your conviction of a crime having as one of its necessary elements an act increasing any hazard insured against; or

  **(8)** Loss of or substantial changes in applicable reinsurance.

**B.** The following are added to the Common Policy Conditions and supersede any provisions to the contrary:

  **1. Nonrenewal**

    **a.** If we elect not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured at least 45 days before:

      **(1)** The expiration date of this policy; or

      **(2)** An anniversary date of this policy, if it is written for a term longer than one year or with no fixed expiration date.

Bates No. 000240

**b.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us.

**c.** If notice is mailed:

  **(1)** It will be considered to have been given to the first Named Insured on the day it is mailed.

  **(2)** Proof of mailing will be sufficient proof of notice.

**d.** If notice of nonrenewal is **not** mailed or delivered at least 45 days before the expiration date or an anniversary date of this policy, coverage will remain in effect until 45 days after notice is given. Earned premium for such extended period of coverage will be calculated pro rata based on the rates applicable to the expiring policy.

**e.** We will **not** provide notice of nonrenewal if:

  **(1)** We, or another company within the same insurance group, have offered to issue a renewal policy; or

  **(2)** You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

**f.** If we have provided the required notice of nonrenewal as described in **B.1.a.** above, and thereafter extend the policy for a period of 90 days or less, we will **not** provide an additional nonrenewal notice with respect to the period of extension.

**2. Premium Or Coverage Changes At Renewal**

  **a.** If we elect to renew this policy, we will give written notice of any premium increase, change in deductible, or reduction in limits or coverage, to the first Named Insured, at the last mailing address known to us.

  **b.** Any such notice will be mailed or delivered to the first Named Insured at least 45 days before:

    **(1)** The expiration date of this policy; or

    **(2)** An anniversary date of this policy, if it is written for a term longer than one year or with no fixed expiration date.

**c.** If notice is mailed:

  **(1)** It will be considered to have been given to the first Named Insured on the day it is mailed.

  **(2)** Proof of mailing will be sufficient proof of notice.

**d.** If the first Named Insured accepts the renewal, the premium increase or coverage changes will be effective the day following the prior policy's expiration or anniversary date.

**e.** If notice is **not** mailed or delivered at least 45 days before the expiration date or anniversary date of this policy, the premium, deductible, limits and coverage in effect prior to the changes will remain in effect until:

  **(1)** 45 days after notice is given; or

  **(2)** The effective date of replacement coverage obtained by the insured;

  whichever occurs first.

  If the first Named Insured then elects **not** to renew, any earned premium for the resulting extended period of coverage will be calculated pro rata at the lower of the new rates or rates applicable to the expiring policy.

**f.** We will **not** provide notice of the following:

  **(1)** Changes in a rate or plan filed pursuant to the Property and Casualty Competitive Loss Cost Rating Act applicable to an entire class of business;

  **(2)** Changes which are based upon the altered nature or extent of the risk insured; or

  **(3)** Changes in policy forms filed with or approved by the Insurance Commissioner and applicable to an entire class of business.

© ISO Properties, Inc., 2006  **IL 02 36 09 07**  ☐

POLICY NUMBER:  HDO G24556876 001                              Endorsement Number: 134

**IL 02 37 04 12**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DELAWARE CHANGES – TERMINATION PROVISIONS

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** With respect to the:

Farm Property – Farm Dwellings, Appurtenant Structures and Household Personal Property Coverage Form;
Commercial Property Coverage Part; and
Capital Assets Program (Output Policy) Coverage Part;

If the policy covers a building that contains no more than four dwelling units, one of which is the insured's principal place of residence, or covers the insured's household personal property in a residential building, the following applies:

**1.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation along with the reasons for cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

After coverage has been in effect for more than 60 days or after the effective date of a renewal of this policy, no notice of cancellation will be issued by us unless it is based on at least one of the following reasons:

(1) Nonpayment of premium;

(2) Discovery of fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

(3) Discovery of willful or reckless acts or omissions on your part that increase any hazard insured against;

(4) The occurrence of a change in the risk that substantially increases any hazard insured against after insurance coverage has been issued or renewed;

(5) A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any covered property or its occupancy that substantially increases any hazard insured against;

(6) A determination by the Insurance Commissioner that the continuation of the policy would place us in violation of the Delaware insurance laws; or

(7) Real property taxes owing on the insured property have been delinquent for two or more years and continue delinquent at the time notice of cancellation is issued.

Bates No. 000242

**2.** The following Condition is added:

**Nonrenewal**

**a.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured, at least 30 days before the expiration date, or the anniversary date if this is a policy written for a term of more than one year or with no fixed expiration date.

**b.** Any notice of nonrenewal will include the reason(s) for nonrenewal and will be mailed or delivered to the first Named Insured at the last mailing address known to us.

**c.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**3.** If Cancellation Changes **CP 02 99** is attached to the Commercial Property Coverage Part, Paragraph **E.2.** of that form is replaced by the following:

**2.** Pay property taxes that are owing and have been outstanding for more than two years following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

**B.** With respect to the:

Commercial General Liability Coverage Part;
Commercial Property – Legal Liability Coverage Form;
Commercial Property – Mortgageholders Errors And Omissions Coverage Form;
Employment-Related Practices Liability Coverage Form;

Farm Liability Coverage Form;
Liquor Liability Coverage Part;
Medical Professional Liability Coverage Part;
Pollution Liability Coverage Part; and
Products/Completed Operations Liability Coverage Part:

**1.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 60, but not more than 120, days before the effective date of cancellation if we cancel for any other permissible reason.

**2.** The following Condition is added and supersedes any other condition to the contrary:

**Nonrenewal**

**a.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured, at least 60, but not more than 120, days before the expiration date, or the anniversary date if this is a policy written for a term of more than one year or with no fixed expiration date.

**b.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us.

© Insurance Services Office, Inc., 2011

Bates No. 000243

POLICY NUMBER:  HDO G24556876 001                                      Endorsement Number:  135

**IL 02 44 09 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# OHIO CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** With respect to a policy which has been in effect for more than 90 days, or is a renewal of a policy we issued, the **Cancellation** Common Policy Condition is replaced by the following:

  **1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

  **2.** We may cancel this policy only for one or more of the following reasons, except as provided in Paragraph **6.** below:

  **a.** Nonpayment of premium;

  **b.** Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

  **c.** Discovery of a moral hazard or willful or reckless acts or omissions on your part which increases any hazard insured against;

  **d.** The occurrence of a change in the individual risk which substantially increases any hazard insured against after the insurance coverage has been issued or renewed except to the extent the insurer could reasonably have foreseen the change or contemplated the risk in writing the contract;

  **e.** Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the Superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage;

  **f.** Failure of an insured to correct material violations of safety codes or to comply with reasonable written loss control recommendations; or

  **g.** A determination by the Superintendent of Insurance that the continuation of the policy would create a condition that would be hazardous to the policyholders or the public.

  **3.** We will mail written notice of cancellation to the first Named Insured, and agent if any, at the last mailing addresses known to us. Proof of mailing will be sufficient proof of notice.

  **4.** We will mail the notice of cancellation at least:

  **a.** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation, if we cancel for a reason stated in **2.b.** through **2.g.** above.

5.  The notice of cancellation will:

   a.  State the effective date of cancellation. The policy period will end on that date.

   b.  Contain the date of the notice and the policy number, and will state the reason for cancellation.

6.  Policies written for a term of more than one year or on a continuous basis may be cancelled by us for any reason at an anniversary date, upon 30 days' written notice of cancellation.

7.  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

B.  The following is added to the Common Policy Conditions and supersedes any provisions to the contrary:

   **NONRENEWAL**

   1.  If we elect not to renew this policy, we will mail written notice of nonrenewal to the first Named Insured, and agent if any, at the last mailing addresses known to us. The notice will contain the date of the notice and the policy number, and will state the expiration date of the policy.

   2.  We will mail the notice of nonrenewal at least 30 days before the expiration date of the policy.

   3.  Proof of mailing will be sufficient proof of notice.

C.  **Common Policy Conditions**

   1.  Paragraph **A.2.a.** of the **Businessowners** Common Policy Conditions is deleted.

   2.  Paragraph **E.2.** of the **Cancellation** Common Policy Condition in the Standard Property Policy is deleted. Paragraph **E.2.** is replaced by the following (unless Item **A.** of this endorsement applies):

      We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

      a.  10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

      b.  30 days before the effective date, if we cancel for any other reason.

© ISO Properties, Inc., 2006
**IL 02 44 09 07**   ◻

Bates No. 000245

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  136

IL 02 45 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINNESOTA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

> CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> EQUIPMENT BREAKDOWN COVERAGE PART
> FARM COVERAGE PART
> MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The following provisions apply except when Paragraph **C.** of this endorsement applies:

The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy, subject to the provisions of Paragraph **B.3.** below, by first class mailing, or by delivery, of a written notice of cancellation to the first Named Insured and any agent, to their last mailing addresses known to us. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**3. Policies In Effect**

**a. Less Than 90 Days**

If this policy is a new policy and has been in effect for fewer than 90 days, we may cancel for any reason by giving notice at least:

**(1)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation, if we cancel for any other reason.

**b. 90 Days Or More**

If this policy has been in effect for 90 days or more, or if it is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Misrepresentation or fraud made by you or with your knowledge in obtaining the policy or in pursuing a claim under the policy;

**(3)** An act or omission by you that substantially increases or changes the risk insured;

**(4)** Refusal by you to eliminate known conditions that increase the potential for loss after notification by us that the condition must be removed;

**(5)** Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

Bates No. 000246

**(6)** Loss of reinsurance by us which provided coverage to us for a significant amount of the underlying risk insured. Any notice of cancellation pursuant to this item shall advise the policyholder that he or she has 10 days from the date of receipt of the notice to appeal the cancellation to the commissioner of commerce and that the commissioner will render a decision as to whether the cancellation is justified because of the loss of reinsurance within 30 business days after receipt of the appeal;

**(7)** A determination by the commissioner that the continuation of the policy could place us in violation of the Minnesota insurance laws; or

**(8)** Nonpayment of dues to an association or organization, other than an insurance association or organization, where payment of dues is a prerequisite to obtaining or continuing such insurance. This provision for cancellation for failure to pay dues shall not be applicable to persons who are retired at 62 years of age or older or who are disabled according to social security standards.

Under this Item **B.3.b.,** we will give notice at least:

**(1)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium. The cancellation notice shall contain the information regarding the amount of premium due and the due date, and shall state the effect of nonpayment by the due date. Cancellation shall not be effective if payment of the amount due is made prior to the effective date of cancellation; or

**(2)** 60 days before the effective date, if we cancel for a reason described in Paragraphs **B.3.b.(2)** through **(8)** above. The notice of cancellation will state the reason for cancellation.

**4.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**5.** Proof of mailing of any notice shall be sufficient proof of notice.

**C.** The following applies with respect to coverage provided under the following:

**FARM COVERAGE PART**

**1. Policies In Effect 60 Days Or More**

**a.** If this Coverage Part covers buildings used for residential purposes and has been:

**(1)** In effect for at least 60 days, or

**(2)** Renewed by us,

Paragraphs **A.2.** and **A.6.** of the **Cancellation** Common Policy Condition do not apply, and the following is added to the **Cancellation** Common Policy Condition:

**b.** We may not cancel this policy, except for:

**(1)** Nonpayment of premium;

**(2)** Misrepresentation or fraud made by you or with your knowledge:

**(a)** In obtaining this policy; or

**(b)** In connection with a claim under this policy;

**(3)** An act or omission by you that materially increases the risk we originally accepted; or

**(4)** A physical change in the Covered Property which:

**(a)** Is not corrected or restored within a reasonable time after it occurs; and

**(b)** Results in the property becoming uninsurable.

**c.** We may cancel this policy by giving the first Named Insured written notice of cancellation at least:

**(1)** 20 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for a reason described in Paragraphs **C.1.b.(2)** through **(4).**

Such notice will be mailed or delivered to the first Named Insured and will contain the reason for cancellation. Proof of mailing of any notice shall be sufficient proof of notice.

   © ISO Properties, Inc., 2007   IL 02 45 09 08

Bates No. 000247

### 2. Policies In Effect Less Than 60 Days

When this Coverage Part covers buildings used for residential purposes and is a new policy which has been in effect fewer than 60 days, cancellation is subject to the terms of the Cancellation Common Policy Condition except for Paragraphs **A.2.** and **A.6.,** and is not subject to Paragraph **B.** or Paragraph **C.1.** of this endorsement. Under this Item, **C.2.,** Paragraphs **A.2.** and **A.6.** of the **Cancellation** Common Policy Condition are replaced by the following:

We may cancel this policy by giving the first Named Insured written notice of cancellation at least 20 days before the effective date of cancellation. Such notice will be mailed or delivered to the first Named Insured. Proof of mailing of any notice shall be sufficient proof of notice.

If we cancel this policy for underwriting considerations, we will inform you of the source from which the information was received.

**D.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

If we decide not to renew this policy, we may do so by giving the first Named Insured and any agent written notice of our intent not to renew at least 60 days before the expiration date of this policy. Such notice will be delivered or mailed by first class mail to their last mailing addresses known to us.

Proof of mailing of any notice shall be sufficient proof of notice.

We need not mail or deliver this notice if you have:

**1.** Insured elsewhere;

**2.** Accepted replacement coverage; or

**3.** Agreed not to renew this policy.

Bates No. 000248

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  137

IL 02 46 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

2. **Cancellation Of Policies In Effect For Less Than 60 Days**

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

3. **Cancellation Of Policies In Effect For 60 Days Or More**

   If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   **a.** You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

   **b.** You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

   **c.** A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   **d.** Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**e.** Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**f.** Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

**4.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

**5.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**6.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

**7.** If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**B.** The following are added and supersede any provisions to the contrary:

**1. Nonrenewal**

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

**2. Increase Of Premium**

If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

 © ISO Properties, Inc., 2006 IL 02 46 09 07 □

Bates No. 000250

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  138

**IL 02 49 09 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SOUTH CAROLINA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of **Cancellation** Common Policy Condition are replaced by the following:

  **2.** We may cancel this policy by mailing or delivering to the first Named Insured and the agent, if any, written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

  **3.** We will mail or deliver our notice to the first Named Insured's and agent's last known addresses.

**B.** The following is added to the **Cancellation** Common Policy Condition:

  **7. Cancellation Of Policies In Effect For 120 Days Or More**

   If this policy has been in effect for 120 days or more, or is a renewal or continuation of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** Material misrepresentation of fact which, if known to us, would have caused us not to issue the policy;

   **c.** Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the policy;

   **d.** Substantial breaches of contractual duties, conditions or warranties; or

   **e.** Loss of our reinsurance covering all or a significant portion of the particular policy insured, or where continuation of the policy would imperil our solvency or place us in violation of the insurance laws of South Carolina.

   Prior to cancellation for reasons permitted in this Item **e.,** we will notify the Commissioner, in writing, at least 60 days prior to such cancellation and the Commissioner will, within 30 days of such notification, approve or disapprove such action.

Any notice of cancellation will state the precise reason for cancellation.

Bates No. 000251

**C.** The following is added and supersedes any provisions to the contrary:

**Nonrenewal**

**1.** We will not refuse to renew a policy issued for a term of more than one year, until expiration of its full term, if anniversary renewal has been guaranteed by additional premium consideration.

**2.** If we decide not to renew this policy, we will:

   **a.** Mail or deliver written notice of nonrenewal to the first Named Insured and agent, if any, before:

      **(1)** The expiration date of this policy, if the policy is written for a term of one year or less; or

      **(2)** An anniversary date of this policy, if the policy is written for a term of more than one year or for an indefinite term; and

   **b.** Provide at least:

      **(1)** 60 days' notice of nonrenewal, when nonrenewal is to become effective between November 1 and May 31; or

      **(2)** 90 days' notice of nonrenewal, when nonrenewal is to become effective between June 1 and October 31.

**3.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's last known addresses. If notice is mailed, proof of mailing will be sufficient proof of notice.

**4.** Any notice of nonrenewal will state the precise reason for nonrenewal.

© ISO Properties, Inc., 2007

**IL 02 49 09 08**

Bates No. 000252

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  139

**IL 02 50 09 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TENNESSEE CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

The refund will be pro rata if:

**a.** We cancel; or

**b.** The policy is cancelled at the request of a premium finance company that has financed this policy under a premium finance agreement.

The refund may be less than pro rata if the first Named Insured cancels the policy.

The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**CANCELLATION OF POLICIES IN EFFECT FOR 60 DAYS OR MORE**

If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**1.** Nonpayment of premium, including any additional premium, calculated in accordance with our current rating manual, justified by a physical change in the insured property or a change in its occupancy or use;

**2.** Your conviction of a crime increasing any hazard insured against;

**3.** Discovery of fraud or material misrepresentation on the part of either of the following:

**a.** You or your representative in obtaining this insurance; or

**b.** You in pursuing a claim under this policy;

**4.** Failure to comply with written loss control recommendations;

**5.** Material change in the risk which increases the risk of loss after we issued or renewed insurance coverage;

**6.** Determination by the insurance commissioner that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of Tennessee or any other state;

**7.** Your violation or breach of any policy terms or conditions; or

**8.** Other reasons that are approved by the insurance commissioner.

Notice of cancellation will state the reason for cancellation.

Bates No. 000253

**C.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and agent, at least 60 days before the expiration date unless:

   **a.** We have offered to issue a renewal policy; or

   **b.** You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's addresses shown in the policy. If notice is mailed, proof of mailing will be sufficient proof of notice.

**D.** The following is added to the **Premiums** Common Policy Condition:

Whenever an insurance policy which is financed with a premium finance company is cancelled, the insurer shall return, within 30 days after the effective date of the cancellation, whatever gross unearned premiums are due under the insurance policy directly to the premium finance company for the account of the first Named Insured.

© ISO Properties, Inc., 2007

**IL 02 50 09 08**   ❑

Bates No. 000254

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  140

**IL 02 51 09 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEVADA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following are added to the **Cancellation** Common Policy Condition:

   **7.a. Midterm Cancellation**

     If this policy has been in effect for 70 days or more, or if this policy is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

     **(1)** Nonpayment of premium;

     **(2)** Conviction of the insured of a crime arising out of acts increasing the hazard insured against;

     **(3)** Discovery of fraud or material misrepresentation in obtaining the policy or in presenting a claim thereunder;

     **(4)** Discovery of an act or omission or a violation of any condition of the policy which occurred after the first effective date of the current policy, and substantially and materially increases the hazard insured against;

     **(5)** A material change in the nature or extent of the risk, occurring after the first effective date of the current policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

     **(6)** A determination by the commissioner that continuation of our present volume of premiums would jeopardize our solvency or be hazardous to the interests of our policyholders, creditors or the public;

     **(7)** A determination by the commissioner that the continuation of the policy would violate, or place us in violation of, any provision of the code.

   **b. Anniversary Cancellation**

     If this policy is written for a term longer than one year, we may cancel for any reason at an anniversary, by mailing or delivering written notice of cancellation to the first Named Insured at the last mailing address known to us at least 60 days before the anniversary date.

**B.** The following is added as an additional Condition and supersedes any other provision to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations a notice of intention not to renew at least 60 days before the agreed expiration date.

   If notice is mailed, proof of mailing will be sufficient proof of notice.

 © ISO Properties, Inc., 2006

Bates No. 000255

**2.** We need not provide this notice if:

    **a.** You have accepted replacement coverage;

    **b.** You have requested or agreed to nonrenewal; or

    **c.** This policy is expressly designated as non-renewable.

**C. Notices**

    **1.** Notice of cancellation or nonrenewal in accordance with **A.** and **B.** above, will be mailed, first class or certified, or delivered to the first Named Insured at the last mailing address known to us and will state the reason for cancellation or nonrenewal.

    **2.** We will also provide a copy of the notice of cancellation, for both policies in effect less than 70 days and policies in effect 70 days or more, to the agent who wrote the policy.

© ISO Properties, Inc., 2006

**IL 02 51 09 07**   ☐

Bates No. 000256

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  141

**IL 02 62 09 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **A.1.** of the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

**a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

**b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

**(1)** 10 days from the date of mailing or delivering our notice, or

**(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **A.5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

**a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

**c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

**d.** If the first Named Insured cancels, the refund may be less than pro rata.

**e.** The cancellation will be effective even if we have not made or offered a refund.

Bates No. 000257

**C.** The following is added to the **Cancellation** Common Policy condition and supersedes any other provisions to the contrary:

If we decide to:

**1.** Cancel or nonrenew this policy; or

**2.** Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

**3.** Change any policy provision which would limit or restrict coverage;

Then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph **D.** below, we will mail or deliver notice at least:

**1.** 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

**2.** 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

**3.** 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

**D.** The following provisions apply to insurance covering residential real property only provided under the:

Capital Assets Program (Output Policy) Coverage Part;

Commercial Property Coverage Part;

Farm Coverage Part;

If the named insured is a natural person.

With respect to such insurance, the following is added to the **Cancellation** Common Policy Condition and supersedes any provisions to the contrary:

**1.** When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first Named Insured at least 10 days before the date cancellation takes effect.

**2.** When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons:

**a.** Nonpayment of premium, whether payable to us or to our agent;

**b.** Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

**c.** Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

**d.** Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

We may cancel by providing notice to the first Named Insured at least:

● 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

● 45 days before the effective date of cancellation if we cancel for any of the reasons listed in **b., c.** or **d.** above.

Bates No. 000258

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  142

IL 02 63 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# KENTUCKY CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Of Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 14 days before the effective date of cancellation.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation Of Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days or is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Discovery of fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

**(3)** Discovery of willful or reckless acts or omissions on your part which increase any hazard insured against;

**(4)** The occurrence of a change in the risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed;

**(5)** A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any insured property or the occupancy thereof which substantially increases any hazard insured against;

**(6)** We are unable to reinsure the risk covered by the policy; or

**(7)** A determination by the commissioner that the continuation of the policy would place us in violation of the Kentucky insurance code or regulations of the commissioner.

IL 02 63 09 08                    © ISO Properties, Inc., 2007                    Page 1 of 2       □

Bates No. 000259

**b.** If we cancel this policy based on Paragraph **7.a.** above, we will mail or deliver a written notice of cancellation to the first Named Insured, stating the reason for cancellation, at least:

  **(1)** 14 days before the effective date of the cancellation, if cancellation is for non-payment of premium; or

  **(2)** 75 days before the effective date of the cancellation, if cancellation is for any reason stated in **7.a.(2)** through **7.a.(7)** above.

**C.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

**1.** For the purpose of this Condition:

  **a.** Any policy period or term of less than six months shall be considered to be a policy period or term of six months; and

  **b.** Any policy period or term of more than one year or any policy with no fixed expiration date shall be considered a policy period or term of one year.

**2.** If we elect not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the reason for nonrenewal, to the first Named Insured shown in the Declarations, at the last mailing address known to us, at least 75 days before the expiration date of the policy period.

**3.** If notice of nonrenewal is not provided pursuant to this Condition, coverage under the same terms and conditions shall be deemed to be renewed for the ensuing policy period upon payment of the appropriate premium until you have accepted replacement coverage with another insurer, or until you have agreed to the nonrenewal.

**4.** If we mail or deliver a renewal notice to the first Named Insured at least 30 days before the end of the policy period, stating the renewal premium and its due date, the policy will terminate without further notice unless the renewal premium is received by us or our authorized agent by the due date.

**5.** If this policy terminates because the renewal premium has not been received by the due date, we will, within 15 days, mail or deliver to the first Named Insured at his last known address a notice that the policy was not renewed and the date it was terminated.

**6.** If notice is mailed, proof of mailing is sufficient proof of notice.

© ISO Properties, Inc., 2007

IL 02 63 09 08   ☐

Bates No. 000260

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  143

IL 02 66 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# UTAH CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART

**A.** The following is added to the **Cancellation** Common Policy Condition:

**7.** If this policy has been in effect for more than 60 days or if this is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** Material misrepresentation;

**c.** Substantial change in the risk assumed unless we should reasonably have foreseen the change or contemplated the risk when entering the contract; or

**d.** Substantial breaches of contractual duties, conditions or warranties.

If we cancel for nonpayment of premium, notice of cancellation must state the reason for cancellation.

**8.** With respect to the Commercial Automobile Coverage Part, the following applies in addition to the provisions of Paragraph **7.** above:

We may cancel this policy if your driver's license, or the driver's license of a person who customarily drives a "covered auto", is suspended or revoked.

**9.** Notice of cancellation must be delivered or mailed by first-class mail.

**B.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we elect to not renew this policy, we will mail, by first-class mail, written notice of nonrenewal to the first Named Insured, at the last mailing address known to us, at least 30 days before the expiration or anniversary date of this policy.

**2.** We need not mail this notice if:

**a.** You have accepted replacement coverage;

**b.** You have requested or agreed to nonrenewal; or

**c.** This policy is expressly designated as nonrenewable.

**3.** If notice is mailed, proof of mailing is sufficient proof of notice.

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  144

IL 02 69 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NORTH CAROLINA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Requirements**

**a. Policies In Effect Less Than 60 Days**

If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b. Policies In Effect More Than 60 Days**

If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy prior to the:

**(1)** Expiration of the policy term; or

**(2)** Anniversary date,

stated in the policy only for one or more of the following reasons:

**(a)** Nonpayment of premium;

**(b)** An act or omission by the insured or his or her representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining this policy, continuing this policy or presenting a claim under this policy;

**(c)** Increased hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk;

**(d)** Substantial breach of contractual duties, conditions or warranties that materially affects the insurability of the risk;

**(e)** A fraudulent act against us by the insured or his or her representative that materially affects the insurability of the risk;

**(f)** Willful failure by the insured or his or her representative to institute reasonable loss control measures that materially affect the insurability of the risk after written notice by us;

Bates No. 000262

**(g)** Loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S. 58-41-30;

**(h)** Conviction of the insured of a crime arising out of acts that materially affect the insurability of the risk;

**(i)** A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the laws of North Carolina; or

**(j)** You fail to meet the requirements contained in our corporate charter, articles of incorporation or by-laws when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

We will mail or deliver written notice of cancellation to the first Named Insured at least:

**(i)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(ii)** 30 days before the effective date of cancellation if we cancel for any other reason.

**c.** Cancellation for nonpayment of premium will not become effective if you pay the premium amount due before the effective date of cancellation.

**d.** We may also cancel this policy for any reason not stated above provided we obtain your prior written consent.

**B.** The following provisions are added and supersede any other provisions to the contrary:

**1. Nonrenewal**

**a.** If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of nonrenewal at least 45 days prior to the:

**(1)** Expiration of the policy if this policy has been written for one year or less; or

**(2)** Anniversary date of the policy if this policy has been written for more than one year or for an indefinite term.

**b.** We need not mail or deliver the notice of nonrenewal if you have:

**(1)** Insured property covered under this policy, under any other insurance policy;

**(2)** Accepted replacement coverage; or

**(3)** Requested or agreed to nonrenewal of this policy.

**c.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**2.** The written notice of cancellation or nonrenewal will:

**a.** Be mailed or delivered to the first Named Insured and any designated mortgagee or loss payee at their addresses shown in the policy, or if not indicated in the policy, at their last known addresses; and

**b.** State the reason or reasons for cancellation or nonrenewal.

© ISO Properties, Inc., 2007

**IL 02 69 09 08**

Bates No. 000263

POLICY NUMBER:  HDO G24556876 001

**Endorsement Number:  145**

**IL 02 70 09 12**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

Bates No. 000264

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

**(5)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**(6)** A determination by the Commissioner of Insurance that the:

**(a)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

**(b)** Continuation of the policy coverage would:

**(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

**(ii)** Threaten our solvency.

**(7)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**B.** The following provision is added to the **Cancellation** Common Policy Condition:

**7. Residential Property**

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

**a.** If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in **b.** and **c.** below.

**b.** We may not cancel this policy solely because the first Named Insured has:

**(1)** Accepted an offer of earthquake coverage; or

**(2)** Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

**c.** We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This restriction **(c.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

**(1)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

**(2)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

 © Insurance Services Office, Inc., 2012 IL 02 70 09 12

Bates No. 000265

**C.** The following is added and supersedes any provisions to the contrary:

**Nonrenewal**

1. Subject to the provisions of Paragraphs **C.2.** and **C.3.** below, if we elect not to renew this policy, we will mail or deliver written notice, stating the reason for nonrenewal, to the first Named Insured shown in the Declarations, and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

   We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

2. **Residential Property**

   This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

   Commercial Property Coverage Part

   Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

   **a.** We may elect not to renew such coverage for any reason, except as provided in **b., c.** and **d.** below.

   **b.** We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

   However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

   **(1)** The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

   **(2)** The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

   **(3)** We have:

   **(a)** Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

   **(b)** Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

   the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

   **c.** We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority, that included an earthquake policy premium surcharge.

   **d.** We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This restriction **(d.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

   **(1)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

   **(2)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

3. We are not required to send notice of nonrenewal in the following situations:

   **a.** If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between us and a member of our insurance group.

Bates No. 000266

**b.** If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **C.1.**

**c.** If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

**d.** If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

**e.** If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

**f.** If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **C.1.**, to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

© Insurance Services Office, Inc., 2012

**IL 02 70 09 12**

Bates No. 000267

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  146

**IL 02 72 09 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

> CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> EQUIPMENT BREAKDOWN COVERAGE PART
> FARM COVERAGE PART
> FARM UMBRELLA LIABILITY POLICY
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Of Policies In Effect**

**a. 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

**(2)** 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

**(3)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b. More Than 90 Days**

If this policy has been in effect for more than 90 days, or is a renewal of a policy we issued, we may cancel this policy, only for one or more of the reasons listed below, by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

**(2)** 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

**(3)** 45 days before the effective date of cancellation if:

**(a)** There has been a substantial change in the scale of risk covered by this policy;

**(b)** Reinsurance of the risk associated with this policy has been cancelled; or

**(c)** You have failed to comply with reasonable safety recommendations.

© ISO Properties, Inc., 2006

☐

Bates No. 000268

**B.** The following is added to the Common Policy Conditions and supersedes any provision to the contrary.

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal at least 45 days before:

   **a.** The expiration date of this policy, if the policy is written for a term of one year or less; or

   **b.** The anniversary date of this policy, if the policy is written for a term of more than one year.

**2.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006

**IL 02 72 09 07**   ☐

Bates No. 000269

POLICY NUMBER:  HDO G24556876 001                          Endorsement Number:  147

**IL 02 74 02 13**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MISSOURI CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99,** the term Commercial Property Coverage Part in this endorsement also refers to the Standard Property Policy.

**B.** With respect to the:

Commercial General Liability Coverage Part

Commercial Property – Legal Liability Coverage Form **CP 00 40**

Commercial Property – Mortgageholders Errors And Omissions Coverage Form **CP 00 70**

Crime And Fidelity Coverage Part

Employment-Related Practices Liability Coverage Part

Equipment Breakdown Coverage Part

Farm Liability Coverage Form

Liquor Liability Coverage Part

Pollution Liability Coverage Part

Products/Completed Operations Liability Coverage Part

Medical Professional Liability Coverage Part;

the following **Cancellation** and **Nonrenewal** Provisions apply:

Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the actual reason for cancellation, at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

   **b.** 30 days before the effective date of cancellation if cancellation is for one or more of the following reasons:

     **(1)** Fraud or material misrepresentation affecting this policy or a claim filed under this policy or a violation of any of the terms or conditions of this policy;

     **(2)** Changes in conditions after the effective date of this policy which have materially increased the risk assumed;

Bates No. 000270

**(3)** We become insolvent; or

**(4)** We involuntarily lose reinsurance for this policy;

**c.** 60 days before the effective date of cancellation if we cancel for any other reason.

**Nonrenewal**

The following is added and supersedes any provision to the contrary:

**a.** We may elect not to renew this policy by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the actual reason for nonrenewal, at least 60 days prior to the effective date of the nonrenewal.

**b.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**C.** With respect to the:

Capital Assets Program (Output Policy) Coverage Part

Commercial Inland Marine Coverage Part

Commercial Property Coverage Part

Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions Coverage Form

Farm – Livestock Coverage Form

Farm – Mobile Agricultural Machinery And Equipment Coverage Form;

Paragraphs **1.**, **2.**, **3.**, **4.** and **6.** of the **Cancellation** Common Policy Condition are replaced by the following:

**Cancellation, Nonrenewal And Decreases In Coverage**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel, nonrenew, reduce in amount or adversely modify this policy by mailing or delivering to the first Named Insured written notice of this action at least:

**a.** 10 days before the effective date of this action if due to nonpayment of premium or evidence of incendiarism; or

**b.** 30 days before the effective date of this action if for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of:

**a.** Cancellation will state the effective date of cancellation. The policy period will end on that date.

**b.** Any other action will state the effective date of that action.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**D.** With respect to all Coverage Parts addressed in this endorsement, Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. The cancellation will be effective even if we have not made or offered a refund. The following provisions govern calculation of return premium:

**a.** We will compute return premium pro rata and round to the next higher whole dollar when this policy is:

**(1)** Cancelled by us or at our request;

**(2)** Cancelled because you no longer have a financial or insurable interest in the property or business operation that is the subject of this insurance;

**(3)** Cancelled but rewritten with us or in our company group; or

**(4)** Cancelled after the first year, if it is a prepaid policy written for a term of more than one year.

**b.** When this policy is cancelled at the request of the first Named Insured (except when Paragraph **a.(2)**, **a.(3)** or **a.(4)** applies), we will return 90% of the pro rata unearned premium (or 75% of the pro rata unearned premium for the Equipment Breakdown Coverage Part), rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multiyear prepaid policy, we will return the full annual premium for the subsequent years.

The refund will be less than 90% of the pro rata unearned premium (or less than 75% of the pro rata unearned premium for the Equipment Breakdown Coverage Part) if the refund of such amount would reduce the premium retained by us to an amount less than the minimum premium for this policy.

© Insurance Services Office, Inc., 2012

Bates No. 000271

POLICY NUMBER:  HDO G24556876 001                    Endorsement Number:  148

IL 02 79 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# OREGON CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

  **2.** If this policy has been in effect for:

    **a.** Fewer than 60 days and is not a renewal policy, we may cancel for any reason.

    **b.** 60 days or more or is a renewal policy, we may cancel only for one or more of the following reasons:

      **(1)** Nonpayment of premium;

      **(2)** Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

      **(3)** Substantial increase in the risk of loss after insurance coverage has been issued or renewed, including but not limited to an increase in exposure due to rules, legislation or court decision;

      **(4)** Failure to comply with reasonable loss control recommendations;

      **(5)** Substantial breach of contractual duties, conditions or warranties;

      **(6)** Determination by the commissioner that the continuation of a line of insurance or class of business to which the policy belongs will jeopardize our solvency or will place us in violation of the insurance laws of Oregon or any other state; or

      **(7)** Loss or decrease in reinsurance covering the risk.

    **c.** 60 days or more or is a renewal policy, we may cancel for any other reason approved by the commissioner by rule, but only with respect to insurance provided under the following:

      **(1)** A package policy that includes commercial property and commercial liability insurance;

      **(2)** Commercial Automobile Coverage Part;

      **(3)** Commercial General Liability Coverage Part;

      **(4)** Commercial Property Coverage Part – Legal Liability Coverage Form;

      **(5)** Commercial Property Coverage Part – Mortgageholders Errors And Omissions Coverage Form;

      **(6)** Employment-related Practices Liability Coverage Part;

      **(7)** Farm Coverage Part – Farm Liability Coverage Form;

      **(8)** Liquor Liability Coverage Part;

      **(9)** Products/Completed Operations Liability Coverage Part; or

     **(10)** Medical Professional Liability Coverage Part.

                    © ISO Properties, Inc., 2007                       ☐

Bates No. 000272

**B.** Paragraph **3.** of the **Cancellation** Common Policy Condition is amended by the addition of the following:

    **3.** We will mail or deliver to the first Named Insured written notice of cancellation, stating the reason for cancellation.

**C.** The following is added to the **Cancellation** Common Policy Condition:

    **7. Number Of Days' Notice Of Cancellation:**

      **a.** With respect to insurance provided under **2.c.(1)** through **(10)** above, cancellation will not be effective until at least 10 working days after the first Named Insured receives our notice.

      **b.** With respect to insurance other than that provided under **2.c.(1)** through **(10)** above, cancellation will not be effective until at least:

        **(1)** 10 days after the first Named Insured receives our notice, if we cancel for nonpayment of premium; or

        **(2)** 30 days after the first Named Insured receives our notice, if we cancel for any other reason.

**D.** Paragraph **6.** of the **Cancellation** Common Policy Condition does not apply.

**E.** The following are added and supersede any provision to the contrary:

    **1. Nonrenewal**

    We may elect not to renew this policy by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal before the:

      **a.** Expiration date of the policy; or

      **b.** Anniversary date of the policy if the policy is written for a term of more than one year or without a fixed expiration date.

However, if this policy is issued for a term of more than one year and for additional consideration the premium is guaranteed, we may not refuse to renew the policy at its anniversary date.

Nonrenewal will not be effective until at least 45 days after the first Named Insured receives our notice.

**2. Mailing Of Notices**

    **a.** If notice of cancellation or nonrenewal is mailed, a post office certificate of mailing will be conclusive proof that the first Named Insured received the notice on the third calendar day after the date of the certificate of mailing.

    **b.** The following provision applies with respect to coverage provided under the Farm Coverage Part:

    If the first Named Insured has affirmatively consented to our use of an electronic record to deliver notice of cancellation or nonrenewal and has not withdrawn such consent, then the electronic record delivering notice of cancellation or nonrenewal satisfies the requirement that the notice of cancellation or nonrenewal be provided, or made available, to the first Named Insured in writing if we send the first Named Insured the electronic record with a request for a return receipt and we receive the return receipt. If we do not receive the return receipt, we may cancel or nonrenew the policy only after providing or delivering the notice of cancellation or nonrenewal to the first Named Insured in writing, subject to Paragraph **2.a.** above.

 © ISO Properties, Inc., 2007 **IL 02 79 09 08** ☐

Bates No. 000273

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  149

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WEST VIRGINIA CHANGES – CANCELLATION

The provision in the Cancellation Condition which indicates that proof of mailing will be sufficient proof of notice is deleted.

**IL 02 81 04 89**                    Copyright, Insurance Services Office, Inc.,  1989                    **Page 1 of 1**     ☐
                                        Copyright, ISO Commercial Risk Services, Inc.,  1989

Bates No. 000274

POLICY NUMBER:  HDO G24556876 001

Endorsement Number:  150

**IL 02 82 09 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MISSISSIPPI CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL AUTO COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    FARM COVERAGE PART
    FARM UMBRELLA LIABILITY POLICY
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **7.** is added to the **Cancellation** Common Policy Conditions:

    **7.** If:

      **a.** The first Named Insured cancels this policy, we will notify any named creditor loss payee.

      **b.** We cancel this policy, we will mail or deliver our written notice of cancellation to any named creditor loss payee in the same manner and at the same time as notification is given to the first Named Insured, as stated in this Condition.

    The provisions of Paragraphs **a.** and **b.** above do not apply to any mortgageholder.

**B.** Paragraphs **f.** and **g.** of the **Mortgageholders** Condition, if any, are replaced by the following:

    **f.** If:

      **(1)** The first Named Insured cancels this policy, we will notify the mortgageholder.

      **(2)** We cancel this policy, we will give written notice to the mortgageholder at least 30 days before the effective date of cancellation.

      We will notify the mortgageholder by mailing or delivering the cancellation notice to the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

    **g.** If:

      **(1)** The first Named Insured does not renew this policy, we will notify the mortgageholder.

      **(2)** We decide not to renew this policy, we will give written notice to the mortgageholder at least:

        **(a)** 10 days before an anniversary date or the expiration date of the policy, if the nonrenewal is due to nonpayment of premium; or

        **(b)** 30 days before an anniversary date or the expiration date of the policy, if the nonrenewal is for any other reason.

      We will notify the mortgageholder by mailing or delivering the notice of nonrenewal to the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**C.** The following Condition is added and supersedes any provision to the contrary:

    **NONRENEWAL**

    **1.** If the first Named Insured does not renew this policy, we will notify any named creditor loss payee.

Bates No. 000275

**2.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and any named creditor loss payee, at least:

    **a.** 10 days before the effective date of nonrenewal, if the nonrenewal is due to nonpayment of premium; or

    **b.** 30 days before an anniversary date or the expiration date of the policy, if the nonrenewal is for any other reason.

We will notify the first Named Insured and any named creditor loss payee by mailing or delivering the notice of nonrenewal to the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

The provisions of Paragraphs **1.** and **2.** above do not apply to any mortgageholder.

**D.** The requirements for notification of cancellation or nonrenewal of this policy, as stated in Paragraphs **A., B.** and **C.** above, supersede any other notification requirements to any named creditor loss payee and any mortgageholder, stated in this policy, including any endorsement attached to the policy.

**E.** Any named creditor loss payee and any mortgageholder may elect not to receive notification of cancellation or nonrenewal by providing us with a written release.

 © ISO Properties, Inc., 2007 **IL 02 82 09 08** ☐

Bates No. 000276

POLICY NUMBER:  HDO G24556876 001                                    Endorsement Number:  151

IL 02 83 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WISCONSIN CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 10 days before the effective date of cancellation.

If this policy has been in effect for less than 60 days and is not a renewal policy, we may cancel for any reason.

If this policy has been in effect for 60 days or more or is a renewal of a policy we issued, except as provided in Paragraph **7.** below, we may cancel this policy only for one or more of the following reasons:

**a.** The policy was obtained by material misrepresentation;

**b.** There has been a substantial change in the risk we originally assumed, except to the extent that we should have foreseen the change or considered the risk in writing the policy;

**c.** There have been substantial breaches of contractual duties, conditions or warranties; or

**d.** Nonpayment of premium.

If this policy has been in effect for 60 days or more or is a renewal of a policy we issued, the notice of cancellation will state the reason for cancellation.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7. Anniversary Cancellation**

If this policy is written for a term of more than one year or has no fixed expiration date, we may cancel this policy for any reason by mailing or delivering to the first Named Insured written notice of cancellation at least 60 days before the anniversary date of the policy. Such cancellation will be effective on the policy's anniversary date.

We may cancel this policy because of the termination of an insurance marketing intermediary's contract with us only if the notice of cancellation contains an offer to continue the policy with us if we receive a written request from the first Named Insured prior to the date of cancellation.

Bates No. 000277

**C.** The following applies to the:

Capital Assets Program (Output Policy) Coverage Part

Commercial Inland Marine Coverage Part

Commercial Property Coverage Part

Crime And Fidelity Coverage Part

Equipment Breakdown Coverage Part

Farm Coverage Part

**1.** We may rescind this policy because of the following:

**a.** Misrepresentation made by you or on your behalf in the negotiation for or procurement of this Coverage Part, if the person knew or should have known that the representation was false;

**b.** Breach of affirmative warranty made by you or on your behalf in the negotiation for or procurement of this Coverage Part;

**c.** Failure of a condition before a loss if such failure exists at the time of loss; or

**d.** Breach of a promissory warranty if such breach exists at the time of loss.

**2.** We may not rescind this policy:

**a.** For the reasons in Paragraphs **C.1.a.** and **C.1.b.** unless:

**(1)** We rely on the misrepresentation or affirmative warranty and the misrepresentation or affirmative warranty is either material or made with intent to deceive; or

**(2)** The facts misrepresented or falsely warranted contribute to the loss.

**b.** For the reasons in Paragraphs **C.1.c.** and **C.1.d.** unless such failure or breach:

**(1)** Increases the risk at the time of loss; or

**(2)** Contributes to the loss.

**3.** If we elect to rescind this policy, we will notify the first Named Insured of our intention within 60 days after acquiring knowledge of sufficient facts to constitute grounds for rescission.

**D.** The following are added and supersede any other provisions to the contrary:

**1. Nonrenewal**

**a.** If we elect not to renew this policy we will mail or deliver written notice of nonrenewal to the first Named Insured's last mailing address known to us. We may elect not to renew for any reason; the notice will state the reason for nonrenewal. We will mail or deliver the notice at least 60 days before the expiration date of this policy.

We need not mail or deliver the notice if:

**(1)** You have insured elsewhere;

**(2)** You have accepted replacement coverage;

**(3)** You have requested or agreed to nonrenewal of this policy; or

**(4)** This policy is expressly designated as nonrenewable.

**b.** We may refuse to renew this policy because of the termination of an insurance marketing intermediary's contract with us only if the notice of nonrenewal contains an offer to renew the policy with us if we receive a written request from the first Named Insured prior to the renewal date.

**c.** If you fail to pay the renewal or continuation premium by the premium due date, this policy will terminate on the policy expiration or anniversary date, if we have:

**(1)** Given you written notice of the renewal or continuation premium not more than 75 days nor less than 10 days prior to the due date of the premium; and

**(2)** Stated clearly in the notice the effect of nonpayment of premium by the due date.

**2. Anniversary Alteration**

If this policy is written for a term of more than one year or has no fixed expiration date, we may alter the terms or premiums of this policy by mailing or delivering written notice of less favorable terms or premiums to the first Named Insured's last mailing address known to us. We will mail, by first class mail, or deliver this notice at least 60 days prior to the anniversary date.

If we notify the first Named Insured within 60 days prior to the anniversary date, the new terms or premiums will not take effect until 60 days after the notice was mailed or delivered. The notice will include a statement of the first Named Insured's right to cancel. The first Named Insured may elect to cancel the policy at any time during the 60-day period, in accordance with Paragraph **1.** of the Cancellation Common Policy Condition. If the first Named Insured elects to cancel the policy during the 60-day period, return premiums or additional premium charges will be calculated proportionately on the basis of the old premiums.

 © ISO Properties, Inc., 2006 **IL 02 83 09 07** ☐

Bates No. 000278

**3.  Renewal With Altered Terms**

If we elect to renew this policy but on less favorable terms or at higher premiums, we will mail or deliver written notice of the new terms or premiums to the first Named Insured's last mailing address known to us. We will mail, by first class mail, or deliver this notice at least 60 days prior to the renewal date.

If we notify the first Named Insured within 60 days prior to the renewal date, the new terms or premiums will not take effect until 60 days after the notice was mailed or delivered. The notice will include a statement of the first Named Insured's right to cancel. The first Named Insured may elect to cancel the renewal policy at any time during the 60-day period, in accordance with Paragraph **1.** of the Cancellation Common Policy Condition. If the first Named Insured elects to cancel the renewal policy during the 60-day period, return premiums or additional premium charges will be calculated proportionately on the basis of the old premiums.

We need not mail or deliver this notice if the only change adverse to you is a premium increase that:

**a.**  Is less than 25% and is generally applicable to the class of business to which this policy belongs; or

**b.**  Results from a change based on your action that alters the nature or extent of the risk insured against, including but not limited to a change in the classification or the units of exposure, or increased policy coverage.

**E.  Special Provision – Cancellation And Nonrenewal**

With respect to insurance provided under the Commercial Automobile Coverage Part, we will not cancel or refuse to renew Liability Coverage wholly or partially because of age, sex, residence, race, color, creed, religion, national origin, ancestry, marital status or occupation of anyone who is an insured.

Bates No. 000279

POLICY NUMBER:  HDO G24556876 001                              Endorsement Number:  152

IL 02 86 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MICHIGAN CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is amended as follows:

  **1.** Paragraph **1.** is replaced by the following:

  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us or our authorized agent advance notice of cancellation.

  **2.** Paragraph **3.** is replaced by the following:

  We will mail or deliver our notice to the first Named Insured's last mailing address known to us or our authorized agent.

  **3.** Paragraph **5.** is replaced by the following:

  If this policy is cancelled, we will send the first Named Insured any pro rata premium refund due. The minimum earned premium shall not be less than the pro rata premium for the expired time or $25.00, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following Condition is added and supersedes any other provision to the contrary:

**NONRENEWAL**

If we decide not to renew this policy, we will mail or deliver to the first Named Insured's last mailing address known to us or our authorized agent written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing shall be sufficient proof of notice.